# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ANDRE SYLVESTER WATTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-0777 (RJL) |
| | ) | |
| ALBERTO GONZALES, | ) | |
| UNITED STATES ATTORNEY GENERAL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S MOTION TO DISMISS

Defendant, Alberto Gonzales, United States Attorney General, by and through

undersigned counsel, hereby moves, pursuant to Fed. R. Civ. P. 12(b)(1), (b)(2), (b)(3), and

(b)(6), to dismiss this action.  In support of this motion, the Court is respectfully referred to the

accompanying Memorandum in Response to this Court's May 4, 2007 Order to Show Cause

Why a Writ of Mandamus Should Not Issue, and in Support of Defendant's Motion to Dismiss.

A Proposed Order consistent with this Motion is attached hereto.

Respectfully submitted,


\_\_/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


\_\_/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

__/s/_____
JONATHAN C. BRUMER, D.C. BAR # 463328
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E4815
Washington, D.C. 20530
(202) 514-7431
(202) 514-8780 (facsimile)

Of Counsel:

Delaine Martin Hill
Assistant General Counsel
Office of the General Counsel
Litigation Branch
Federal Bureau of Prisons

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ANDRE SYLVESTER WATTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-0777 (RJL) |
| | ) | |
| ALBERTO GONZALES, | ) | |
| UNITED STATES ATTORNEY GENERAL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM IN RESPONSE TO THIS COURT'S MAY 4, 2007 ORDER
TO SHOW CAUSE WHY A WRIT OF MANDAMUS SHOULD NOT ISSUE,
AND IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**INTRODUCTION**

Defendant, Alberto Gonzales, United States Attorney General, responds to this Court's

April 25, 2007 Order requiring that Defendant show cause why a Writ of Mandamus should not

issue in this case, and he hereby moves, pursuant to Fed. R. Civ. P. 12(b)(1), (b)(2), (b)(3), and

(b)(6), to dismiss this action.

Plaintiff, a Federal prisoner housed in Jonesville, Virginia, is before this Court

challenging several aspects of the conditions of his incarceration. Among other things, Plaintiff

complains about: (1) the fact that he has not received his preferred medication to treat his

arthritis; (2) the quality of the vocational programs he has been afforded at the facility; (3) his

prison's policies and actions regarding inmate's access to toilets in a special housing unit, hunger

strikes by prisoners, inmate transfers, the disciplining of staff, and the supervision of prisoners

with "communicable diseases"; (4) prison staff's alleged interference with his legal mail; and

(5) their alleged failure to regularly take urine and blood specimens and check his blood pressure.

Defendant respectfully submits that this Court should find that Plaintiff is not entitled to

the extraordinary relief in the form of a writ of mandamus. Plaintiff has failed to establish that he

has a clear right to any of the relief he seeks. He has also not demonstrated that Defendant has a

clear duty to act in the manner Plaintiff demands. Furthermore, there are alternative avenues of

relief available to Plaintiff which he has not yet pursued, namely the administrative appeals

process which he has failed to exhaust with respect to any of his claims and a proper civil action.

     Defendant respectfully submits that this Court should also dismiss this action, for three

reasons. First, this Court lacks jurisdiction over Plaintiff's action because Plaintiff has failed to

comply with the administrative exhaustion requirements which are set forth in the Bureau of

Prisons ("BOP")'s duly promulgated regulations. Second, venue is improper in this action as

Plaintiff is housed in a Virginia prison, the alleged events occurred in that State, and Plaintiff has

not provided sufficient justification for having the action proceed in this District. Third, Plaintiff

has failed to state a claim upon which relief can be granted.

## STATEMENT OF FACTS AND PRIOR PROCEEDINGS

     Plaintiff Andre Sylvester Watts, Federal Register No. 13799-083, is a federal inmate who

has been convicted on at least three separate occasions, of robbery, assaulting, resisting or

interfering with a police officer, and theft.[1] Plaintiff is presently incarcerated at the United States

---

[1] On May 15, 1987, the Eastern District of Virginia sentenced Plaintiff to a 5 year term of imprisonment for the offense of theft of personal property within the special jurisdiction of the United States, worth over $100. See, e.g., Watts v. U.S. Parole Comm'n, 2006 W.L. 2850637, *1 (W.D. Va. Sept. 29, 2006) (discussing Plaintiff's convictions by courts in various jurisdictions); see also Exhibit 1, Public Information Inmate Data for Plaintiff, at p.016-18. Plaintiff began serving the sentence in May of 1994, and in May 1997 he was released on parole, with time remaining to be served. See Watts, 2006 WL at *1; see also Ex. 1 at 016-020. On June 12, 1998, Plaintiff was arrested and charged with robbery and assaulting, resisting, or interfering with a police officer. See Watts, 2006 WL at *1; Ex. 1 at 006-007. On July 17, 1998, the United States Parole Commission issued a parole violator warrant, in which it charged Plaintiff with using dangerous or habit forming drugs, violating a special condition of his release, and failing to report to his probation officer as directed. See Watts, 2006 WL at *1. The Parole Commission

Penitentiary-Lee County ("USP Lee") in Jonesville, Virginia. <u>See</u> Ex. 1 at 001.[2]  He has been

housed at that facility since March 1, 2004. <u>See</u> Ex. 1 at 001; search results for "Andre Sylvester

Watts" on BOP Website's Inmate Locator, *available at*

http://bop.gov/iloc2/InmateFinderServlet?Transaction=NameSearch&needingMoreList=false&L

astName=watts&Middle=&FirstName=andre&Race=U&Sex=U&Age=&x=0&y=0 ("Inmate

Locator Results").  Because Plaintiff has not complained about his treatment or the conditions at

any other facility, this brief will not address his prior prison assignments.  Plaintiff has a

projected release date of December 3, 2007. <u>See</u> Ex. 1 at 001, 003, 005, Inmate Locator Results.

On April 27, 2006, Plaintiff initiated this action by filing a Petition for the Issuance of a

Writ of Mandamus, in which he complained about two aspects of his treatment at USP Lee. <u>See</u>

docket entry no. 1.  First, he alleged that the prison's staff had "denied medicine to cease the pain

stemming from Plaintiff['s] long documented case of arthritis[,]" but had "only prescribe[d]

IBUPROFEN which on a long term basis causes stomach bleeding and nausea." <u>Id</u>. at 2.  He

---

later learned of Plaintiff's June 12, 1998 arrest, and the related charges, and it supplemented the
parole violator warrant it had issued to include this information. <u>Id</u>. at *1.  On March 23, 1999,
the District of Columbia Superior Court sentenced Plaintiff to 120 days of imprisonment for
attempted theft. <u>Id</u>. at *1; Ex. 1 at 003-005.  On May 26, 1999, the D.C. Superior Court
sentenced Plaintiff to consecutive terms of 3 to 9 years for robbery, in violation of D.C. Code
§ 22-2901, and to an additional 1 to 3 years of imprisonment for assaulting, resisting, or
interfering with a police officer, in violation of D.C. Code § 22-505(A). <u>See id</u>. at *1; Ex. 1 at
005-007; <u>Watts v. Federal Bureau of Prisons</u>, 2006 WL 240787, *1 (W.D. Va. Jan. 31, 2006).
Plaintiff's various sentences were combined for a total term of no greater than twelve years and
one hundred and twenty days and no less than four years and forty days.

   [2]  In 1997, Congress passed the Revitalization Act (Pub. L.  No. 105-33, § 11231(a)(1),
111 Stat. 712, 745) which required the District of Columbia Department of Corrections to close
its Lorton, Virginia facility by December 31, 2001.  The Revitalization Act also required that the
BOP assume custody of all sentenced felons coming out of District of Columbia courts no later
than December 31, 2001.  Thus, Plaintiff is a D.C. felon who is now in full custody of the BOP.
<u>See</u> Pub. L.  No. 105-33, § 11231(a)(1).

argued that Defendant had a statutory duty to provide other alternative medicines, which he claimed had been "proven to be effective and cheaper, although not approved by the FDA," on "a test basis if there [are] pharmacists willing to supply [him] with the medicine[]." See id. at 3-4. Second, Plaintiff claimed that USP Lee does "not have a selection of vocational training programs that will aid the [P]laintiff in securing gainful employment" through an apprenticeship, and argued that federal law requires that such programs be provided. Id. at 2; id. at 5.

On August 21, 2006, Plaintiff filed a Motion to amend his petition for a Writ of Mandamus, which the Court granted on October 20, 2006. See docket entry nos. 8, 9. In this pleading, Plaintiff made numerous additional allegations. See docket entry no. 8. First, he complained that the USP Lee's warden, Terry O'Brien, had adopted a policy of not allowing inmates in the prison's special housing unit ("SHU")[3] to flush their own toilets but instead required that the various patrol officers of the SHU to do so during each officer's cell tour. See id. at 2. Plaintiff argued that this policy had created an "inhumane habitat," violated the Eighth Amendment's proscription on cruel and unusual punishment, and was inconsistent with 28 C.F.R. § 541.12. See docket entry no. 8 at 2-4. Second, Plaintiff represented that USP Lee staff had placed inmates who "are observed on a hunger or food strike . . . in a holding tank designed for newly admitted inmates to [the SHU] under observation scrutiny " which does not "have a tolie[t], sink[,] or shower," and alleged that this practice also had created an "inhumane habitat" and constituted "cruel and unusual punishment" under the Eighth Amendment. Id. at 2-3. Third, he claimed that the warden of USP Lee had "applie[d] the wrong statutory authority" in deciding

---

[3] The SHU is separate unit for inmates who are unable to function in a less restrictive environment without being a threat to others or to the orderly operation of the institution. See Ex. 2, Program Statement, 5270.07 ("Inmate Discipline and Special Housing Units").

prison transfers, inasmuch as the warden had purportedly failed to notify and receive prior approval from the Attorney General of the United States for those transfer decisions, a step which Plaintiff contended is required by 28 U.S.C. § 4082. Id. at 2-3. Fourth, Plaintiff contended that the warden had failed to properly supervise and discipline his staff in violation of 18 U.S.C. § 4042 and Program Statement 3420.09. See id. at 3-4. Finally, Plaintiff accused USP Lee's staff of: failing to "promptly tour each tier" in connection with their "toilet flush" duties; engaging in unspecified "unprofessional conduct that was often embedded with racism"; of retaliating against Plaintiff in response to his filing of grievances; and of showing partiality toward other less serving inmates with respect to prison transfer requests, all in violation of 18 U.S.C. § 3621(b) and Program Statement 3420.09. See id. at 4-5.

On March 23, 2007, Plaintiff filed a Judicial Notice with the Court which contained two new allegations of misconduct. Without substantiation, Plaintiff accused the authorities at USP Lee and the Attorney General of allowing inmates with "communicable diseases" to "roam" freely throughout the prison and of failing to effectively diagnose and treat those prisoners, in violation of 18 U.S.C. § 4042, 28 C.F.R. §§ 500, 549, 549.11. See Docket Entry No. 11 at 1-3. Second, Plaintiff accused USP Lee's staff of tampering with and obstructing the legal mail of inmates, in violation of 18 U.S.C. § 4. See Docket Entry No. 11 at 2-4. Plaintiff also reiterated in this filing that his arthritis was not being treated properly. Id. at 3.

## ARGUMENT

I.    **A Writ of Mandamus is an Extraordinary Remedy which is Only to Be Granted, at the Court's Discretion, When a Petitioner Satisfies a Three Part Test**

The Mandamus Act, provides:

> The district courts shall have original jurisdiction of any action in the
> nature of mandamus to compel an officer or employee of the United States

or any agency thereof to perform a duty owed to the plaintiff.

28 U.S.C. § 1361.  The courts have recognized that a writ of mandamus is an extraordinary

remedy, which is rarely appropriate, and only in special circumstances.  See, e.g., Kerr v. United

States District Court for Northern District of Cal., 426 U.S. 394, 402 (1976); Will v. U.S., 88

S.Ct. 269 (1967); Williams-Bey v. U.S. Parole Comm'n, 2002 WL 31045306, **1 (D.C. Cir.

2002) (noting that"[i]ssuance of a writ of mandamus is a 'drastic' remedy to be used in

'extraordinary situations'" where the petitioner can show a "clear and indisputable right to the

relief sought") (internal citations omitted); In re Bluewater Network, 234 F.3d 1305, 1315 (D.C.

Cir. 2000) (observing that "[o]ur consideration of any and all mandamus actions starts from the

premise that issuance of the writ is an extraordinary remedy, reserved only for the most

transparent violations of a clear duty to act"); Gonzalez v. Hawk, 1995 W.L. 479722, *1 (D.C.

Cir. 1995) ("[m]andamus is an extraordinary remedy to be granted only where essential to the

interests of justice") (citing Starnes v. McGuire, 512 F.2d 918, 929 (D.C. Cir. 1974) (en banc)

("Starnes")); Caldwell v. U.S. Parole Comm'n, 1995 WL 117985, *1 (D.C. Cir. 1995); Jasperson

v. Federal Bureau of Prisons, 460 F. Supp. 2d 76, 86, n. 6 (D.D.C. 2006).

    Three elements must exist before a writ of mandamus may issue: (1) the plaintiff must

have "a clear right to relief"; (2) the defendant must have "a clear duty to act"; and (3) there must

be "no other adequate remedy available to plaintiff."  See Power v. Barnhart, 292 F.3d 781, 784

(D.C. Cir.2002) (citations omitted); Miller v. U.S. Bureau of Prisons, 1997 WL 135713, *2

(D.D.C. 1997); Muhammad v. United States Bureau of Prisons, 789 F. Supp. 449 (D.D.C. 1992).

A court will only consider issuing a writ of mandamus if "the party seeking issuance of the writ

[has] no other adequate means to attain the desired relief, and [can] demonstrate that his 'right to

issuance of the writ is 'clear and indisputable."  See In re Blodgett, 502 U.S. 236, 241, n. 1

(1992); see also In re Asemani, 455 F.3d 296, 299 (D.C. Cir. 2006); Williams-Bey, 2002 WL at

**1; In re Sealed Case, 151 F.3d 1059, 1063 (D.C. Cir. 1998).  Thus, where a party seeks relief

that may be remedied by other means, mandamus is not the appropriate remedy.  See, e.g.,

Heckler v. Ringer, 466 U.S. 602, 616 (1984); (mandamus is "intended to provide a remedy for a

plaintiff only if he has exhausted all other avenues of relief . . ."); Kerr, 426 U.S. at 403 (1976).

Even if a plaintiff satisfies all three elements, a court still has discretion to not grant a writ

of mandamus.  See, e.g., In re Cheney, 406 F.3d 723, 729 (D.C. Cir.2005) (en banc); Ross v.

United States, 460 F.Supp.2d 139, 150, n. 7 (D.D.C. 2006); United Mine Workers of America,

Intern. Union v. Dye, 2006 WL 2460717, *5 (D.D.C. 2006).

## II.     A Writ of Mandamus Should Not Issue and this Action Should be Dismissed Because this Court Lacks Jurisdiction over this Action and Venue is Improper

### A.     This Court Lacks Jurisdiction because Plaintiff has Failed to Exhaust his Administrative Remedies under the PLRA and Implementing Regulations

Before considering whether mandamus relief is appropriate, a Court must be certain of its

jurisdiction. See In re Asemani, 455 F.3d 296, 299 (D.C. Cir. 2006); In re: Executive Office of

the President, 215 F.3d 20, 25 (D.C. Cir.2000) (dismissing mandamus petition because

jurisdiction lacking).  As is explained below, in this case, that jurisdiction is lacking.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought

with respect to prison conditions under section 1983 of this title, or any other Federal law, by a

prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted."  See 42 U.S.C. §1997e(a).  In Booth v. Churner, 531

U.S. 731, 740-41& n. 6 (2001) ("Booth"), a unanimous Supreme Court held that Congress

mandated completion of any prison administrative remedy process capable of addressing the

inmate's complaint and providing some form of relief, "irrespective of the forms of relief sought

7

and offered through administrative avenues." See also Jackson v. District of Columbia, 254 F.3d

262, 270-271 (D.C. Cir. 2001); Smith v. Zachary, 255 F.3d 446, 451 (7th Cir. 2001). In Porter v.

Nussle, 534 U.S. 516 (2002) ("Porter"), the Supreme Court reiterated that ". . . exhaustion in

cases covered by § 1997e(a) is . . . mandatory. . ." Id. In Porter, the Supreme Court also

explained the rationale underlying the PLRA's exhaustion requirement:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the
> quality of prisoner suits; to this purpose, Congress afforded corrections officials time and
> opportunity to address complaints internally before allowing the initiation of a federal
> case. In some instances, corrective action taken in response to an inmate's grievance
> might improve prison administration and satisfy the inmate, thereby obviating the need
> for litigation. In other instances, the internal review might filter out some frivolous
> claims. And for cases ultimately brought to court, adjudication could be facilitated by an
> administrative record that clarifies the contours of the controversy.

Porter, 534 U.S. at 524-525. In 2006, the Supreme Court again reiterated that in the PLRA

context, "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory."

See Woodford v. Ngo, 126 S. Ct. 2378, 2382 (2006) ("Woodford").

Here, the three-level administrative remedy process used in the federal prison system and

applicable to this matter is nearly identical to that at issue in Booth. Compare Booth, 532 U.S. at

734 with 28 C.F.R. § 542.10 et seq. The BOP's regulations require inmates first to attempt

resolution of their complaints informally by discussing the matter with a member of their Unit

Team. See 28 C.F.R. § 542.13. If informal resolution is insufficient to resolve the matter, the

inmate may file a formal complaint with the Warden within 20 days of the date on which the

basis of the complaint occurred. 28 C.F.R. § 542.14. If the inmate is not satisfied with the

Warden's response, he may appeal the response to the Regional Director within 20 days of the

Warden's decision. 28 C.F.R. § 542.15. If the inmate is dissatisfied with the regional response,

the prisoner may then file a national appeal with the Office of General Counsel in Washington,

8

D.C., within 30 days of the date of the Regional Director's decision.  See 28 C.F.R. § 542.15.

Appeal to the Office of General Counsel is the final administrative appeal in the BOP.

In the instant case, Plaintiff has failed to properly exhaust his administrative remedies

with respect to his claims concerning: the medication prescribed for his arthritis, his access to

training and educational programming, the flushing of toilets, housing of inmates who are on a

hunger strike, the allegation that the warden has relied on the wrong statutory authority in

denying prison transfers, the purported failure to properly discipline staff, the allegation that

inmates with "communicable diseases" have been allowed to roam throughout the prison, and the

refusal to take urine and blood samples or to take his blood pressure weekly.  See, e.g., Ex. 3,

Declaration of James Schluter, ¶ 3-4.

Plaintiff has provided some meager evidence that he satisfied part of the administrative

appeals process with respect to a few of his claims.  For example, he has filed with this Court a

copy of letter he sent to USP Lee's Chief Pharmacist concerning his arthritis treatment, a copy of

an "inmate request to staff" he addressed to the Health Administrator concerning the same issue,

and a response to this request.  See Docket Entry No. 1 (exhibits to Plaintiff's original Petition

for the Issuance of a Writ of Mandamus).  Plaintiff also filed an affidavit with this Court that

alleges that he corresponded with the warden and the "Medical Department" about the "unfit

conditions in the holding cell at USP Lee" in the SHU, copy of an "inmate request[] to staff"

addressed to the "Medical Department" concerning the failure of USP Lee staff to take a blood

test and urine specimen and the absence of a sink, shower, and toilet in the holding tank, a copy

of an "inmate request[] to staff" addressed to the warden regarding the absence of a sink, shower,

and toilet in the holding tank, and a copy of a "central office administrative remedy appeal"

concerning the denial of a prison transfer request.  See Docket Entry No. 8-2 (exhibits to

9

Plaintiff's Motion to Amend his original Petition for a Writ of Mandamus).

Neither the Chief Pharmacist nor the Health Administrator are part of the levels of administrative remedy review (i.e., Warden, Regional Director, General Counsel) set forth in the BOP's administrative review regulations.  Liberally constructed, Plaintiff's exhibits establish that he fulfilled the first step in the administrative appeals process with respect to his challenges concerning three issues: his arthritis treatment, conditions in the holding cell, and the failure to take a blood/urine specimen.  See 28 C.F.R. § 542.13.  However, there is no indication in the existing record that Plaintiff ever filed (1) a request with the Warden at USP Lee concerning any of his complaints other than the one about the absence of a sink, shower, and toilet in the holding tank, (2) an appeal with the Regional Director of the BOP concerning any of his allegations; or (3) a national appeal with the Office of General Counsel in Washington, D.C. concerning any of his complaints.  Furthermore, Plaintiff has furnished no evidence that he took any step to even partially exhaust his other claims.

Under Booth, Porter, and Woodford, inmates are bound to complete proper exhaustion. Clearly, Plaintiff failed to do so.  See 28 C.F.R. §§ 542.10-542.19; Ex. 3, Declaration of James Schluter, ¶ 3.  Accordingly, a writ of mandamus should not issue, and this action must be dismissed for failure to exhaust administrative remedies under the PLRA and implementing regulations.  See In re Asemani, 455 F.3d at 299; In re: Executive Office of the President, 215 F.3d at 25; Fed. R. Civ. P. 12(b)(1).

## B.    This Action Should be Dismissed for Improper Venue

In any "civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his [or her] official capacity or under color of legal authority," venue is proper in one of these three forums: (1) where a defendant in the action resides; (2) where a

substantial part of the events or omissions giving rise to the claim occurred; or a substantial part of property that is the subject of the action is situated; or (3) where the plaintiff resides if no real property is involved in the action.  See 28 U.S.C. § 1391(e).  Federal law also provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought.

See 28 U.S.C. § 1404(a).  The D.C. Circuit has indicated that, before deciding whether to transfer a civil case brought by an inmate incarcerated outside the District of Columbia, a district court should consider: (1) the prisoner's difficulty of communication with counsel; (2) the difficulty of transferring the inmate; (3) the availability of witnesses and files; (4) the speed of final resolution; and (5) whether the case involves issues of national policy requiring the testimony of high-level administrators located in Washington, D.C.  See Starnes, 512 F.2d at 929-33.

These factors all suggest that venue is improper in this jurisdiction and that this action should instead have been brought in the Western District of Virginia.  After all, the Plaintiff is currently housed at USP Lee, which is located in that forum.  All of the alleged events occurred at that facility, in Virginia.  Plaintiff is proceeding *pro se* and so no concern regarding any difficulty communicating with counsel is implicated.  Plaintiff's medical records are at USP Lee and the issues involved are specific to USP Lee.  Plaintiff's claims are individualized and are of no national import.  Indeed, Plaintiff alleges that the Defendant's actions violated national BOP policy.  Because venue is improper, this Court should dismiss this action, and decline to issue a writ of mandamus.  See Fed. R. Civ. P. 12(b)(3).  In the event that this action survives Defendant's dispositive motion, this Court could alternatively decide to transfer this case to the Western District of Virginia because the factors articulated in Starnes strongly militate in favor of a transfer to that forum.  Under these circumstances, a transfer of venue, under 28 U.S.C.

11

§1404(a) would be entirely appropriate, and serve the interests of both, preservation of resources and justice.

### III.    Plaintiff is Not Entitled to the Extraordinary Relief of Mandamus, and He Has Failed to State any Claims Upon Which Relief can Be Granted

#### A.    Plaintiff has No Clear Right to the Relief he Seeks

##### 1.    Plaintiff is Not Entitled to his Preferred Medication for Arthritis or to Weekly Urine Samples and Blood Pressure Tests

Plaintiff has alleged that the prison's staff had "denied medicine to cease the pain stemming from Plaintiff['s] long documented case of arthritis[,]" but had "only prescribe[d] IBUPROFEN which on a long term basis causes stomach bleeding and nausea." See docket entry No. 1 at 2. He has argued that Defendant has a statutory duty to provide other alternative medicines, which he claimed had been "proven to be effective and cheaper, although he conceded not approved by the FDA," on "a test basis if there [are] pharmacists willing to supply [him] with the medicine[]." See id. at 3-4 (citing 18 U.S.C. §§ 4001, 4005(b), 4042; D.C. Code § 24-101). In his administrative appeals, though not in his court filings, he has also complained that he has not received weekly blood pressure tests or urine samples. See Docket Entry No. 8-2.

In support of these and other of his claims, Plaintiff has cited several statutory provisions. None of these provisions give him a right to his preferred medication for arthritis, weekly urine samples and blood pressure tests, or to any of the other special accommodations he seeks in this action. One of the provisions Plaintiff cites, 18 U.S.C. § 4001, provides in relevant part that "[t]he Attorney General may establish and conduct industries, farms, and other activities and classify the inmates; and provide for their proper government, discipline, treatment, care, rehabilitation, and reformation." See 18 U.S.C. § 4001(b)(2). Another, 18 U.S.C. § 4042,

indicates that the BOP, under the direction of the Attorney General, "shall" have charge of the "management and regulation" of federal penal and correctional institutions, and will "provide suitable quarters" and "for the safekeeping, care, and subsistence" and see to the "protection, instruction, and discipline" of inmates.  See 18 U.S.C. § 4042(a).  Plaintiff has also cited D.C. Code 24-101, which provides in relevant part that "the Bureau of Prisons shall be responsible for the custody, care, subsistence, education, treatment and training" of prisoners who formerly had been housed in the Lorton Correctional Complex where they had been the responsibility of District of Columbia.  The Courts have made it clear however that these vague and open ended provisions give prison officials broad discretionary authority, and that the Attorney General and his delegate, the BOP, are owed deference in their interpretation and application of them.[4]

Nor does Plaintiff have a right, under the Constitution's Eighth Amendment, to the special medical treatment he seeks.  It is true that inmates have a constitutional right to receive "adequate" medical treatment.  See, e.g., Farmer v. Brennan, 511 U.S. 825 (1994) ("Farmer") (observing that under the Eighth Amendment, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to

---

[4] See, e.g., Doe v. Kanahele, 878 F.2d 1438, *1 (9th Cir. 1989) (recognizing that "[w]hile the Bureau of Prisons has general duties of protection and safekeeping of prisoners, see 18 U.S.C. § 4042, how these duties are to be executed is not specifically prescribed"); Prows v. U.S. Dept. of Justice, 704 F.Supp. 272 (D.D.C. 1988) (observing that ""[t]he authority" of the Attorney General and the BOP under 18 U.S.C. §§ 4001 and 4042 "has been consistently held to be extremely broad.") (internal citations omitted); Williams v. U.S., 384 F. Supp. 579 (D.D.C. 1974) (explaining that "[t]he defendant's duty under Section 4042 is not absolute but requires the exercise of ordinary diligence under the circumstances"); see also Jefferson v. Gonzales, 2006 W.L. 1305224 (D.D.C. 2006) (noting that "[p]rison officials have broad administrative and discretionary authority over the institutions they manage," that "[c]ourts are to afford deference and flexibility to officials trying to manage the safety of the prison environment," and that "'prison security is a compelling state interest,'" and that "'deference is due to institutional officials' expertise in this area'") (internal citations omitted).

guarantee the safety of the inmates'") (internal citations omitted); Estelle v. Gamble, 429 U.S. 97 (1976) ("Estelle"). However, a prisoner's Eighth Amendment right to medical treatment is quite limited in scope. The Supreme Court has indicated that a "deliberate indifference" standard should be applied to in the context of Eighth Amendment challenges to prison-provided medical care. See Estelle, 429 U.S. at 104-105 ("deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment," whether it takes the form of "indifference . . . manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed") (footnotes and internal quotation marks omitted); Farmer, 511 U.S. at 839 (indicating that a "subjective recklessness as used in the criminal law" is an appropriate definition of "deliberate indifference" under the Eighth Amendment).

In Farmer, the Supreme Court held that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." See id. at 837 (emphasis added). More than mere negligence is required to support a claim of cruel and unusual punishment. See Estelle, 429 U.S. at106 (explaining that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment" and that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); see also Arnold v. Moore, 980 F.Supp. 28, 34 (D.D.C. 1997); Fitzgerald v. Corr. Corp. of America, 403 F.3d 1134, 1143 (10th Cir.2005) (same); Perkins v. Kan. Dept. of Corr., 165 F.3d 803, 811 (10th Cir. 1999)

14

(disagreements with the treatment provided by prison medical staff do not in themselves rise to the level of deliberate indifference necessary to violate the Eighth Amendment); Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980) (inadvertent or negligent failure to provide medical care, however serious the consequences, does not rise to "deliberate indifference to serious medical needs" and is not a constitutional violation); See Bowling v. Ridley, 1992 W.L. 23651, *1 (D.D.C. 1992) (noting that "[e]ven conduct representing medical malpractice, which has not been alleged here, does not in itself create constitutional liability").

Thus, "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." See Whitley v. Albers, 475 U.S. 312, 319 (1986); Wilson v. Seiter, 501 U.S. 294, 299 (1991). "Once medical care has been provided, plaintiff must allege conduct outside the norms of professional conduct to establish a constitutional violation." See Bowling, 1992 W.L. at *1.

In this case, even if Plaintiff's allegations were true, they do not suggest negligence, much less rise to the level of a constitutional violation. Plaintiff acknowledges that the BOP is providing him with ibuprofen to treat his arthritis, and he had made no claim that he has been hurt by taking the drug, pointing only to potential long-term effects of use. See Docket Entry No. 1 at 2. The decision made by prison officials to not provide Plaintiff with experimental drugs which by Plaintiff's own admission have not yet been approved by the FDA, see id. at 3, can hardly be described as "wanton" care which is "outside of the norms of professional conduct." See Whitley v. Albers, 475 U.S. at 319; Bowling, 1992 W.L. at *1. Rather, this decision seems eminently reasonable and sensible on its face. Nor has Plaintiff pointed to actual injury caused

by the alleged refusal of USP Lee medical staff to take weekly urine and blood specimens or to take his blood pressure weekly. See Lewis v. Casey, 518 U.S. 343, 350 (1996) (observing that "[i]f . . . a healthy inmate who had suffered no deprivation of needed medical treatment were able to claim violation of his constitutional right to medical care, . . . simply on the ground that the prison medical facilities were inadequate, the essential distinction between judge and executive would have disappeared: it would have become the function of the courts to assure adequate medical care in prisons.") Plaintiff has presented no medical opinion even suggesting that BOP staff acted negligently in any of those matters. Instead, he appears to have made his own independent judgment about the quality of care he is receiving from BOP medical staff.

Courts have demonstrated little tolerance for such unsubstantiated challenges to, and second guessing by, inmates of the course of medical treatment they are receiving. See Bowling, 1992 W.L. at *1 ("a mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel or unusual punishment.") (citing Ramos, 639 F.2d at 575); Hartwell v. United States, 353 F. Supp. 354, 361, n. 23 (D.D.C. 1972) ("The prisoner cannot be the ultimate judge of what medical treatment is necessary or proper for his care.") They have rejected Eighth Amendment claims concerning medication claims under much more extreme circumstances than those alleged here. See, e.g., Estelle, 429 U.S. 97 (1976) (finding that no Eighth Amendment claim was stated where, prison officials, inter alia, inadvertently failed to fill prisoner's prescription for blood pressure medication for four days); Glover v. Ridley, 1994 W.L. 35849, *5 (D.D.C. 1994) (failure to provide the drug AZT on one occasion "clearly fail[s] to meet the deliberate indifference standard"); Cox v. District of Columbia, 834 F.Supp. 439 (D.D.C. 1992) (two-week delay in providing medication to prisoner insufficient to state Eighth Amendment claim); Bryan

16

v. Administrative of F.C.I. Otisville, 897 F. Supp. 134 (S.D.N.Y.1995) (objective prong not met

where prisoner was deprived of medicine for three days, causing fever and mouth infection).

As such, Plaintiff's allegations regarding the medical treatment he has received should be

dismissed for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P.

12(b)(6). Nor can these claims justify a writ of mandamus in this action.

### 2.    Plaintiff Has No Right to the Special Vocational Training he Seeks

Plaintiff claims that USP Lee does "not have a selection of vocational training programs

that will aide [him] in securing gainful employment . . ." See Docket Entry No. 1 at 2. In fact,

USP Lee does provide inmates with a variety of training and educational opportunities. See Ex.

4, Program Statement 5300.21 ("Education, Training, and Leisure Time Program Standards").

In any event, even if Plaintiff's allegation were true, Plaintiff does not have a right to the

"selection of vocational training programs" that he demands. It is well established that an inmate

does not have a constitutional right to "desirable aids to rehabilitation." See Rhodes v.

Chapman, 452 U.S. 337, 347 (1981); see also Women Prisoners of District of Columbia Dept. of

Corrections, et. al. v. District of Columbia, 93 F.3d 910, 927 (D.C. Cir. 1996) ("an inmate has no

constitutional right to work and educational opportunities.") (internal citation omitted); Tanner v.

Federal Bureau of Prisons, 433 F Supp. 2d 117, 123 (D.D.C. 2006) ("[q]uite simply, deprivation

of education or training alone does not violate the Constitution"); Byrd v. Mosely, 942 F.Supp.

642, 644 (D.D.C. 1996) ("it is well established that an inmate has no constitutional right to

participate in a particular educational or vocational program") (internal citations omitted); Garza

v. Miller, 688 F.2d 480, 485 (7th Cir. 1982) (an inmate has no "property or liberty interest in

prison employment or increased recreation [or] educational courses," and "there is no

constitutional mandate to provide educational, rehabilitative, or vocational programs, in the

absence of conditions that rise to a violation of the Eighth Amendment")  As such, this challenge

should be dismissed for failure to state a claim upon which relief can be granted.  <u>See</u> Fed. R.

Civ. P. 12(b)(6).  Nor can this claim serve as the basis for the issuance of a writ or mandamus.

### 3.    Plaintiff's SHU Claims do Not Justify a Writ of Mandamus

Plaintiff has made three Eighth Amendment claims regarding the conditions in USP Lee's

SHU.  First, Plaintiff has alleged that inmates in USP Lee's SHU are not permitted to flush their

own toilets.  <u>See</u> docket entry no. 8 at 2-3.  Second, Plaintiff has represented that USP Lee staff

have placed inmates who "are observed on a hunger or food strike . . . in a holding tank designed

for newly admitted inmates to [the SHU] under observation scrutiny " which does not "have a

tolie[t], sink[,] or shower," and alleged that this practice also had created an "inhumane habitat"

and constituted "cruel and unusual punishment" under the Eighth Amendment.  <u>Id</u>. at 2-3.  Third,

Plaintiff has accused USP Lee's staff of: failing to "promptly tour each tier" in connection with

their "toilet flush" duties.  <u>See id</u>. at 4-5.

Even if Plaintiff's allegations respecting the SHU are accepted by this Court for the

purposes of this motion, this Court should not grant Mandamus relief to plaintiff based on any of

these allegations because Plaintiff is no longer in the SHU at this time.  Indeed, he has not been

in the SHU in over nine months, since August 15, 2006.  <u>See</u> Document 8-2 (Plaintiff's own

affidavit, which appears as an exhibit to Plaintiff's Motion to Amend his Petition for Writ of

Mandamus, advising that he was "held in the holding cell at USP Lee, in Special Housing Unit

between August 11, through August 15, 2006 . . . "); <u>see also</u> Document 8-2 (copy of two inmate

requests to staff, that Plaintiff filed as exhibits, indicating that Plaintiff was placed in the holding

tank on "8/11/06") .

Thus, all of Plaintiff's claims which concern SHU conditions are moot and Plaintiff now

lacks standing to challenge the conditions in the SHU.  See, e.g., Lewis v. Stempson, 737 F.

Supp. 667 (D.D.C. 1990) (finding that "[t]he relief which petitioner seeks, to be transferred from

cell block three, has been provided to petitioner and accordingly his claim is moot"); Martin v.

Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (holding that prisoner's claims for injunctive and

declaratory relief concerning prison conditions were moot where prisoner had been moved to

another prison unit); see also Larsen v. U.S. Navy, 2007 W.L. 1241861, *9 (D.D.C. 2007)

(observing that "[a]n intervening event may render a claim moot if (1) there is no reasonable

expectation that the conduct will recur and (2) interim relief or events have completely and

irrevocably eradicated the effects of the alleged violations") (internal citations omitted); Kadri v.

Bureau of Prisons, 2006 W.L. 581249, *2 (D.D.C. 2006) (same).

In any event, Plaintiff's first allegation is untrue.  Toilets in the SHU at USP Lee may

apparently be flushed by pushing a hard plastic button.  Because the authorities at USP Lee have

discovered that some inmates who were in the SHU had removed the buttons from the toilet and

crafted them into weapons, the buttons were removed and staff must now manually flush the

toilets while doing rounds.  See Ex. 10, Informal Resolution Form, Request for Administrative

Remedies, Administrative Remedy Appeals, and Institution Responses, Concerning the SHU

Toilet Issue (the name and identifying information of the prisoners who brought these remedy

request and appeals have been omitted from this brief and redacted from exhibit 10 to protect the

other inmates' confidentiality).  But, rounds occur at regular intervals.  Id.  The final decision

was made by Brian Bledsoe, the USP Lee's Warden at that time.

Moreover, Plaintiff's treatment while in the SHU was reasonable and consistent with

BOP policy.  While in SHU for misconduct, he apparently threatened to go on a hunger strike.

Once he did so, he was placed in holding cell, consistent with longstanding BOP policy.  See Ex.

5, BOP Program Statement 5562.05 ("Hunger Strikes") at 2-4.  Program Statement 5562.05

provides that when it becomes clear to staff that an inmate is on a hunger strike, they shall place

the inmate in a medically appropriate locked room for close monitoring, where he will receive

three meals a day, and an adequate supply of drinking water.  Id. at 2-5.  This room will be a

single cell observation room (i.e., dry cell or cell with water shut-off capabilities), where no other

inmate contact is possible (i.e., other inmates can't pass food or liquid items to the inmate on

hunger strike status).  Id. at 5.  Ordinarily, placement in the medically appropriate room is a

determination the institution physician makes.  Id. at 3.

        Even if they were accurate, none of Plaintiff's claims regarding conditions in the SHU

would rise to the level of "extreme depravation" required to make out an Eighth Amendment

violation.  See, e.g., Sandin v. Conner, 515 U.S. 472, 485 (1995) (observing that "'[l]awful

incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a

retraction justified by the considerations underlying our penal system'" and that "[d]iscipline by

prison officials in response to a wide range of misconduct falls within the expected perimeters of

the sentence imposed by a court of law") (internal citation omitted); Whitley, 475 U.S. 312

(1986); Farmer, 511 U.S. 825, 839 (1994); Hudson v. McMillian, 503 U.S. 1, 9 (1992) (noting

that "extreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-

confinement claim" and that "[b]ecause routine discomfort is part of the penalty that criminal

offenders pay for their offenses against society, only those deprivations denying the minimal

civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth

Amendment violation.") (quotations and citations omitted).  Plaintiff's Eighth amendment

allegations regarding the SHU are exactly the sort of claims which courts have rejected in the

past.  See, e.g., Cunningham v. Eyman, 2001 W.L. 939091, **3 (7th Cir. 2001) (no Eighth

Amendment claim stated where shackled prisoner forced to soil self and spent four to five hours in soiled clothing); Key v. McKinney, 176 F.3d 1083, 1086 (8th Cir. 1999) (prisoner who was restrained in handcuffs and shackles for 24 hours, making it more difficult for him to relieve himself, did not suffer a constitutional violation); Harris v. Fleming, 839 F.2d 1232, 1235-36 (7th Cir. 1988) (temporary deprivation of toilet paper insufficient to state Eighth Amendment claim). Thus, Plaintiff's SHU related claims should be dismissed as they are moot and fail to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). Nor can they serve as a basis upon which a writ of mandamus may issue.

### 4. Plaintiff has No Statutory or Constitutional Right to a Prison Transfer

Plaintiff claims that the "wrong statutory authority" was applied by Warden O'Brien regarding two decisions not to transfer him to other facilities. See docket entry no. 8 at 2-3. Plaintiff also accuses USP Lee's staff of showing partiality toward other less deserving inmates with respect to prison transfer requests, all in violation of 18 U.S.C. § 3621(b) and Program Statement 3420.09. See id. at 4-5. These claims are untrue. Plaintiff sought transfers to less secure facilities and was denied. In January, 2006, a determination was made that he would not be transferred based on security concerns. In August, 2006, Plaintiff apparently received an incident report for being insolent to staff which prevented him from being transferred at that time as well. Even before this disciplinary incident, Plaintiff would likely have been ineligible for a transfer because his custody classification score reflected the fact that his offense had been deemed to be at greatest severity level (in view of the circumstances of his underlying crime). See Ex. 11, Plaintiff's Administrative Remedies and Appeals, and Institution Responses, concerning his custody classification score which relates to the transfer Issue; see also Watts v.

21

Federal Bureau of Prisons, 2006 W.L. 240787, *1 (W.D. Va. 2006) (explaining that the Plaintiff "Watts's custody classification was based, in part, on the severity of his current offense," that "[a]s a result of having committed an offense of the greatest severity, seven points were added to Watts's base score"); id. at *1-2 (rejecting Plaintiff's claim that the BOP "improperly calculated his custody calculation score, and that the Bureau's improper calculation has affected his ability to transfer to a lower security facility," explaining that "since [he] does not have a protected [liberty] interest in a particular classification or in being assigned to a particular institution, his due process claim must be dismissed" and has "failed to state a claim upon which relief may be granted."). It stands to reason that inmates who present disciplinary problems are unlikely to be transferred to less secure facilities. Plaintiff has provided no evidence of favoritism or partiality.

Morever, Plaintiff did not have a statutory right to a transfer. Persons convicted of criminal offenses against the United States and sentenced to a term of imprisonment are placed in the custody of the BOP. See 18 U.S.C. § 3621(a). Federal law further provides that "the [BOP] shall designate the place of the prisoner's imprisonment" and "may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, . . . whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable," based on consideration of several criteria. See 18 U.S.C. § 3621(b) (emphasis added) Thus, Congress has given the BOP broad discretion to "designate the place of the prisoner's imprisonment." Id. Furthermore, federal law provides that the BOP may "at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another." See 18 U.S.C. § 3621(b); Tanner v. Federal Bureau of Prisons, 433 F. Supp.2d 117, 124 (D.D.C. 2006) (noting that "[c]ourts give deference to prison officials' exercise of [their transfer] authority" under section 3621(b))

(internal citation omitted).  Nor did Plaintiff have a constitutional right to be transferred to his prison of choice.  See, e.g., Mangiafico v. Hawk, 1998 W.L. 316123 (D.C. Cir. 1998) (noting that an inmate has "no constitutionally protected liberty interest in being incarcerated in a particular institution") (internal citations omitted); Watts, 2006 W.L. at *1-2.  Thus, Plaintiff's transfer related claims should be dismissed as they fail to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  Nor can they serve as a basis upon which a writ of mandamus may issue.

> **5.    Plaintiff's Claims that Prison Staff are Improperly Supervised, Behave Unprofessionally, Retaliated Against Him, Interfered with his Legal Mail, and Allowed Inmates with "Communicable" Diseases to Roam Around the Prison Are Not Concrete Cognizable Claims Upon Which Relief Can be Granted**

Plaintiff has claimed, without substantiation, that the authorities at USP Lee have allowed inmates with "communicable diseases" to "roam" around the prison, exposing them to others, and have failed to effectively diagnose and treat them.  See Docket Entry No. 11 at 1-3.  Without further explanation, Plaintiff also contends that the USP Lee's warden has failed to properly supervise and discipline his staff.  See Docket Entry No. 8 at 3-4.  He claims that USP Lee's staff has engaged in unspecified "unprofessional conduct that was often embedded with racism" and has retaliated in unspecified ways against him in response to his filing of grievances.  Id. at 4-5.

In fact, Defendant is aware of no reports of outbreaks of major diseases at USP Lee and Plaintiff has not alleged that any such outbreaks have occurred.[5]  Nor has Plaintiff pointed to any concrete injury that he has suffered as a result of the USP's Lee alleged actions concerning the inmates with "communicable diseases" which Plaintiff mentions.  Notably, he does not claim to

---

[5]  Indeed, the BOP has lengthy and detailed policies in place concerning "Infectious Disease Management."  See Ex. 6, Program Statement P6190.03.

be ill himself or to have contracted any of their illnesses.  Nor is it clear exactly how Plaintiff

would define the term "communicable disease," or what policies he believes should be instituted

with respect to inmates with such conditions.  All of Plaintiff's allegations concerning his fellow

inmates with illnesses appear to describe past, not ongoing, events, with the exception of his

claim about the inmate with "H-Pyloria."  See Docket Entry No. 11 at 1-3 (complaining that a

prisoner with "contagious hepatitis A, B, C . . . work<u>ed</u> in the [k]itchen," that "medical staff <u>had</u>

refu<u>sed</u> to medically treat" an inmate with "Stalph infection" that "constantly leek<u>ed</u> pus," and

that staff "is not effectively treating" a third inmate who "is infected with H-Pyloria among other

communicable diseases.") (emphasis added).  Plaintiff probably means to refer to H-Pylori, a

bacteria which causes ulcers, as the website for the Centers for Disease Control ("CDC")

contains references to an "H Pylori," but none to "H Pylori<u>a</u>."  Even if Plaintiff were to contract

H-Pylori from his fellow inmate, it is easily treatable.[6]

Nor has Plaintiff specified how the warden has failed to supervise USP Lee's staff, what

retaliation he claims to have suffered in the hands of that staff, and what injuries he believes he

has suffered as a result of these actions and omissions.  Thus, Plaintiff's allegations regarding

"communicable diseases", the supervision and disciplining of staff, and their allegedly

unprofessional conduct and unspecified retaliation do not constitute claims demonstrating actual

or imminent injuries which can be adjudicated by this Court.

Plaintiff has also accused USP Lee's staff of tampering with and obstructing his and other

inmates' legal mail.  See Docket Entry No. 11 at 2-4.  Plaintiff has not specified which pieces of

---

[6]    See http://www.cdc.gov/ncidod/dbmd/diseaseinfo/hpylori_g.htm (noting that "therapy
is 1-2 weeks of one or two antibiotics and a medicine that will reduce the acid in the stomach"
and that "eliminating *H. pylori* with antibiotics means that there is a greater than 90% chance that
the ulcer can be cured for good.")

legal mail were obstructed or provided any real evidence that such tampering ever occurred. Nor has he pointed to any injury or adverse effect he personally has suffered by the alleged tampering, in the form of a motion denied or an action dismissed. In fact, Plaintiff is a serial filer having filed 73 civil suits in various federal courts. See Ex. 7, PACER Case Index Report.[7] These facts would appear to refute Plaintiff's suggestion that he has been denied access to the courts as a result of the obstruction of his legal mail and to undercut Plaintiff's claim that he has suffered a concrete injury which this court should address with a writ of mandamus. Given the sheer number of actions in which Plaintiff is involved, it is not surprising that Plaintiff would occasionally experience delay and mishaps in the delivery of the large volume of legal mail which is surely associated with all of these actions, despite the best efforts of prison officials and the Postal Department. Such inadvertent delays and mishaps do not rise to the level of a constitutional violation. See Lewis v. Casey, 518 U.S. at 349 ("[i]t is for the courts to remedy past or imminent official interference with individual inmates' presentation of claims to the courts; it is for the political branches of the State and Federal Governments to manage prisons in such fashion that official interference with the presentation of claims will not occur."); Crawford-El v. Britton, 951 F.2d 1314, 1318-19 (D.C. Cir. 1991) (finding that the misdelivery of legal mail in prison does not implicate an inmate's "constitutional right of access to the courts" unless there is "either an intent to thwart the prisoner's access to courts, or at a minimum deliberate or reckless indifference to a foreseeable disruptive effect"); Ross v. Department of Corrections,

---

[7] It is worth noting that at least 7 of these suits have been dismissed such that they count as strikes under the PLRA's three strikes rule. See 28 U.S.C. § 1915(g); Ex. 8, Defendant's Motion to Dismiss, or in the Alternative for Summary Judgment filed in Watts v. BOP, 06-1955 (D.D.C.) (listing and describing these actions); see also Ex. 9, Copy of May 24, 2007 Order in Watts v. BOP, 06-1955 (D.D.C.) (finding that Plaintiff has more than three strikes).

2006 W.L. 3208670, *3 (D.D.C. 2006) (noting that "Plaintiff has not stated that he has been unable to pursue a claim due to interference with his legal mail" and that"[h]e has not alleged the efforts, if any, that he has taken to pursue a claim and how that effort may have been frustrated by jail officials" and concluding that "[a]s a result, this claim will also be dismissed").  Nor does Plaintiff have standing to complain about the supposed obstruction of his fellow inmate's mail.

The ripeness requirement is designed to "'prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'"  See National Park Hospitality Ass'n v. Department of Interior, 538 U.S. 803, 807-08 (2003) (internal citations omitted); Ohio Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 732-33 (1998); Abbott Laboratories v. Gardner, 387 U.S. 136, 148-149 (1967); Askins v. District of Columbia, 877 F.2d 94, 97 (D.C. Cir. 1989).  "Article III of the Constitution confines the federal courts to adjudicating actual"'cases' and "'controversies,'" and this requirement "defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded."  See Allen v. Wright, 468 U.S. 737, 750 (1984); Lewis, 518 U.S. at 349 ("[i]t is the role of courts to provide relief to claimants . . . who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution" and that "the distinction between the two roles would be obliterated if, to invoke intervention of the courts, no actual or imminent harm were needed, but merely the status of being subject to a governmental institution that was not organized or managed properly").

"In order to satisfy the 'irreducible constitutional minimum of standing,'a litigant must

26

demonstrate that it has suffered a 'concrete and particularized' injury that is: 1) "actual or imminent," . . . 2) caused by, or fairly traceable to, an act that the litigant challenges in the instant litigation,. . . ; and 3) redressable by the court." See Fla. Audubon Soc'y v. Bentsen, 94 F.3d 658, 663 (D.C. Cir. 1996) (en banc) (internal quotation marks and citations omitted); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Allen, 468 U.S. at 752; Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 38 (1976). Plaintiff's allegations that prison staff have not been properly supervised and disciplined, that they have engaged in unprofessional conduct, and that they have retaliated against Plaintiff, and allowed prisoners with "communicable diseases" to "roam" around the prison are not yet ripe as they involve "abstract disagreements over administrative policies" and have not clearly been felt "in a concrete way" by Plaintiff. These allegations also fail to state a "concrete and particularized injury" that is clearly "actual or imminent" and "redressible" by the court. Consequently, the portions of Plaintiff's action which concern these allegations should be dismissed for failure to state a claim. See Fed. R. Civ. P. 12(b)(6). Nor do those allegations support the issuance of a writ of mandamus.

**B.    The BOP Has No Clear Duty to Take Any of the Actions Plaintiff Demands**

The issuance of a Writ of Mandamus is only appropriate in the extraordinary circumstance "where a public official has violated a 'ministerial' duty which is 'so plainly prescribed as to be free from doubt and equivalent to a positive command.'" See, e.g., Fine v. Mainella, 2003 WL 22134560, **1 (D.C. Cir. 2003) (citing Consolidated Edison Co. of New York, Inc. v. Ashcroft, 286 F.3d 600, 605 (D.C. Cir. 2002); Wilbur v. United States, 281 U.S. 206, 218-19 (1929)). "[W]here the duty is not thus plainly prescribed, but depends on a statute or statutes the construction or application of which is not free from doubt, it is regarded as involving the character of judgment or discretion which cannot be controlled by mandamus."

See Consolidated Edison Co., 286 F.3d at 605 (quoting Wilbur, 281 U.S. at 218-19).

The Attorney General, the BOP, and USP Lee officials have been given broad authority to administer the federal prison system, and the Attorney General has delegated this authority to the BOP. See 18 U.S.C. §§ 4001, 3621; 28 C.F.R. § 0.96. All of Plaintiff's allegations and complaints concern matters about which they have been given considerable discretion: the treatment of inmate health problems, the selection of vocational programs at the prison, the supervision and disciplining of staff, the regulation of the SHU (including the availability of bathrooms there), their response to hunger strikes by inmates, and decisions concerning prison designations and transfers. See id.; see also supra at 12-26 & n. 4. Courts owe considerable deference to the determinations prison authorities have made in each of these areas. See, e.g., Beards v. Banks, 126 S.Ct. 2572, 2578 (2006) (noting that "courts owe 'substantial deference to the professional judgment of prison administrators,'" and that "restrictive prison regulations are permissible if they are 'reasonably related' to legitimate penological interests,'. . . and are not an "exaggerated response" to such objectives") (internal citations omitted); Women Prisoners, 93 F.3d at 931-32 (observing that "[b]ecause courts have little experience in the "inordinately difficult" task of running a prison, they should give deference to prison officials where possible."). Thus, Plaintiff has not come close to establishing or even pleading any actions or omissions which run afoul of "plainly proscribed" duties of the prison officials which are "free from doubt and equivalent to a positive command.". See, id.; Fine, 2003 WL at **1.

**C.    Mandamus is Improper as Plaintiff has Alternative Remedies Available to Him: the PLRA's Administrative Appeals Process (Which He Failed to Fully Pursue) and Then a Civil Action in the Proper Forum Concerning his Claims**

A Writ of Mandamus is an extraordinary remedy which, generally, will not issue absent an adequate alternative remedy, either judicial or administrative. See, e.g., Power, 292 F.3d at

784 (observing that "the alternative remedies that might call for refusal to resort to writ of mandamus encompass judicial remedies . . . as well as administrative ones") (citing Cartier v. Secretary of State, 506 F.2d 191 (D.C. Cir. 1974)); Association of Am. Medical Colleges v. Califano, 569 F.2d 101, 111, n. 80 (D.C. Cir. 1977); Heckler, 466 U.S. at 616; Kerr, 426 U.S. at 403 (1976). As has been mentioned, Plaintiff clearly has not exhausted the available administrative remedies in this matter. See supra at 7-10. After exhausting his administrative remedies, Plaintiff also could file a regular civil action in the proper forum concerning his claims, rather a petition for a Writ of Mandamus: something he has not been shy about doing in the past. Plaintiff's failure to pursue alternative administrative and judicial remedies which are available to him are among the reasons that this Court should not issue a writ of mandamus.

IV.    **This Court Should Also Not Issue a Writ of Mandamus Because the Stringent Requirements of 18 U.S.C. § 3626(a)(1) Cannot Be Satisfied in this Case**

The provision governing prospective relief[8] within the PLRA is codified at 18 U.S.C § 3626(a)(1). The provision imposes substantial limitations on the issuance of mandamus relief. Specifically, section 3626(a) provides in relevant part that "[t]he court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." Id. To satisfy the provision, a court must make specific findings of the Federal right violated and how the relief granted is narrowly drawn. See, e.g., Johnson v. Breeden, 280 F.3d 1308, 1326 (11th Cir. 2002) (explaining that "conclusory language" is "not enough to satisfy the requirements of 18 U.S.C. § 3626(a)(1)(A)").

---

[8] The statute defines prospective relief as "all relief other than compensatory monetary damages." See 18 U.S.C. § 3626(g)(7).

29

Section 3626(a) also instructs that "[t]he court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." <u>See</u> 18 U.S.C. § 3626(a). Any order that this court might issue in this case with respect to the claims made by Plaintiff implicates this clause, in that it will have an "adverse impact" on the BOP's authority to manage its inmate population and properly allocate the available resources, as well as the operation of the federal prison system. This court should defer to the concerns of prison officials in this regard. <u>See</u>, <u>e.g.</u>, <u>Beards v. Banks</u>, 126 S.Ct. at 2578 (2006); <u>Women Prisoners</u>, 93 F.3d at 931-32.

In this case, there are no federal rights upon which to base any writ of mandamus, as has been explained above. Even if there were, the adverse impact upon the provision of health care to prisoners and the operation of the federal criminal justice system outweighs any equities in favor of Plaintiff. This, this Court cannot issue a writ of mandamus based on Plaintiff's allegations consistent with 18 U.S.C. § 3626(a).

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court dismiss Plaintiff's action, and not issue a Writ of Mandamus because Plaintiff fails to meet the stringent standards for obtaining such relief.

Respectfully submitted,


\_\_/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


\_\_/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


\_\_/s/_____
JONATHAN C. BRUMER, D.C. BAR # 463328
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E4815
Washington, D.C. 20530
(202) 514-7431
(202) 514-8780 (facsimile)


Of Counsel:

Delaine Martin Hill
Assistant General Counsel
Office of the General Counsel
Litigation Branch
Federal Bureau of Prisons

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 29th day of June, 2007, I caused the foregoing Motion to Dismiss and

*Memorandum in Response to this Court's May 4, 2007 Order To Show Cause Why a Writ of Mandamus*

*Should Not Issue, and in Support of Defendant's Motion to Dismiss* to be served on *pro se* Plaintiff,

postage prepaid, addressed as follows:


Andre Sylvester Watts
R13799-083
Lee County United States
  Penitentiary
P. O. Box 305
Jonesville, VA 24263-0305



                                          s/Jonathan C. Brumer
                                          JONATHAN C. BRUMER, D.C. BAR # 463328
                                          Special Assistant United States Attorney
                                          555 4th Street, N.W., Room E4815
                                          Washington, D.C. 20530
                                          (202) 514-7431
                                          (202) 514-8780 (facsimile)