Exhibit 2, Part 1

P5270.07 INMATE DISCIPLINE & SPECIAL HOUSING UNITS

**Special Note:** This policy was reformatted 3/20/06 because of technical problems with the electronic file.  Changes notices located at the beginning of the file have been removed and change notice page headers have been replaced with standard automatic headers.
**None** of the text has been changed, therefore, there is no new number or date.

U.S. Department of Justice
Federal Bureau of Prisons

Reformatted 3/20/2006

# Program Statement

| | |
|---|---|
| **OPI:** | CPD/CSB |
| **NUMBER:** | P5270.07 |
| **DATE:** | 12/29/1987 |
| **SUBJECT:** | Inmate Discipline and Special Housing Units |

This Program Statement transmits policies and procedures prescribed for Inmate Discipline and Special Housing Units. This Program Statement becomes effective January 4, 1988. This effective date means that the new rules and procedures will apply to the processing of all acts of misconduct committed at and after 12:01 a.m. on January 4, 1988.

\s\

J. MICHAEL QUINLAN
Director

**[Bracketed Bold - Rules]**
Regular Type - Implementing Information

NOTE:  ONLY SIGNIFICANT CHANGES IN THE FORMER PROGRAM STATEMENT ON INMATE DISCIPLINE (P.S. 5270.6) ARE INDICATED BY THE FOLLOWING SYMBOL:*

P5270.07
12/29/1987
Table of Contents, Page i

INMATE DISCIPLINE AND SPECIAL HOUSING UNITS

TABLE OF CONTENTS

Chapter #              Subject                        Pages

1. . . . . .INTRODUCTION . . . . . . . . . . . . . . . Ch. 1, 1-4

2. . . . .NOTICE TO INMATE OF BUREAU OF PRISONS RULES  Ch. 2, 1-3

        Table 1 - Summary of Disciplinary System . . . . . Ch. 2, 2

        Table 2 - Time Limits in Disciplinary Process . . Ch. 2, 3

3. . . . .INMATE RIGHTS AND RESPONSIBILITIES . . . . Ch. 3, 1-2

4. . . . .PROHIBITED ACTS AND DISCIPLINARY SEVERITY
          SCALE . . . . . . . . . . . . . . . . . . Ch. 4, 1-20

Table 3 - Prohibited Acts and Disciplinary
          Severity Scale . . . . . . . . . . . . . . Ch. 4, 3-12

          Greatest Category
          High Category
          Moderate Category
          Low Moderate Category

Table 4 - Sanctions . . . . . . . . . . . . . . Ch. 4, 13-17

Table 5 - Sanctions for Repetition of
          Prohibited Acts Within Same Category . . . . Ch. 4, 18

Table 6 - Sanctions by Severity of
          Prohibited Act, with Eligibility
          For Restoration of Forfeited and
          Withheld Statutory Good Time . . . . . . Ch. 4, 19-20

        Disallowance of Good Conduct Time . . . . . Ch. 4, Appendix

5. . . . .INCIDENT REPORT . . . . . . . . . . . . . Ch. 5, 1-4

          Incident Report.
          Investigation.

          Chronological Disciplinary Record BP-322(52) Ch. 5, Appendix

6. . . . .INITIAL HEARING . . . . . . . . . . . . . Ch. 6, 1-4

## TABLE OF CONTENTS (cont'd)

Chapter #        Subject                                        Pages

7. . . . .DISCIPLINE HEARING OFFICER  . . . . . . . . Ch. 7, 1-8

         Establishment and Functioning of the
              Discipline Hearing Officer.
         Procedures before the Discipline
              Hearing Officer.
         Dispositions of the Discipline
              Hearing Officer.

         Checklist for DHO Actions . . . . . . Ch. 7, Appendix 1

         Confidential Informant Information  . Ch. 7, Appendix 2

8. . . . .APPEALS OF DISCIPLINARY HEARING ACTIONS . . Ch. 8, 1-2

9. . . . .SPECIAL HOUSING UNITS . . . . . . . . . . . Ch. 9, 1-11

         Disciplinary Segregation . . . . . . . . Ch. 9, 1-5

         Justification for Placement in
              Disciplinary Segregation and
         Review of Inmates in Disciplinary
              Segregation.
         Conditions of Disciplinary Segregation.

    Administrative Detention . . . . . . . . . . Ch. 9, 6-10

    Administrative Detention.
         Placement in Administrative Detention.
         Memorandum Detailing Reasons for
              Placement.
         Review of Inmates Housed in
         Administrative Detention.
         Conditions of Administrative Detention.

    Protection Cases . . . . . . . . . . . . . Ch. 9, 10-11

    Personal Property Ordinarily Allowed in
         Administrative Detention  . . . . . . Ch. 9, Appendix

P5270.07
12/29/1987
Table of Contents, Page iii

TABLE OF CONTENTS (cont'd)

Chapter #              Subject                                    Pages

10. . . . . . .RECORDS AND FORMS  . . . . . . . . . . Ch. 10, 1-15

              Incident Report BP-288(52).
              Inmate Rights at Discipline Hearing
                 BP-293(52).
              Notice of Discipline Hearing Before the
                 Discipline Hearing Officer (DHO) BP-294(52).
              Duties of Staff Representative BP-306(52).
              Waiver of Appearance BP-307(52).
              Discipline Hearing Officer(DHO) Report BP-304(52)
              Administrative Detention Order BP-308(52).
              Special Housing Unit Record BP-292(52).
              Special Housing Review BP-295(52)
              Temporary Placement in Disciplinary Segregation
                 Order BP-321(52).

11. . . . . . .REFERENCES . . . . . . . . . . . . . . Ch. 11, 1-2

              Correctional Standards Reflected in Program Statement.

CHAPTER 1

INTRODUCTION

1. **[**<u>**PURPOSE AND SCOPE**</u> § 541.10

   **a.  So that inmates may live in a safe and orderly environment, it is necessary for institution authorities to impose discipline on those inmates whose behavior is not in compliance with Bureau of Prisons rules.  The provisions of this rule apply to all persons committed to the care, custody, and control (direct or constructive) of the Bureau of Prisons.]**

   Examples of persons to whom this policy applies include, but are not limited to, an inmate who is on pretrial status, or on writ, or on escorted trip or furlough, or who is escorted by U. S. Marshals or other federal law enforcement officials, or who is in a camp, contract facility, (other than contract CCCs) or hospital, or who is returned to Bureau custody from a contract facility (includes contract CCCs).  These provisions do not apply to a federal inmate designated to a non-federal facility (e.g., inmates serving Federal sentences in state facilities or contract CCCs).

   **[b.  The following general principles apply in every disciplinary action taken:**

      **(1)  Only institution staff may take disciplinary action.]**

   The term institution staff ordinarily refers to Bureau of Prisons employees.  Any exception to this provision may be made only with the Regional Director's prior written approval.

   In contract CCCs, Community Corrections Managers have the authority to take disciplinary action as specified in the Community Corrections Manual.

      **[(2)  Staff shall take disciplinary action at such times and to the degree necessary to regulate an inmate's behavior within Bureau rules and institution guidelines and to promote a safe and orderly institution environment.**

      **(3)  Staff shall control inmate behavior in a completely impartial and consistent manner.**

      **(4)  Disciplinary action may not be capricious or**

retaliatory.
     **(5)   Staff may not impose or allow imposition of corporal
punishment of any kind.]**

     **[(6)   If it appears at any stage of the disciplinary process
that an inmate is mentally ill, staff shall refer the inmate to a
mental health professional for determination of whether the
inmate is responsible for his conduct or is incompetent.   Staff
may take no disciplinary action against an inmate whom mental
health staff determines to be incompetent or not responsible for
his conduct.**

     **(a)   A person is not responsible for his conduct if, at
the time of the conduct, the person, as a result of a severe
mental disease or defect, was unable to appreciate the nature and
quality or the wrongfulness of his acts.   When a person is
determined not responsible for his conduct, the Incident Report
is to show as a finding that the person did not commit the
prohibited act because that person was found not to be mentally
responsible for his conduct.]**

     The Incident Report is to be retained in the inmate
central file.   The Discipline Hearing Officer (DHO) or the Unit
Discipline Committee (UDC), if it takes final action, shall enter
the DHO or UDC finding that the person was not responsible for
his conduct into SENTRY in the inmate's Chronological
Disciplinary Record.

     **[(b)   A person is incompetent if that person lacks the
ability to understand the nature of the disciplinary proceedings,
or to assist in his defense at the proceedings.   When a person is
determined incompetent, the disciplinary proceedings shall be
postponed until such time as the inmate is able to understand the
nature of the disciplinary proceedings and to assist in his
defense at those proceedings.   If competency is not restored
within a reasonable period of time, the Incident Report is to
show as a finding that the inmate is incompetent to assist in his
or her defense at the disciplinary proceedings.]**

     The Incident Report is to be retained in the inmate
central file.   The DHO or the UDC chairman shall record the
finding that the person was determined incompetent into SENTRY in
the inmate's Chronological Disciplinary Record.

     It is generally the UDC which initiates referral to the
appropriate mental health professional.   Where this occurs, the

completed mental health evaluation is to be returned to the UDC.
The UDC will then decide whether the incident may be handled by
the UDC (other than greatest severity), or whether it should be
referred to the DHO.  In Greatest Severity cases  (see Chapter
4), the UDC may refer an inmate for a mental health evaluation
concurrently with the required referral to the Discipline Hearing
Officer.  The completed evaluation is to be returned to the UDC,
who will then forward it to the DHO.

    (7)  Accurate, detailed reports of disciplinary actions
shall be maintained in accordance with the requirements of this
Program Statement.

2.  <u>DIRECTIVES AFFECTED</u>

  a.  <u>Directive Rescinded</u>

    P.S. 5270.06    Inmate Discipline and Special Housing Units
                   (10/01/81)

  b.  <u>Directives Referenced</u>

    P.S. 1315.05    Inmate Legal Activities (06/13/94)
    P.S. 1330.11    Administrative Remedy Procedure for Inmates
                   (10/29/93)
    P.S. 2000.02    Accounting Management Manual (10/15/86)
    P.S. 4500.03    Trust Fund Management Manual (04/04/89)
    P.S. 4700.03    Food Service Manual (06/10/91)
    P.S. 5100.05    Security Designation and Custody
                   classification System (06/16/94)
    P.S. 5180.03    Central Inmate Monitoring System (09/14/90)
    P.S. 5212.05    Control Unit Programs (08/14/84)
    P.S. 5215.04    Youth Corrections Act (YCA) Institutions and
                   Programs (09/23/93)
    P.S. 5264.05    Telephone Regulations for Inmates (04/25/94)
    P.S. 5265.08    Correspondence (10/01/85)
    P.S. 5267.05    Visiting Regulations (07/21/93)
    P.S. 5322.09    Classification and Program Review of Inmates
                   (03/10/94)
    P.S. 5360.05    Religious Beliefs and Practices of Committed
                   Offenders (12/14/84)
    P.S. 5380.02    Financial Responsibility Program, Inmate
                   (05/15/91)
    P.S. 5500.05    Correctional Services Manual (06/01/93)
    P.S. 5507.01    Constitutional Requirements in the
                   Investigation of Institution Crime (02/19/68)
    P.S. 5521.04    Searches of Housing Units, Inmates, and
                   Inmate Work Areas (05/06/91)

```
P.S. 5550.04    Escape from Extended Limits of Confinement
                (07/13/89)
P.S. 5580.02    Personal Property (04/27/83)
P.S. 5880.28    Sentence Computation Manual (02/21/94)
P.S. 5880.30    Sentence Computation Manual (07/16/93)
P.S. 7300.08    Community Corrections Manual (04/01/91)
P.S. 7331.02    Pretrial Inmates (11/10/80)
```

c.  Rules cited in this Program Statement are contained in 28 CFR § 541.2 and §§ 541.10-23.

3.  STANDARDS REFERENCED

a. American Correctional Association Foundation/Core Standards for Adult Correctional Institutions: FC2-4056, FC2-4057, FC2-4058, FC2-4059, FC2-4061, FC2-4062, FC2-4084, FC2-4085, C2-4098, C2-4099, C2-4100, C2-4101, C2-4102, C2-4103, C2-4104, C2-4105, C2-4106, C2-4107, C2-4108, C2-4110, C2-4111, C2-4112, C2-4113, C2-4175, C2-4176, C2-4177, C2-4178, C2-4179, C2-4180, C2-4181, C2-4182, C2-4183, C2-4184, C2-4185, C2-4186, C2-4187, C2-4188, C2-4189, C2-4190, C2-4391, C2-4392, C2-4393, C2-4394, C2-4395, C2-4396;

b.  American Correctional Association 3rd Edition Standards for Adult Correctional Institutions: 3-4214, 3-4215, 3-4216, 3-4217, 3-4218, 3-4219, 3-4220, 3-4221, 3-4222, 3-4223, 3-4226, 3-4227, 3-4228, 3-4229, 3-4230, 3-4231, 3-4232, 3-4233, 3-4234, 3-4236, 3-4237, 3-4238, 3-4239, 4-3240, 3-4241, 3-4242, 3-4243, 3-4244, 3-4246, 3-4248, 3-4249, 3-4250, 3-4251, 3-4253, 3-4254, 3-4255, 3-4256, 3-4257, 3-4258, 3-4259, 3-4260, 3-4261;

c.  American Correctional Association Foundation/Core Standards for Adult Local Detention Facilities: FC2-5057, FC2-5058, FC2-5059, FC2-5093, C2-5139, C2-5140, C2-5141, C2-5142, C2-5143, C2-4144, C2-5146, C2-5147, C2-5148, C2-5149, C2-5150, C2-5151, C2-5152, C2-5153, C2-5154, C2-5155, C2-5156, C2-5201, C2-5202, C2-5203, C2-5204, C2-5205, C2-5206, C2-5207, C2-5208, C2-5210, C2-5211, C2-5212, C2-5213, C2-5214, C2-5215, C2-5216, C2-5217;

d.  American Correctional Association 3rd Edition Standards for Adult Local Detention Facilities: 3-ALDF-3C-01, 3C-02, 3C-03, 3C-04, 3C-05, 3C-06, 3C-07, 3C-08, 3C-09, 3C-10, 3C-11, 3C-12, 3C-13, 3C-14, 3C-15, 3C-16, 3C-17, 3C-18, 3C-19, 3C-20, 3C-21, 3C-22, 3D-01, 3D-02, 3D-03, 3D-04, 3D-05, 3D-06, 3D-07, 3D-09, 3D-11, 3D-12, 3D-13, 3D-14, 3D-15, 3D-16, 3D-17, 3D-18, 3D-19, 3D-20, 3D-21, 3D-22, 3D-23, 3D-24.

4.  [DEFINITIONS § 541.2

P5270.07
12/29/1987
Chapter 1, Page 5

a. __Investigating Officer__.  **The term Investigating Officer refers to an employee of supervisory level who conducts the investigation concerning alleged charge(s) of inmate misconduct. The Investigating Officer may not be the employee reporting the incident, or one who was involved in the incident in question.]**

For the purposes of this rule, the Investigating Officer is ordinarily a Lieutenant, but the Warden at each institution may appoint another staff member to perform this function.

**[b.** __Unit Discipline Committee (UDC)__.  **The term Unit Discipline Committee (UDC) refers to one or more institution staff members delegated by the Warden the authority and duty to hold an initial hearing upon completion of the investigation concerning alleged charge(s) of inmate misconduct.  The Warden shall authorize these staff members to impose minor sanctions (G through P) for violation of prohibited act(s).]**

In institutions with Unit Management, the authority to hold initial hearings (UDC) and impose sanctions is ordinarily delegated to the staff members of the inmate's unit team. Wardens shall delegate two or more staff members the authority to hold initial hearings and impose minor sanctions.  In emergency situations the Warden may delegate one staff member the authority to hold initial hearings and impose minor sanctions.

**[c.** __Discipline Hearing Officer (DHO)__.  **This term refers to a one-person, independent, discipline hearing officer who is responsible for conducting Institution Discipline Hearings and who imposes appropriate sanctions for incidents of inmate misconduct referred for disposition following the hearing required by § 541.15 before the UDC.]**

The Discipline Hearing Officer may be assigned to one institution or may be responsible for conducting institution discipline hearings at several different institutions.

References to the Institution Discipline Committee in other policy issuances will be read to refer to the Discipline Hearing Officer until those issuances are redone.

**[d.** __Segregation Review Official (SRO)__.  **The term Segregation Review Official refers to the individual at each Bureau of Prisons institution assigned to review the status of each inmate housed in disciplinary segregation and administrative detention as required in §§ 541.20 and 541.22 of this rule.]**

§ 541.20 and 541.22 are located in Chapter 9 of this Program
Statement.  The SRO must be trained to conduct the required
reviews and must be certified in inmate discipline matters.  The
SRO does not have to be DHO certified.  Ordinarily, the
Segregation Review Official will be the Captain.

CHAPTER 2

NOTICE TO INMATE OF BUREAU OF PRISONS RULES

1.  [NOTICE TO INMATE OF BUREAU OF PRISONS RULES §541.11.  Staff shall advise each inmate in writing promptly after arrival at an institution of:

   a.  The types of disciplinary action which may be taken by institution staff;

   b.  The disciplinary system within the institution and the time limits thereof (see Tables 1 and 2)];

Tables 1 and 2 are located on pages 2 and 3 of this Chapter.

   [c.  The inmate's rights and responsibilities (see §541.12);]

See Chapter 3 for the list of inmate rights and responsibilities.

   [d.  Prohibited acts and disciplinary severity scale (see §541.13, Tables 3, 4, and 5); and]

Tables 3, 4, and 5 are located on pages 3, 13, & 18 of Chapter 4.

   [e.  Sanctions by severity of prohibited act, with eligibility for restoration of forfeited and withheld statutory good time (see Table 6).]

Table 6 is located on page 19 of Chapter 4.

2.  PAMPHLET - The information identified in paragraph (1)(a)through (e) of this Chapter is to be provided in pamphlet form to each inmate as part of the institution's admission and orientation program.  A signed receipt is to be obtained from each inmate acknowledging that a copy of the pamphlet was received.

To the extent reasonably available, a qualified staff member or translator is to help the inmate who has a language or literacy problem obtain an understanding of Bureau rules on inmate discipline. When a significant portion of the inmate population speaks a language other than English, the pamphlet of rules is to be made available in that language.

P5270.07
12/29/1987
Chapter 2, Page 2

[**SUMMARY OF DISCIPLINARY SYSTEM**

Table 1

P5270.07
12/29/1987
Chapter 2, Page 3

[TIME LIMITS IN DISCIPLINARY PROCESS

TABLE 2



1.   **Staff becomes aware of inmate's involvement in incident.**

ordinarily maximum of 24 hours

2.   **Staff gives inmate notice of charges by delivering Incident Report.**

maximum ordinarily of 3 work days from the time staff became aware of the inmate's involvement in the incident.  (Excludes the day staff become aware of the inmate's involvement, weekends, and holidays.)

3.   **Initial hearing (UDC)**

minimum of 24 hours
(unless waived)

4.   **Discipline Hearing Officer (DHO) Hearing**


NOTE:    These time limits are subject to exceptions as provided in the rules.

Staff may suspend disciplinary proceedings for a period not to exceed two calendar weeks while informal resolution is undertaken and accomplished.  If informal resolution is unsuccessful, staff may reinstitute disciplinary proceedings at the same stage at which suspended.  The requirements then begin running again, at the same point at which they were suspended.]

CHAPTER 3

[INMATE RIGHTS AND RESPONSIBILITIES §541.12

| RIGHTS | RESPONSIBILITIES |
|---|---|
| 1. You have the right to expect that as a human being you will be treated respectfully, impartially, and fairly by all personnel. | 1. You have the responsibility to treat others, both employees and inmates, in the same manner. |
| 2. You have the right to be informed of the rules, procedures, and schedules concerning the operation of the institution. | 2. You have the responsibility to know and abide by them. |
| 3. You have the right to freedom of religious affiliation, and voluntary religious worship. | 3. You have the responsibility to recognize and respect the rights of others in this regard. |
| 4. You have the right to health care, which includes nutritious meals, proper bedding and clothing, and a laundry schedule for cleanliness of the same, an opportunity to shower regularly, proper ventilation for warmth and fresh air, a regular exercise period, toilet articles and medical and dental treatment. | 4. It is your responsibility not to waste food, to follow the laundry and shower schedule, maintain neat and clean living quarters, to keep your area free of contraband, and to seek medical and dental care as you may need it. |
| 5. You have the right to visit and correspond with family members, and friends, and correspond with members of the news media in keeping with Bureau rules and institution guidelines. | 5. It is your responsibility to conduct yourself properly during visits, not to accept or pass contraband, and not to violate the law or Bureau rules or institution guidelines through your correspondence. |
| 6. You have the right to unrestric- and confidential access to the courts by correspondence (on matters such as the legality of your conviction, civil matters, pending criminal cases, and conditions of your imprisonment.) | 6. You have the responsibility to present honestly and fairly your petitions, questions, and problems to the court. |
| 7. You have the right to legal counsel from an attorney of your choice by interviews and | 7. It is your responsibility to use the services of an attorney honestly and fairly.] |

P5270.07
12/29/1987
Chapter 3, Page 2

correspondence.

P5270.07
12/29/1987
Chapter 3, Page 3

| [RIGHTS | RESPONSIBILITIES |
|---|---|
| 8. You have the right to participate in the use of law library reference materials to assist you in resolving legal problems. You also have the right to receive help when it is available through a legal assistance program. | 8. It is your responsibility to use these resources in keeping with the procedures and schedule prescribed and to respect the rights of other inmates to the use of the materials and assistance. |
| 9. You have the right to a wide range of reading materials for materials for educational purposes and for your own enjoyment. These materials may include magazines and newspapers sent from the community, with certain restrictions. | 9. It is your responsibility to seek and utilize such materials for your personal benefit, without depriving others of their equal rights to the use of this material. |
| 10. You have the right to participate in education, vocational training and employment as far as resources are available, and in keeping with your interests, needs, and abilities. | 10. You have the responsibility to take advantage of activities which may help you live a successful and law-abiding life within the institution and in the community. You will be expected to abide by the regulations governing the use of such activities. |
| 11. You have the right to use your funds for commissary and other purchases, consistent with institutuion security and good order, for opening bank and/or savings accounts, and for assisting your family. | 11. You have the responsibility to meet your financial and legal obligations, including, but not limited to, court-imposed assessments, fines, and restitution. You also have the responsibility to make use of your funds in a manner consistent with your release plans, your family needs, and for other obligations that you may have.] |

CHAPTER 4
PROHIBITED ACTS AND DISCIPLINARY SEVERITY SCALE

1. [**PROHIBITED ACTS AND DISCIPLINARY SCALE** §541.13

   a.  There are four categories of prohibited acts - Greatest, High, Moderate, and Low Moderate (see Table 3 for identification of the prohibited acts within each category).  Specific sanctions are authorized for each category (see Table 4 for a discussion of each sanction).  Imposition of a sanction requires that the inmate first is found to have committed prohibited act.]

   Table 3 begins on Page 4, Table 4 on Page 15 of this Chapter.

[(1)  **Greatest Category Offenses**.  The Discipline Hearing Officer (DHO) shall impose and execute one or more of sanctions A through E.  Sanction B.1 must be imposed for a VCCLEA inmate rated as violent (i.e., an inmate who, as specified in the Violent Crime Control and Law Enforcement Act of 1994, committed a crime of violence on or after September 13, 1994) and for a PLRA inmate (i.e, an inmate who has been sentenced for an offense committed on or after April 26, 1996).  The DHO may impose and execute sanction F and/or G only in addition to execution of one or more additional sanctions A through G.

(2)  **High Category Offenses**.  The Discipline Hearing Officer shall impose and execute one or more of sanctions A through M, and, except as noted in the santion, may also suspend one or more additional sanctions A through M.  Sanction B.1 must be imposed for a VCCLEA inmate rated as violent and for a PLRA inmate.  The Unit Discipline Committee shall impose and execute one or more of sanctions G through M, and may also suspend one or more additional sanctions G through M.  Sanction B.1 must be imposed for a VCCLEA inmate rated as violent and for a PLRA inmate. The Unit Discipline Committee shall impose and execute one or more of sanctions G through M, except for a VCCLEA inmate rated as violent.  All high category offense charges for a VCCLEA inmate rated as violent and for a PLRA inmate must be referred to the DHO.

(3)  **Moderate Category Offenses**.  The Discipline Hearing Officer shall impose at least one sanction A through N, but, except as noted in the sanction,  may suspend any sanction or sanctions imposed.  Sanction B.1 ordinarily must be imposed for a VCCLEA inmate rated as violent and for a PLRA inmate.  Except for

P5270.07
12/29/1987
Chapter 4, Page 2

charges referred to the DHO, the Unit Discipline Committee (UDC) shall impose at least one sanction G through N, but may suspend any sanction or sanctions imposed. The UDC ordinarily shall refer to the DHO a moderate category charge for a VCCLEA inmate rated as violent or for a PLRA inmate if the inmate had been found to have committed a moderate category offense during the inmate's current anniversary year. (i.e., the twelve month period of time for which an inmate may be eligible to earn good conduct time). The UDC must thoroughly document in writing the reasons why the charge for such an inmate was not referred to the DHO.

(4)  Low Moderate Category Offenses.  The Discipline Hearing Officer shall impose at least one sanction B.1, or E through P. The Discipline Hearing Officer may suspend any E through P sanction or sanctions imposed (a B.1 sanction may not be suspended).  Except for charges referred to the DHO, the Unit Discipline Committee shall impose at least one sanction G through P, but may suspend any sanction or sanctions imposed.  The UDC ordinarily shall refer to the DHO a low moderate category charge for a VCCLEA inmate rated as violent or for a PLRA inmate if the inmate had been found to have committed two low moderate category offense during the inmates current anniversary year (i.e, the twelve month period of time for which an inmate may be eligible to earn good conduct time).  The UDC must thoroughly document in writing the reasons why the charge for such an inmate was not referred to the DHO.

b.  Aiding another person to commit any of these offenses, attempting to commit any of these offenses, and making plans to commit any of these offenses, in all categories of severity, shall be considered the same as a commission of the offense itself.  In these cases, the letter "A" is combined with the offense code.  For example, planning an escape would be considered as Escape and coded 102A.  Likewise, attempting the adulteration of any food or drink would be coded 209A.

c.  Suspensions of any sanction cannot exceed six months. Revocation and execution of a suspended sanction require that the inmate first is found to have committed any subsequent prohibited act.  Only the Discipline Hearing Officer (DHO) may execute, suspend, or revoke and execute suspension of sanctions A through F.  The Discipline Hearing Officer (DHO) or Unit Discipline Committee (UDC) may execute, suspend, or revoke and execute suspensions of sanctions G through P.  Revocations and execution of suspensions may be made only at the level (DHO or UDC) which

**originally imposed the sanction.  The DHO now has that authority for suspensions which were earlier imposed by the Inmate Discipline Committee (IDC).]**

When an inmate receives an Incident Report while on a DHO imposed, but suspended sanction, the new Incident Report is to be forwarded by the UDC to the DHO both for a final disposition on the new Incident Report, and for a disposition on the suspended sanction.  This procedure is not necessary when the UDC informally resolves the new Incident Report.

**[d.  If the Unit Discipline Committee has previously imposed a suspended sanction and subsequently refers a case to the Discipline Hearing Officer, the referral shall include an advisement to the DHO of any intent to revoke that suspension if the DHO finds that the prohibited act was committed.  If the DHO then finds that the prohibited act was committed, the DHO shall so advise the Unit Discipline Committee who may then revoke the previous suspension.**

**e.  The Unit Discipline Committee or Discipline Hearing Officer may impose increased sanctions for repeated, frequent offenses according to the guidelines presented in Table 5.]**

Table 5 is on Page 22 of this Chapter.

**[f. Sanctions by severity of prohibited act, with eligibility for restoration of forfeited and withheld statutory good time are presented in Table 6.]**

Table 6 contains a chart showing the maximum amount of good time that may be forfeited or withheld and the period of time that must pass before an inmate is eligible for restoration of statutory good time. The chart also shows the maximum amount of time that an inmate may spend in disciplinary segregation.  The time frame established in each of these areas is determined by the severity of the prohibited act.

### [TABLE 3 - PROHIBITED ACTS AND DISCIPLINARY SEVERITY SCALE
### GREATEST CATEGORY

**The UDC shall refer all Greatest Severity Prohibited Acts to the DHO with    recommendations as to an appropriate disposition.**

| CODE | PROHIBITED ACTS | SANCTIONS |
|------|-----------------|-----------|
| 100 | Killing | A. Recommend parole date rescission or retardation. |
| 101 | Assaulting any person (includes sexual assault) or an armed assault on the institution's secure perimeter (a charge for assaulting any person at this level is to be used only when serious physical injury has been attempted or carried out by an inmate) | B. Forfeit earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended). |
| 102 | Escape from escort; escape from a secure institution (low, medium, and high security level and administrative institutions); or escape from a minimum institution with violence | B.1 Disallow ordinarily between 50 and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended). |
| 103 | Setting a fire (charged with this act in this category only when found to pose a threat to life or a threat of serious bodily harm or in furtherance of a prohibited act of Greatest Severity, e.g. in furtherance of a riot or escape; otherwise the charge is properly classified Code 218, or 329) | C. Disciplinary Transfer (recommend). |
|  |  | D. Disciplinary segregation (up to 60 days). |
|  |  | E. Make monetary restitution. |
|  |  | F. Withhold statutory good time (Note - can be in addition to A through E - cannot be the only sanction executed). |
|  |  | G. Loss of privileges (Note - can be in addition to A through E - cannot be the only sanction executed).] |

[TABLE 3 (Cont'd)
GREATEST CATEGORY (Cont'd)

| CODE | PROHIBITED ACTS | SANCTIONS |
|------|-----------------|-----------|
| 104 | Possession, manufacture, or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive or any ammunition | Sanctions A-G] |
| 105 | Rioting | |
| 106 | Encouraging others to riot | |
| 107 | Taking hostage(s) | |
| 108 | Possession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade) | |
| 109 | (Not to be used) | |
| 110 | Refusing to provide a urine sample or to take part in other drug-abuse testing | |
| 111 | Introduction of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff | |
| 112 | Use of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff | |
| 113 | Possession of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff | |
| 197 | Use of the telephone to further criminal activity. | |

P5270.07
12/29/1987
Chapter 4, Page 6

[**TABLE 3 (Cont'd)**
**GREATEST CATEGORY (Cont'd)**

| CODE | PROHIBITED ACTS | SANCTIONS |
|------|-----------------|-----------|
| 198 | Interfering with a staff member in the performance of duties. (<u>Conduct must be of the Greatest Severity nature</u>.) This charge is to be used only when another charge of greatest severity is not applicable. | Sanctions A-G] |
| 199 | Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons. (<u>Conduct must be of the Greatest Severity nature</u>.) This charge is to be used only when another charge of greatest severity is not applicable. | |

[**TABLE 3 (Cont'd)**
**HIGH CATEGORY**

| CODE | PROHIBITED ACTS | | SANCTIONS |
|------|-----------------|---|-----------|
| 200 | Escape from unescorted Community Programs and activities and Open Institutions (minimum) and from outside secure institutions-- <u>without</u> violence. | A. | Recommend parole date rescission or retardation. |
| 201 | Fighting with another person | B. | Forfeit earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended) |
| 202 | (Note to be used) | | |
| 203 | Threatening another with bodily harm or any other offense | | |
| 204 | Extortion, blackmail, protection: Demanding or receiving money or anything of value in return for protection against others, to avoid bodily harm, or under threat of informing | B.1 | Disallow ordinarily between 25 and 50% (14-27 days) of good conduct time credit available for year (a good conduct time  sanction may not be suspended). |
| 205 | Engaging in sexual acts | C. | Disciplinary Transfer (recommend). |
| 206 | Making sexual proposals or threats to another | D. | Disciplinary segregation (up to 30 days). |
| 207 | Wearing a disguise or a mask | E. | Make monetary restitution. |
| 208 | Possession of any unauthorized locking device, or lock pick, or tampering with or blocking any lock device (includes keys), or destroying, altering, interfering with, improperly using, or damaging any security device, mechanism, or procedure | F. | Withhold statutory good time] |
| 209 | Adulteration of any food or drink | | |
| 210 | (Not to be used) | | |
| 211 | Possessing any officer's or staff clothing | | |

[TABLE 3 (Cont'd)
HIGH CATEGORY (Cont'd)

| CODE | PROHIBITED ACTS | | SANCTIONS |
|------|-----------------|---|-----------|
| 212 | Engaging in, or encouraging a group demonstration | G. | Loss of privileges: commissary, movies, recreation, etc. |
| 213 | Encouraging others to refuse to work, or to participate in a work stoppage | H. | Change housing (quarters) |
| 214 | (Not to be used) | I. | Remove from program and/or group activity |
| 215 | Introduction of alcohol into BOP facility | J. | Loss of job |
| 216 | Giving or offering an official or staff member a bribe, or anything of value | K. | Impound inmate's personal property |
| 217 | Giving money to, or receiving money from, any person for purposes of introducing contraband or for any other illegal or prohibited purposes | L. | Confiscate contraband |
| 218 | Destroying, altering, or damaging government property, or the property of another person, having a value in excess of $100.00 or destroying, altering, damaging life-safety devices (e.g., fire alarm) regardless of financial value | M. | Restrict to quarters] |
| 219 | Stealing (theft; this includes data obtained through the unauthorized use of a communications facility, or through the unauthorized access to disks, tapes, or computer printouts or other automated equipment on which data is stored.) | | |

P5270.07
12/29/1987
Chapter 4, Page 9

[<u>TABLE 3 (Cont'd)</u>
<u>HIGH CATEGORY (Cont'd)</u>

| CODE | PROHIBITED ACTS | SANCTIONS |
|------|-----------------|-----------|
| 220 | Demonstrating, practicing, or using martial arts, boxing (except for use of a punching bag), wrestling, or other forms of physical encounter, or military exercises or drill (except for drill authorized and conducted by staff) | Sanctions A-M] |
| 221 | Being in an unauthorized area with a person of the opposite sex without staff permission | |
| 222 | Making, possessing, or using intoxicants | |
| 223 | Refusing to breathe into a breathalyser or take part in other testing for use of alcohol | |
| 224 | Assaulting any person (charged with this act only when less serious physical injury or contact has been attempted or carried out by an inmate) | |
| 297 | Use of the telephone for abuses other than criminal activity (e.g., circumventing telephone monitoring procedures, possession and/or use of another inmate's PIN number; third-party calling; third-party billing; using credit card numbers to place telephone calls; conference calling; talking in code). | |
| 298 | Interfering with a staff member in the performance of duties. (<u>Conduct must be of the High Severity nature</u>.)  This charge is to be used only when another charge of the high severity is not applicable. | |
| 299 | Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons. (<u>Conduct must be of the High Severity nature</u>.)  This charge is to be used only when another charge of high severity is not applicable. | |

[TABLE 3 (Cont'd)
MODERATE CATEGORY

| CODE | PROHIBITED ACTS | | SANCTIONS |
|------|-----------------|------|-----------|
| 300 | Indecent Exposure | A. | Recommend parole date rescission or retardation. |
| 301 | (Not to be used) | B. | Forfeit earned statutory good time or non-vested good conduct time up to 25% or up to 30 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended). |
| 302 | Misuse of authorized medication | | |
| 303 | Possession of money or currency, unless specifically authorized, or in excess of the amount authorized | | |
| 304 | Loaning of property or anything of valve for profit or increased return | B.1 | Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (a good conduct time  sanction may not be suspended). |
| 305 | Possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels | C. | Disciplinary Transfer (recommend). |
| 306 | Refusing to work, or to accept a program assignment | D. | Disciplinary segregation (up to 15 days). |
| 307 | Refusing to obey an order of any staff member (May be categorized and charged in terms of greater severity, according to the nature of the order being disobeyed; e.g., failure to obey an order which furthers a riot would be charged as 105, Rioting; refusing to obey an order which furthers a fight would be charged as 201, Fighting; refusing to provide a urine sample when ordered would be charged as Code 110) | E. | Make monetary restitution. |
| | | F. | Withhold statutory good time.] |
| 308 | Violating a condition of a furlough | | |
| 309 | Violating a condition of a community program | | |
| 310 | Unexcused absence from work or any assignment | | |
| 311 | Failing to perform work as instructed by the supervisor | | |
| 312 | Insolence towards a staff member | | |

[TABLE 3 (Cont'd)
MODERATE CATEGORY (Cont'd)

| CODE | PROHIBITED ACTS | | SANCTIONS |
|------|-----------------|---|-----------|
| 313 | Lying or providing a false statement to a staff member. | G. | Loss of privileges: commissary, movies, recreation, etc. |
| 314 | Counterfeiting, forging or unauthorized reproduction of any document, article of identification, money, security, or official paper. (May be categorized in terms of greater severity according to the nature of the item being reproduced; e.g., counterfeiting release papers to effect escape, Code 102 or Code 200) | H. | Change housing (quarters). |
| | | I. | Remove from program and/or group activity. |
| | | J. | Loss of job. |
| | | K. | Impound inmate's personal property. |
| | | L. | Confiscate contraband. |
| 315 | Participating in an unauthorized meeting or gathering | M. | Restrict to quarters. |
| 316 | Being in an unauthorized area | N. | Extra duty.] |
| 317 | Failure to follow safety or sanitation regulations | | |
| 318 | Using any equipment or machinery which is not specifically authorized | | |
| 319 | Using any equipment or machinery contrary to instructions or posted safety standards | | |
| 320 | Failing to stand count | | |
| 321 | Interfering with the taking of count | | |
| 322 | (Not to be used) | | |
| 323 | (Not to be used) | | |
| 324 | Gambling | | |
| 325 | Preparing or conducting a gambling pool | | |
| 326 | Possession of gambling paraphernalia | | |
| 327 | Unauthorized contacts with the public | | |
| 328 | Giving money or anything of value to, or accepting money or anything of value from: another inmate, or any other person without staff authorization | | |

P5270.07
12/29/1987
Chapter 4, Page 12

[TABLE 3 (Cont'd)
MODERATE CATEGORY (Cont'd)

| CODE | PROHIBITED ACTS | SANCTIONS |
|------|-----------------|-----------|
| 329 | Destroying, altering or damaging government property, or the property of another person, having a value of $100.00 or less | Sanctions A-N] |
| 330 | Being unsanitary or untidy; failing to keep one's person and one's quarters in accordance with posted standards | |
| 331 | Possession, manufacture, or introduction of a non-hazardous tool or other non-hazardous contraband (Tool not likely to be used in an escape or escape attempt, or to serve as a weapon capable of doing serious bodily harm to others, or not hazardous to institutional security or personal safety; Other non-hazardous contraband includes such items as food or cosmetics) | |
| 332 | Smoking where prohibited | |
| 397 | Use of the telephone for abuses other than criminal activity (e.g., conference calling, possession and/or use of another inmate's PIN number, three-way calling, providing false information for preparation of a telephone list). | |
| 398 | Interfering with a staff member in the performance of duties. (Conduct must be of the Moderate Severity nature.) This charge is to be used only when another charge of moderate severity is not applicable. | |
| 399 | Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons. (Conduct must be of the Moderate Severity nature). This charge is to be used only when another charge of moderate severity is not applicable. | |

[**TABLE 3 (Cont'd)**
**LOW MODERATE CATEGORY**

| CODE | PROHIBITED ACTS | | SANCTIONS |
|------|-----------------|---|-----------|
| 400 | Possession of property belonging to another person | B.1 | Disallow ordinarily up to 12.5% (1-7 days) of good conduct time credit available for year (to be used only where inmate found to have committed a second violation of the same prohibited act within 6 months); Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (to be used only where inmate found to have committed a third violation of the same prohibited act within 6 months) (a good conduct time sanction may not be suspended).] (See Chapter 4 Page 16 for VCCLEA violent and PLRA inmates.) |
| 401 | Possessing unauthorized amount of otherwise authorized clothing | | |
| 402 | Malingering, feigning illness | | |
| 403 | Not to be used | | |
| 404 | Using abusive or obscene language | | |
| 405 | Tattooing or self-mutilation | | |
| 406 | Not to be Used | | |
| 407 | Conduct with a visitor in violation of Bureau regulations (Restriction, or loss for a specific period of time, of these privileges may often be an appropriate sanction G) | [E. | Make monetary restitution. |
| 408 | Conducting a business | F. | Withhold statutory good time. |
| 409 | Unauthorized physical contact (e.g., kissing, embracing) | G. | Loss of privileges: commissary, movies, recreation, etc. |
| 410 | Unauthorized use of mail (Restriction, or loss for a specific period of time, of these privileges may often be an appropriate sanction G)(May be categorized and charged in terms of greater severity, according to the nature of the unauthorized use; e.g., the mail is used for planning, facilitating, committing an armed assault on the institution's secure perimeter, would be charged as Code 101, Assault) | H. | Change housing (quarters). |
| | | I. | Remove from program and/or group activity.] |

[TABLE 3  (Cont'd)
LOW MODERATE CATEGORY (Cont'd)

| CODE | PROHIBITED ACTS | | SANCTIONS |
|------|-----------------|---|-----------|
| | | J. | Loss of job. |
| 497 | Use of the telephone for abuses other than criminal activity (e.g., exceeding the 15-minute time limit for telephone calls; using the telephone in an unauthorized area; placing an unauthorized individual on the telephone list). | K. | Impound inmate's personal property. |
| | | L. | Confiscate contraband. |
| | | M. | Restrict to quarters. |
| | * | N. | Extra duty. |
| 498 | Interfering with a staff member in the performance of duties. <u>Conduct must be of the Low Moderate Severity nature</u>.) This charge is to be used only when another charge of low moderate severity is not applicable. | O. | Reprimand. |
| | | P. | Warning. |
| 499 | Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons. <u>(Conduct must be of the Low Moderate severity nature</u>.)  This charge is to be used only when another charge of low moderate severity is not applicable. | | |

<u>NOTE</u>:  <u>**Aiding**</u> **another person to commit any of these offenses,** <u>**attempting**</u> **to commit any of these offenses,** <u>**and making plans**</u> **to commit any of these offenses, in all categories of severity, shall be considered the same as a commission of the offenses itself.]**

When the prohibited act is interfering with a staff member in the performance of duties (Code 198, 298, 398, or 498), or Conduct Which Disrupts (Code 199, 299, 399, or 499), the DHO or UDC, in its findings, should indicate a specific finding of the severity level of the conduct, and a comparison to an offense (or offenses) in that severity level which the DHO or UDC finds is most comparable.

**Example:** "We find the act of _____to be of High severity, most comparable to prohibited act Engaging in a Group Demonstration."

Sanction B.1 may be imposed on the Low Moderate category **only** where the inmate has committed the same low moderate prohibited act more than one time within a six-month period except for a VCCLEA inmate rated as violent or a PLRA inmate (See Chapter 4, Page 16).

**[TABLE 4 - SANCTIONS**

**1.  Sanctions of the Discipline Hearing Officer**:  (upon finding the inmate committed the prohibited act)

   **A.  Recommend Parole Date Rescission or Retardation**.  The DHO may make recommendations to the U.S. Parole Commission for retardation or rescission of parole grants.  This may require holding fact-findings hearings upon request of or for the use of the Commission.

   **B.  Forfeit Earned Statutory Good Time, Non-vested Good Conduct Time, and/or Terminate or Disallow Extra Good Time**.  The statutory good time available for forfeiture is limited to an amount computed by multiplying the number of months served at the time of the offense for which forfeiture action is taken, by the applicable monthly rate specified in 18 U.S.C. § 4161 (less any previous forfeiture or withholding outstanding).  The amount of good conduct time (GCT) available for forfeiture is limited to the total number of days in the "non-vested" status at the time of the misconduct (less any previous forfeiture).  A forfeiture of good conduct time sanction may not be suspended.  Disallowance of extra good time is limited to the extra good time for the calendar month in which the violation occurs.  It may not be withheld or restored.  The sanction of termination or disallowance of extra good time may not be suspended.  Forfeited good conduct time will not be restored.  Authority to restore forfeited statutory good time is delegated to the Warden.  This decision may not be delegated lower than the Associate Warden level.  Limitations on this sanction and eligibility for restoration are based on the severity scale.  (See Table 6)]

   See Page 19 of this Chapter for limitations on this sanction and for eligibility for restoration.  Good time (statutory and good conduct time) percentages may be combined when separate acts or offenses occur on the same day and are heard by the DHO at the same time.  For example, when an inmate is charged, and found to have committed, both a 200 and 300 Code violation by the same sitting DHO, that DHO may forfeit 75% of the inmate's good time (50% for the 200 code violation, 25% for the 300 Code violation).  Good time may not be forfeited (because it is not earned) for an inmate solely in service of a civil contempt.  See the Sentence Computation Manual (Old Law, Pre-CCCA-1984) for a discussion of termination or disallowance of extra good time.

   An application for restoration of good time is to go from the inmate's unit team, through both the DHO and Captain for comments, to the Warden or his or her delegated representative for final decision.

   This sanction B does not apply to inmates committed under the provisions of the Comprehensive Crime Control Act for crimes

## [TABLE 4 - SANCTIONS (Cont'd)

committed on or after November 1, 1987 and prior to passage of the Violent Crime Control and Law Enforcement Act of 1994 (September 23, 1994). For those inmates, the applicable sanction is B.1.

[B.1 <u>Disallowance of Good Conduct Time</u>. An inmate sentenced under the Sentencing Reform Act provisions of the Comprehensive Crime Control Act (includes the inmate who committed his or her crime on or after November 1, 1987) may not receive statutory good time, but is eligible to receive 54 days good conduct time credit each year (18 U.S.C. § 3624(b)). Once awarded, the credit is vested, and may not be disallowed. However for crimes committed on or after September 13, 1994 and prior to April 26, 1996, credit toward an inmate's service of sentence shall not be vested unless the inmate has earned or is making satisfactory progress toward a high school diploma or an equivalent degree, or has been exempted from participation because of a learning disability. For crimes committed on or after April 26, 1996, credit toward an inmate's service of sentence shall vest on the date the inmate is released from custody. Once disallowed, the credit may not be restored, except by immediate review or appeal action as indicated below. Prior to this award being made, the credit may be disallowed for an inmate found to have committed a prohibited act. A sanction of disallowance of good conduct time may not be suspended. Only the DHO can take action to disallow good conduct time. The DHO shall consider the severity of the prohibited act and the suggested disallowance guidelines in making a determination to disallow good conduct time. A decision to go above the guideline range is warranted for a greatly aggravated offense or where there is a repetitive violation of the same prohibited act that occurs within a relatively short time frame (e.g., within 18 months for the same greatest severity prohibited act, within 12 months for the same high severity prohibited act, and within 6 months for the same moderate severity prohibited act). A decision to go below the guidelines is warranted for strong mitigating factors. Any decision outside the suggested disallowance guidelines is to be documented and justified in the DHO report.

VCCLEA inmates rated as violent and PLRA inmates will ordinarily be disallowed good conduct time for each prohibited act they are found to have committed at a DHO hearing, consistent with the following:

(1) <u>Greatest Category Offenses</u>. A minimum of 40 days (or, if less than 54 days are available for the prorated period, a minimum of 75% of available good time conduct) for each act committed;

(2) <u>High Category Offenses</u>. A minimum of 27 days (or, if less than 54 days are available for the prorated period, a **minimum of 50% of available good conduct time) for each act committed.**

P5270.07
12/29/1987
Chapter 4, Page 18

(3)  <u>Moderate Category Offenses</u>.  A minimum of 13 days (or, if less than 54 days are available for the prorated period, a minimum of 25% of available good conduct time) for each act committed if the inmate has committed two or more moderate category offenses during the current anniversary period.

(4)  <u>Low Moderate Category Offenses</u>.  A minimum of 6 days (or, if less than 54 days are available for the prorated period, a minimum of 12.5% of available good conduct time) for each act committed if the inmate has committed three or more low moderate category offenses during the current anniversary period.

However, the DHO may, after careful consideration of mitigating factors (seriousness of the offense, the inmate's past disciplinary record, the lack of available good conduct time, etc.) choose to impose a lesser sanction, or even disallow no GCT for moderate and low moderate prohibited acts by VCCLEA inmates rated as violent or by PLRA inmates.  The DHO must thoroughly detail the rationale for choosing to disallow less than 13 days or 6 days respectively.  This will be documented in Section VII of the DHO report.  Disallowance of amounts greater than 13 days or 6 days respectively will occur with repetitive offenses consistent with the guidelines in this B.1.

The decision of the DHO is final and is subject only to review by the Warden to ensure conformity with the provisions of the disciplinary policy and by inmate appeal through the administrative remedy program.  The DHO is to ensure that the inmate is notified that any appeal of a disallowance of good conduct time must be made within the time frames established in the Bureau's rule on administrative remedy procedures.

Except for VCCLEA inmates rated as violent or PLRA inmates, Sanction B.1 may be imposed on the Low Moderate category <u>only</u> where the inmate has committed the same low moderate prohibited act more than one time within a six-month period.]

Good conduct time credit may only be given to an inmate serving a sentence of more than one year, but less than the duration of his life.  In the last year or portion of a year of an inmate's sentence, only the amount of good conduct time credit available for that remaining period of time may be disallowed.  The Appendix to this Chapter 4 discusses procedures for the disallowance of good conduct time.

[C.  <u>Recommend Disciplinary Transfer</u>.  The DHO may recommend that an inmate be transferred to another institution for disciplinary reasons.

Where a present or impending emergency requires immediate action, the Warden may recommend for approval of the Regional Director the transfer of an inmate prior to either a UDC OR DHO hearing.  Transfers

**for disciplinary reasons prior to a hearing before the UDC or DHO may be used in emergency situations and only with approval of the Regional Director.  When an inmate is transferred under these circumstances, the sending institution shall forward copies of incident reports and other relevant materials with completed investigation to the receiving institution's Discipline Hearing Officer.  The inmate shall receive a hearing at the receiving institution as soon as practicable under the circumstances to consider the factual basis of the charge of misconduct and the reasons for the emergency transfer.  All procedural requirements applicable to UDC or DHO hearings contained in this rule are appropriate, except that written statements of unavailable witnesses are liberally accepted instead of live testimony.]**

Transfers from one region to another require the approval of both the sending and receiving Regional Directors.

The receiving institution does not need to hold a new UDC hearing if such a hearing was held by the sending institution prior to the inmate's transfer.

**[D.  <u>Disciplinary Segregation</u>.  The DHO may direct that an inmate be placed or retained in disciplinary segregation pursuant to guidelines contained in this rule.  Consecutive disciplinary segregation sanctions can be imposed and executed for inmates charged with and found to have committed offenses that are part of different acts only.  Specific limits on time in disciplinary segregation are based on the severity scale.  (See Table 6)]**

Separate sanctions may be imposed for separate acts or offenses.  Acts are different or separate if they have different elements to the offenses.  For example, if an inmate is involved in a fight with another inmate, and in the course of subduing that incident the inmate also strikes a staff member, the inmate can be charged with fighting (Code 201) and also assaulting a staff member (Code 101).  The inmate can be separately charged and punished, on the basis of one Incident Report, or in two separate Incident Reports, for each offense.  The inmate could not be punished for both assault on and fighting with the inmate, since the elements of both offenses (the time, place, persons involved, actions performed) are essentially the same for both offenses. If, on the way to administrative detention, the inmate starts another disturbance, and strikes another officer, the inmate could be charged with that as another assault offense.  Similarly, an inmate serving a period of time in disciplinary segregation may commit a prohibited act there, and receive additional, consecutive time in segregation for that new offense.

See Table 6 for the specific limits on sanctions.  Each different or separate offense should be written on a separate Incident Report.  Unless otherwise specified by the DHO, disciplinary segregation placement for different or separate prohibited acts are to be imposed consecutively.

An inmate who has been recommended for a Control Unit placement may be transferred prior to completing the required segregation period. The remainder of any segregation period shall be served at the receiving institution.

Except as noted above, an inmate serving a sanction of disciplinary segregation ordinarily is not to be transferred from the institution imposing the sanction until completion of the segregation period. When this is not practical, the Regional Office must approve the transfer.  The inmate shall complete the remainder of any segregation period at the receiving institution.

**[E.  Make Monetary Restitution.  The DHO may direct that an inmate reimburse the U.S. Treasury for any damages to U.S. Government property that the individual is determined to have caused or contributed to.]**

An inmate's commissary privileges may be suspended or limited until restitution is made.  See the Accounting Management Manual for instructions regarding impoundment of inmate funds.

**[F.  Withholding Statutory Good Time.  The DHO may direct that an inmate's good time be withheld.  Withholding of good time should not be applied as a universal punishment to all persons in disciplinary segregation status.  Withholding is limited to the total amount of good time creditable for the single month during which the violation occurs.**

**Some offenses, such as refusal to work at an assignment, may be recurring, thereby permitting, when ordered by the DHO, consecutive withholding actions.  When this is the intent, the DHO shall specify at the time of the initial DHO hearing that good time may be withheld until the inmate elects to return to work.  During the running of such a withholding order, the DHO shall review the offense with the inmate on a monthly basis.  For an on-going offense, staff need not prepare a new Incident Report or conduct an investigation or initial hearing (UDC).  The DHO shall provide the inmate an opportunity to appear in person and to present a statement orally or in writing.  The DHO shall document its action on, or by an attachment to, the initial Institution Discipline report.  If further withholding is ordered, the DHO shall advise the inmate of the inmate's right to appeal through the Administrative Remedy procedures (Part 542).**

**Only the Warden may restore withheld statutory good time.  This decision may not be delegated lower than the Associate Warden level.  Restoration eligibility is based on the severity scale. (See Table 6)]**

An application for restoration of good time must be forwarded from the inmate's unit team, through both the DHO and Captain for comments, to the Warden or his or her delegated representative for final decision.

Part 542 refers to Program Statement on Administrative Remedy Procedure for Inmates.  See Page 20 of this Chapter for information on restoration eligibility.

This sanction F does not apply to inmates committed under the provisions of the Comprehensive Crime Control Act.  This means that inmates who committed their crimes on or after November 1, 1987, and who are sentenced under the Sentencing Reform Act provisions of the Comprehensive Crime Control Act are only eligible to receive 54 days good conduct time credit (18 U.S.C. § 3624(b)).  This credit is given at the end of each year of time served and, once given, is vested. For these inmates, the DHO's authority is final and is subject only to review by the Warden to ensure conformity with the provisions of the discipline policy and by inmate appeal through the Administrative Remedy procedures.

**[2.  Sanctions of the Discipline Hearing Officer/Unit Discipline Committee: (upon finding the inmate committed the prohibited act)**

   **G.  Loss of Privileges:]**  Commissary, Movies, Recreation, etc.  **[The DHO or UDC may direct that an inmate forego specific privileges for a specified period of time.  Ordinarily, loss of privileges is used as a sanction in response to an abuse of that privilege.  However, the DHO or UDC may impose a loss of privilege sanction not directly related to the offense when there is a lack of other appropriate sanctions or when imposition of an appropriate sanction previously has been ineffective.]**

After careful consideration of all relevant facts, the UDC or DHO may impose a loss of privilege sanction not directly related to the offense, provided there is a belief that the imposed sanction (e.g., loss of visiting privileges) is viewed as having a significant impact on the inmate's future behavior.

Loss of recreation privileges cannot be imposed on inmates in Special Housing, but may be used as a sanction for general population inmates.

   **[H.  Change Housing (Quarters).  The DHO or UDC may direct that an inmate be removed from current housing and placed in other housing.**

   **I.  Remove from Program and/or Group Activity.  The DHO or UDC may direct that an inmate forego participating in any program or group activity for a specified period of time.**

   **J.  Loss of Job.  The DHO or UDC may direct that an inmate be removed from present job and/or be assigned to another job.**

   **K.  Impound Inmate's Personal Property.  The DHO or UDC may direct that an inmate's personal property be stored in the institution (when relevant to offense) for a specified period of time.**

   **L.**  <u>Confiscate Contraband</u>.  **The DHO or UDC may direct that any contraband in the possession of an inmate be confiscated and disposed of appropriately.]**

   For procedures, see the Program Statement on Personal Property of Inmates.

   **[M.**  <u>Restrict Quarters</u>.  **The DHO or UDC may direct that an inmate be confined to quarters or in its immediate area for a specified period of time.**

   **N.**  <u>Extra Duty</u>.  **The DHO or UDC may direct that an inmate perform tasks other than those performed during regularly assigned institutional job.**

   **O.**  <u>Reprimand</u>.  **The DHO or UDC may reprimand an inmate either verbally or in writing.**

   **P.**  <u>Warning</u>.  **The DHO or UDC may verbally warn an inmate regarding committing prohibited act(s).]**

   <u>Note</u>:  Although not considered sanctions, the UDC or DHO may recommend classification or program changes.  For example, the DHO may recommend an inmate's participation in, or removal from, a particular program.  When this occurs, a final decision will ordinarily be made in accordance with the established procedures for deciding that issue. In the example cited above, a referral would be made to the inmate's unit team for a decision on the recommendation.

[TABLE 5

SANCTIONS FOR REPETITION OF PROHIBITED ACTS WITHIN SAME CATEGORY

When the Unit Discipline Committee or DHO finds that an inmate has
committed a prohibited act in the Low Moderate, Moderate, or High
category, and when there has been a repetition of the same offense(s)
within recent  months (offenses for violation of the same code),
increased sanctions are authorized to be imposed by the DHO according
to the following chart.  (Note: An informal resolution may not be
considered as a prior offense for purposes of this chart.)

| Category | Prior Offense (Same Code) Within Time Period | Frequency of Repeated Offense | Sanction Permitted |
|---|---|---|---|
| Low Moderate (400 Series) | 6 months | 2d offense | Low Moderate Sanctions plus<br>1.  Disciplinary segregation, up to 7 days.<br><br>2.  Forfeit earned SGT or non-vested GCT up to 10% or up to 15 days, whichever is less, and/or terminate or disallow extra good time (EGT) (an EGT sanction may not be suspended). |
| | | 3d offense, or more | Any sanctions available in Moderate (300) and Low Moderate (400) series. |
| Moderate (300 Series) | 12 months | 2d offense | Moderate Sanctions (A,C,E-N) plus<br>1.  Disciplinary segregation, up to 21 days |

P5270.07
12/29/1987
Chapter 4, Page 24

[**TABLE 5 (Cont'd)**

| Category | Prior Offense (Same Code) Within Time Period | Frequency of Repeated Offense | Sanction Permitted |
|---|---|---|---|
| | | | 2. Forfeit earned SGT or non-vested GCT up to 37 1/2% or up to 45 days, whichever is less, and/or terminate or disallow EGT (an EGT sanction may not be suspended). |
| | | 3d offense, or more | Any sanctions available in Moderate (300) and High (200) series. |
| High (200 Series) | 18 months | 2d offense | High Sanction (A,C,E-M), plus |
| | | | 1. Disciplinary segregation, up to 45 days. |
| | | | 2. Forfeit earned SGT or non-vested GCT up to 75% or up to 90 days, whichever is less, and/or terminate or disallow EGT (an EGT sanction may not be suspended). |
| | | 3d offense | Any sanction available in High or more (200) and Greatest (100) series.] |

P5270.07
12/29/1987
Chapter 4, Page 25

[TABLE 6

**SANCTIONS BY SEVERITY OF PROHIBITED ACT, WITH ELIGIBILITY FOR RESTORATION OF FORFEITED AND WITHHELD STATUTORY GOOD TIME**

| Severity Max. of Act Dis Seq1 | Sanctions | Max.Amt. Forf. GT1 | Max.Amt. W/hd SGT | Elig. Restoration Forf.SGT | Elig. Restoration W/hd/SGT | |
|---|---|---|---|---|---|---|
| Greatest | A-F | 100% days | Good time creditable for single month during which violation occurs. Applies to all categories. | 24 mos | 18 mos | 60 |
| High | A-M | 50% or days 60 days, whichever is less | | 18 mos | 12 mos | 30 |
| Moderate | A-N | 25% or 15 days 30 days, whichever is less | | 12 mos | 6 mos | |
| Low/Moderate | E-P | N/A (1st offense) days (2nd offense) 15 days (3rd offense)] | | N/A (1st offense) 6 mos. (2nd or 3rd offense in same category within six months) | 3 mos N/A 7 | |

1 See Table 5, SANCTIONS FOR REPETITION OF PROHIBITED ACTS WITHIN SAME
CATEGORY, on Page 22 of this Chapter.  Forfeited good conduct time will not be
restored ("GT" in Table 6 represents both good conduct and statutory good
time.)

[**NOTE**:  **In Table 6 headings, "GT" represents both good conduct and statutory
good time and "SGT" represents statutory good time. Forfeited good conduct
time is not eligible for restoration. Restoration of statutory good time will
be approved at the time of initial eligibility only when the inmate has shown
a period of time with improved good behavior.  When the Warden or his
delegated representative denies restoration of forfeited or withheld statutory
good time, the unit team shall notify the inmate of the reasons for denial.
The unit team shall establish a new eligibility date, not to exceed six months
from the date of denial.]**

To ensure an inmate's case is not overlooked when statutory good
time has been forfeited or withheld, the unit team must review
the eligibility requirements for restoration in accordance with
the time frames established by the Program Statement on
Classification and Program Review of Inmates.  A recommendation
of the unit team, whether for or against restoration, must be
forwarded (on BP-389/Record Form 84) to the Warden, through the
DHO and Captain for disposition.  Except as noted below,
eligibility for restoration of withheld or forfeited statutory
good time is computed from the date of the withholding or
forfeiture action by the DHO.  An inmate who has escaped and
receives a forfeiture at a subsequent in absentia hearing begins
the eligibility for restoration period upon return to custody of
the Bureau of Prisons.  The Warden will refer for approval of the
Regional Director a case where the Warden determines exceptional
circumstances support restoration of statutory good time prior to
completion of the eligibility requirements.

[An inmate with an approaching parole effective date, or an
approaching mandatory release or expiration date who has
forfeited good time may be placed in a Community Treatment Center
only if that inmate is otherwise eligible under Bureau policy,
and if there exists a legitimate documented need for such
placement.  The length of stay at the Community Treatment Center
is to be held to the time necessary to establish residence and
employment.]

## DISALLOWANCE OF GOOD CONDUCT TIME

Sanctions B and F of the Prohibited Acts and Disciplinary Severity Scale, pertain to statutory good time and do not apply to inmates committed under the Sentencing Reform Act provisions of the Comprehensive Crime Control Act. This means that inmates who committed their crimes on or after November 1, 1987 and who are sentenced under the Sentencing Reform Act provisions of the Comprehensive Crime Control Act are only eligible to receive 54 days per year of good conduct time credit (18 U.S.C. §3624(b)). This credit is given at the end of each year of time served and, once given, is vested. Also, once disallowed it may not be restored (except for procedural error, corrected on immediate administrative review, or by appeal through the Administrative Remedy procedures). Disallowance of good conduct time is to be accomplished in accordance with the following procedures.

A. Only the DHO can take action to disallow good conduct time. A UDC may recommend a disallowance to the DHO, but a UDC may not independently disallow good conduct time.

B. In determining the amount of good conduct time to be disallowed, the DHO should assess the seriousness of the particular prohibited act. Code violations of the greatest severity ordinarily should have the greatest amount of lost good conduct time credit. However, even within the same severity level, the DHO is to assess the severity of the offense and impose lost good conduct time credit based on an assessment of the particular violation. Consideration of the inmate's VCCLEA 1994 Offense Category should be taken into consideration when imposing sanctions. Those with a "VIOLENT" category offense should receive greater disallowance sanctions. See Table 4 Section B.1 for specific minimum disallowance guidelines.

(1) Except as indicated in paragraph (2) below, the DHO should effect the loss of good conduct time pursuant to the following table.

| | | |
|---|---|---|
| 100 Code | (Greatest Category) | Disallow ordinarily between 50 and 75% of good conduct time credit (27-41 days) available for year. |
| 200 Code | (High Category) | Disallow ordinarily between 25 and 50% of good conduct time credit (14-27 days) available for year. |
| 300 Code | (Moderate Category) | Disallow ordinarily up to 25% of good conduct time credit (1-14 days) available for year. |

400 Code (Low Moderate Category)     May disallow only for repetitive acts.  For a second violation of the same prohibited act committed within 6 months, the DHO may disallow ordinarily up to 12.5% of the good conduct time credit (1-7 days) available for year; for a third violation of the same prohibited act committed within 6 months, the DHO may disallow ordinarily up to 25% of the good conduct time credit (1-14 days) available for year.

     (2)   The DHO may impose a sanction greater than or less than the guidelines indicated in paragraph (1) of this section when the available information clearly indicates such action is warranted. The DHO is to indicate in the record of the hearing the specific reasons for varying from the established guidelines. Going above the guidelines is warranted for a greatly aggravated offense or for repeated violations of the same prohibited act that occurs within a relatively short time frame (e.g., within an 18-month period for the same greatest severity prohibited act, within a 12-month period for the same high severity prohibited act, and within a six-month period for the same moderate severity prohibited act).  Going below the guidelines is also warranted for strong mitigating factors.

     C.  The decision of the DHO is final, and is subject only to procedural review by the Warden and by appeal through the Administrative Remedy procedures.  The DHO is to ensure that the inmate is notified of the information contained in this paragraph C.

     D.  The DHO is to provide the Inmate Systems Manager (ISM) with documentation of each good conduct time disallowance  (BP-448, Good Conduct time Action Notice).

     (1)   At the end of each year of an inmate's confinement, and within the 15-day window provided by the statute for a determination of an award of good conduct time, the ISM is to determine the number of days disallowed by the DHO and, when necessary, is to recalculate the inmate's sentence.  This recalculation is based on the total amount of time disallowed, as reported by DHO actions on offenses (prohibited acts) occurring during the year.  The calculation should be made on DHO actions near the end of the year, even if they are under administrative review or appeal.  The records will be corrected (disallowance

reduced, for example) if ordered by the reviewing official. Until any such order, the action of the DHO is final and may be implemented in the inmate's sentence computation and all official records.

(2)  CCMs will perform the above computation for inmates in contract facilities.

(3)  Prior to making an award ISM staff should determine if there are unresolved (pending) incident reports that might result in a disallowance of GCT. If a pending report exists, the award decision should be deferred until resolution of that report.

(4)  If subsequent to an award, staff become aware of misconduct that occurred during the evaluation period, the awarded GCT will be available for disallowance following a finding by a DHO that a prohibited act occurred.  However, GCT cannot be disallowed for misconduct that occurred after the evaluation period.

E.  Questions concerning the disallowance of good conduct time credits are to be directed to the Regional Inmate Systems Administrator or to the Regional Counsel.

CHAPTER 5
INCIDENT REPORT

1.  **[INCIDENT REPORT AND INVESTIGATION** §541.14

     **a.  Incident Report.  The Bureau of Prisons encourages
informal resolution (requiring consent of both parties) of
incidents involving violations of Bureau regulations.  However,
when staff witnesses or has a reasonable belief that a violation
of Bureau regulations has been committed by an inmate, and when
staff considers informal resolution of the incident inappropriate
or unsuccessful, staff shall prepare an Incident Report and
promptly forward it to the appropriate Lieutenant.  Except for
prohibited acts in the Greatest or High Severity Categories, the
Lieutenant may informally dispose of the Incident Report or
forward the Incident Report for investigation consistent with
this section.  The Lieutenant shall expunge the inmate's file of
the Incident Report if informal resolution is accomplished.  Only
the DHO may make a final disposition on a prohibited act in the
Greatest Severity Category or on a prohibited act in the High
Category (when the High Category prohibited act has been
committed by a VCCLEA inmate rated as violent or by a PLRA
inmate.]**

  Prohibited acts in the 100 code (greatest severity) and in the
200 code (high severity) may not be informally resolved by the
writer of the report, and a Incident Report must be prepared.
Prohibited acts in the 100 code and in the 200 code may not be
informally resolved by a Lieutenant, and must be
referred to the UDC.  Prohibited acts in the 100 code and 200
code may not be informally resolved or the charges dropped by the
UDC.  The UDC may dispose of a 200 code violation except for
VCCLEA inmates rated as violent or PLRA inmates.  For those
inmates, all 200 level charges will be referred to the DHO for
disposition.

  A record of any informal resolution in the 300 or 400 codes
(whether between the inmate and the writer of the report, the
inmate and the Lieutenant, or the inmate and the UDC) is to be
maintained by the Captain.  The record is to reflect the inmate's
name, register number, subject of the informal resolution, and
the agreed upon disposition.  This procedure should enable the
Captain, and others as necessary, to monitor the informal
resolution process.  Staff may suspend disciplinary proceedings
for a period not to exceed two calendar weeks while informal
resolution is undertaken and accomplished.  If informal
resolution is unsuccessful, staff may reinstate disciplinary

proceedings at the same stage at which they were suspended.  The
time requirements then begin running again, at the same point at
which they were suspended.

The reporting employee should complete immediately Part 1 of
the Incident Report.  The incident is to be one of the prohibited
acts listed in Chapter 4 of this Program Statement.  The entire
language of the prohibited act(s) does not have to be copied.
Only the relevant portion need be used.  For example, "destroying
government property, code no. 218" "possessing narcotics, code
no. 109" would be acceptable listings for appropriate charges.

The description of the incident should contain the details of
the activity which is being reported.  All facts about the
incident which are known by the employee and which are not
confidential should be recorded.  If there is anything unusual
about the inmate's behavior, this would be noted.  The reporting
employee should also list those persons (staff, inmate, others)
present at the scene, and the disposition of any physical
evidenced (weapons, property, etc.) which the employee may have
personally handled.  The report is also to reflect any immediate
action taken, including the use of force.  The reporting employee
shall sign the report and indicate his or her title in the
appropriate blocks.  The date and time of the report being signed
should be entered.  The Incident Report should then be forwarded
to the appropriate Lieutenant for disposition.

**[b.  <u>Investigation</u>.  Staff shall conduct the investigation
promptly unless circumstances beyond the control of the
investigator intervene.]**

The investigating officer is ordinarily appointed within 24
hours of the time the violation is reported.  It is suggested
that the investigation be initiated and ordinarily completed
within 24 hrs. of this appointment.

**[(1) When it appears likely that the incident may be the
subject of criminal prosecution, the investigating officer shall
suspend the investigation, and staff may not question the inmate
until the Federal Bureau of Investigation or other investigative
agency interviews have been completed or until the agency
responsible for the criminal investigation advises that staff
questioning may occur.]**

When an inmate's misconduct may also be the subject of
criminal prosecution, it is not necessary to await the outcome of
the criminal trial before taking disciplinary action, unless
there has been a request for such delay by the prosecuting or

investigating agency.  (Staff are referred to the guidelines
contained in the Program Statement on Hostage Situations).  An
inmate who is the subject of a criminal prosecution for
institutional violations will not be transferred from the
jurisdiction of the trial court without the consent of the
appropriate U.S. Attorney of the court in which the case is
pending.

**[(2) The inmate may receive a copy of the Incident Report
prior to being seen by the investigating agency.  The
investigating officer (Bureau of Prisons) shall give the inmate a
copy of the Incident Report at the beginning of the
investigation, unless there is good cause for delivery at a later
date, such as absence of the inmate from the institution or a
medical condition which argues against delivery.  If the
investigation is delayed for any reason, any employee may deliver
the charge(s) to the inmate.  The staff member shall note the
date and time inmate received a copy of the Incident Report.  The
investigator shall also read the charge(s) to the inmate and ask
for the inmate's statement concerning the incident unless it
appears likely that the incident may be the subject of criminal
prosecution.  The investigator shall advise the inmate of the
right to remain silent at all stages of the disciplinary process
but that the inmate's silence may be used to draw an adverse
inference against the inmate at any stage of the institutional
disciplinary process.  The investigator shall also inform the
inmate that the inmate's silence alone may not be used to support
a finding that the inmate had committed a prohibited act.  The
investigator shall then thoroughly investigate the incident.  The
investigator shall record all steps and actions taken on the
Incident Report and forward all relevant material to the staff
holding the initial hearing.  The inmate does not receive a copy
of the investigation.  However, if the case is ultimately
forwarded to the Discipline Hearing Officer, the DHO shall give a
copy of the investigation and other relevant materials to the
inmate's staff representative for use in presentation on the
inmate's behalf.]**

When the inmate did not receive a copy of the Incident
Report at the beginning of the investigation, the reason(s) for
this should be stated in the investigative portion of the
Incident Report.  The investigator shall document in the
investigative portion of the Incident Report the fact that the
inmate has been advised of the right to remain silent.  Comments
about the inmate's attitude may be included with the inmate's
statement on the charge(s).

To the extent practicable, the inmate's statements offering a rationale for his or her conduct or for the charges against him or her should be investigated.  For example, an inmate who has received an Incident Report based on a "positive" urine test may claim this result comes from either:

    (a)  permissible medication the inmate has been given; or
    (b)  from a combination of medications the inmate is taking.

In the first situation, the investigator would contact the hospital to determine if the inmate is receiving medication which contains the reported compound detected in the urinalysis.  In the second situation, the investigator should confirm that the inmate was authorized to take the stated medication.

When necessary, the investigator should ask the Correctional Services Administrator, Regional Office to contact the testing laboratory to determine if the combined medication could result in a "false positive" test.  Institution staff should not contact the testing laboratory themselves.

With respect to urine testing, it is noted that while an inmate can challenge the results of the urine test, and this may be investigated by the investigator and considered by the discipline committee(s), the validity or accuracy of the testing process itself is not subject to investigation by the investigator or consideration by the DHO.  This requirement is necessary because neither the investigator nor the DHO has the experience necessary to assess the validity or accuracy of the laboratory process.

An inmate who wishes to challenge the testing process should be advised to use the Administrative Remedy Procedure.  An inmate can challenge the proper handling of the sample, and evidence challenging that aspect of the process should be investigated and considered. The investigator should talk to those persons with direct and relevant information, and summarize their statements. The disposition of evidence should be recorded.  Often, the investigator will want to talk to the reporting employee to obtain a report firsthand and to clarify any question(s) the investigator may have. Under Comments and Conclusions, the investigator may include the investigator's:

    (a) comments on the inmate's prior record and behavior,
    (b) analysis of any conflict between witnesses, and
    (c) conclusions of what in fact happened.

Staff who are involved in preparation of incident reports and in investigations are referred to Chapter 7, page 5, for guidelines on the use of confidential informant information.

2.  <u>CHRONOLOGICAL DISCIPLINARY RECORD</u>.  To provide an accurate
and comprehensive review of an inmate's disciplinary record, a
chronological disciplinary record is to be kept on each inmate.
This record is to be maintained in the disciplinary section of
the inmate central file for prohibited acts occurring prior to
December 1, 1990.  For incidents occurring after that date, the
information is maintained on SENTRY in the inmate's Chronological
Disciplinary Record.  The chairman of the UDC or the DHO taking
<u>final</u> action is responsible for ensuring that the required
information is entered into SENTRY.

The Appendix to Chapter 5 contains a copy of the Chronological
Disciplinary Record form to be used for incidents occurring prior
to December 1, 1990.

(<u>Note</u>: Disciplinary information is not to be recorded on the
inmate's work assignment sheet.)

**DATA ENTRY INSTRUCTIONS**

Each Discipline Hearing Officer (DHO) or Unit Discipline Committee (UDC) is responsible for the validity and accuracy of this data, and it is critical that they are reported correctly and uniformly.  The DHO and UDC Chairperson are responsible for data entry on all cases resolved at their level.

PROHIBITED ACTS.  The data collection requirements only apply to the following prohibited acts:

- Code 100 - Killing
- Code 101 - Assaulting any Person (Serious)...
- Code 107 - Taking Hostages
- Code 203 - Threatening Another with Bodily Harm...
- Code 205 - Engaging in Sexual Acts
- Code 206 - Making Sexual Proposals or Threats to Another
- Code 224 - Assaulting any Person (Less Serious)..

SENTRY SCREENS.  When an inmate is found to have committed one or more of the seven prohibited acts listed above, the DHO or UDC is required to enter data on the following SENTRY screens:

- Add Hearings/Findings or Update Status After Procedural Hearing

- Update Hearing/Findings or Execute/Unexecute Sanctions Because data collection is not required at the charging or accusatory levels, there are no additional requirements for the Update Charges screen.

DATA KEYING REQUIREMENTS.  Four characters are available to enter data on a particular act, and the fourth is always used for aiding and abetting or attempts (for example, code 101**A**).

For the seven prohibited acts specified above, SENTRY allows for three additional characters (fields) for DHOs or UDCs to input data:

- the first field requires data on the **type of victim**,
- the second field requires data on the **type of weapon** used, and
- the third field applies to the **nature of the injury**.

A fourth, totally separate field is for recording whether the incident was referred for prosecution.

Type of Victim.  The DHO and UDC Chairman must select one of the three codes that best identifies the status of the victim, and enter the appropriate code in the Additional Tracking Identifier

(ATI) field for the prohibited act (e.g., ATI.: <u>S</u>, ATI.: <u>O</u>):

        I = Inmate
        S = Staff
        O = Other

■ There can be only one victim for each prohibited act.
When there are multiple victims (e.g., two or more inmates,
or one staff member and one inmate), there must be multiple
prohibited acts against the inmate.  If there are multiple
acts for the same code, they must be keyed under separate
Incident Report numbers even though the finding could be
based on a single Incident Report.

■ "Other" shall be entered when the type of victim is not
an inmate or a Bureau employee (i.e, visitor, contracting
staff, U.S. Marshal, etc.).

<u>Type of Weapons Classification</u>.  DHOs must carefully review the
list of weapons codes starting from the top (code "A") to the
bottom (code "N").  Using this rank-ordered review process,
select the **first** code that **best** describes the most serious weapon
the inmate actually used or attempted to use in the commission of
the offense.  The selection shall be placed in the second
position directly after the type of victim (e.g. ATI.: S**<u>B</u>**, ATI.:
O**<u>F</u>**):

        A    gun
        B    sharp object (used to inflict cutting type injury)
        C    pointed object (used to inflict stabbing type injury)
        D    solid\blunt object (thrown or used to hit)
        E    toxic or flammable fluids or substances
        F    fists\hands
        G    feet\legs
        H    bodily fluids\waste (spit, urine, feces, blood, etc.)
        J    teeth
        K    head
        L    water
        M    other or unknown
        N    no weapon

■ Weapons refers to the objects, instruments and/or
substances listed above that the inmate was in control of at
the time of the offense, and was considered an element of
the offense.

■ When an inmate threatens to use a weapon that was not
readily available or under his or her control at the time of
the incident, the DHO must select code "N", "no weapon."

Nature of Injury Assessment.  The level of injury is best assessed by considering the nature of medical treatment required, if any.  The DHO must choose the injury code that best describes the most serious injury actually suffered by the victim as a result of the prohibited act.  The choice must be placed in the third position directly after the type of weapon (e.g., ATI.: SB**4**, ATI.: OF**1**):

    1 **No injury** - The victim or medical staff reported no injuries.

    2 **Minor injury** - The victim received minor injuries which may have been treated at the facility, or treated at the facility with a possible recommendation for a non-inmate victim to consult with his or her own physician.

    3 **Moderate injury** - The victim received more serious injuries that generally require treatment at an outside hospital, or in the case of non-inmate victims, treatment by their own physicians.  Moderate injuries are not judged to be life-threatening.

    4 **Major injury** - The victim received injuries that are life threatening, requiring emergency medical treatment at an outside hospital.

    5 **Fatal injury** - The victim received injuries resulting in the loss of life.

**Example One**:  ATI.: **SB4** - "Staff-**S**" victim with the weapon being a "sharp object-**B**", and "major injuries-**4**" sustained.

**Example Two**:  ATI.: **OF1** - "Other-**O**" victim with the weapon being "fists/hands-**F**", and "no injury-**1**" sustained.

REFERRALS FOR PROSECUTION(RFP).  For this system to provide accurate data, it is imperative that Special Investigative Supervisors(SIS) and Special Investigative Agents(SIA) refer all assaults for prosecution and record the data in section 25 of the Incident Report. The following is a totally separate field, and the DHO shall key either accepted or declined for prosecution by the Assistant U.S. Attorney in the:

    ■ Add Hearings/Findings
    ■ Update Status After Procedural Hearing,
    ■ Update Hearing/Findings, or
    ■ Execute/Unexecute Sanctions screens.

The SIS or SIA shall document this information under "Other Facts" in section 25 of the Incident Report (e.g., RFP.: <u>A</u> for accepted or RFP.: <u>D</u> for declined).