Exhibit 2, Part 2

P5270.07
12/29/1987
Appendix 5, Page 1

U.S. Department of Justice
Federal Bureau of Prisons


CHRONOLOGICAL DISCIPLINARY RECORD

INMATE'S NAME:_____

REGISTER NO.: _____

| INSTITUTION AND UNIT | DATE OF FINAL ACTION | FINAL ACTION TAKEN BY: UDC/DHO | CODE#/TITLE OF PROHIBITED ACT/S COMMITTED | SIGNATURE OF UDC CHAIRMAN/DHO (LAST NAME PRINTED) |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
| ACTION TAKEN: | | | | |
|  |  |  |  |  |
| ACTION TAKEN: | | | | |
|  |  |  |  |  |
| ACTION TAKEN: | | | | |
|  |  |  |  |  |
| ACTION TAKEN: | | | | |
|  |  |  |  |  |
| ACTION TAKEN: | | | | |
|  |  |  |  |  |
| ACTION TAKEN: | | | | |

Central File - Section 4

CHAPTER 6

INITIAL HEARING

1. **[INITIAL HEARING §541.15. The Warden shall delegate to one or more institution staff members the authority and duty to hold an initial hearing upon completion of the investigation. In order to ensure impartiality, the appropriate staff member(s) (hereinafter usually referred to as the Unit Discipline Committee (UDC)) may not be the reporting or investigating officer or a witness to the incident, or play any significant part in having the charges referred to the UDC. However, a staff member witnessing an incident may serve on the UDC where virtually every staff member in the institution witnesses the incident in whole or in part. If the UDC finds at the initial hearing that an inmate has committed a prohibited act, the UDC may impose minor dispositions and sanctions. When an alleged violation of Bureau rules is serious and warrants consideration for other than minor sanctions, the UDC shall refer the charges to the Discipline Hearing Officer for further hearing. The UDC must refer all greatest category charges to the DHO. The following minimum standards apply to initial hearings in all institutions.**

**a. Staff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident.**

**b. Each inmate so charged is entitled to an initial hearing before the UDC, ordinarily held within three work days from the time staff became aware of the inmate's involvement in the incident. This three work day period excludes the day staff became aware of the inmate's involvement in the incident, weekends, and holidays.]**

For example, if staff become aware of an inmate's involvement in the incident on a Tuesday and provide the inmate with a copy of the report on Tuesday, the three work day period starts the following day, Wednesday. The UDC hearing must ordinarily be held by Friday.

**[c. The inmate is entitled to be present at the initial hearing except during deliberations of the decision maker(s) or when institutional security would be jeopardized by the inmate's presence. The UDC shall clearly document in the record of the hearing reasons for excluding an inmate from the hearing. An inmate may waive the right to be present at this hearing provided**

that the waiver is documented by staff and reviewed by the UDC. A waiver may be in writing, signed by the inmate, or if the inmate refuses to sign a waiver, it shall be shown by a memorandum signed by staff and witnessed by a second staff member indicating the inmate's refusal to appear at the hearing.  The UDC may conduct a hearing in the absence of an inmate when the inmate waives the right to appear.  When an inmate escapes or is otherwise absent from custody, the UDC shall conduct a hearing in the inmate's absence at the institution in which the inmate was last confined.]

See Chapter 10 for a sample Waiver of Appearance form, BP-307(52).

[d.  The inmate is entitled to make a statement and to present documentary evidence in the inmate's own behalf.

e.  The Unit Discipline Committee may drop or informally resolve any Moderate or Low Moderate charge.  The UDC shall expunge the inmate's file of the Incident Report if the charge is dropped or informal resolution is accomplished.]

A record of any informal resolution in the 300 or 400 codes between the inmate and the UDC is to be maintained by the Captain (See Chapter 5, page 1, for further information on informal resolution procedures).

[f.  The Unit Discipline committee shall consider all evidence presented at the hearing and shall make a decision based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence.  The UDC shall take one of the following actions:

(1)  Find that the inmate committed the prohibited act charged and/or a similar prohibited act if reflected in the Incident Report;

(2)  Find that the inmate did not commit the prohibited act charged or a similar prohibited act if reflected in the Incident Report;or

(3)  Refer the case to the DHO for further hearing.]

The phrase "some facts" refers to facts indicating the inmate did commit the prohibited act.  The phase "greater weight of the evidence" refers to the merits of the evidence, not to its quantity nor to the number of witnesses testifying.

Staff members serving on the UDC are referred to Chapter 7, page 5, for guidelines on using confidential informant information.**[The UDC shall give the inmate a written copy of the decision and disposition by the close of business the next work day.  Any action taken as a minor disposition is reviewable under the Administrative Remedy Procedure (see Part 542 of this Chapter).]**

The chairman of the UDC is to sign Part II of the Incident Report.  This signature serves as both a certification of those persons serving on the UDC and that the completed Part II accurately reflects the UDC proceedings.  The names of other UDC members, if any, participating in the hearing are to be noted in Part II of the Incident Report in the space provided.

If a UDC member wishes to dissent from the UDC action, that committee member should prepare a separate memorandum to the record, stating the reasons for dissent.  Unless there are extenuating circumstances (e.g., the dissenting staff member is out of the institution), the memorandum of dissent must be filed within three working days from the date the UDC chairman signs the Incident Report.  The memorandum is to be placed in section 4 of the inmate central file with the other disciplinary records, absent a specific determination that the dissent is "FOI-Exempt" (e.g., refers to confidential information).  No notation of the dissent is made on the Incident Report, nor is a copy of the dissent provided the inmate as a part of the disciplinary package.  An inmate or third party request for a copy of the dissent is to be handled as a Freedom of Information/Privacy request.

Part 542 refers to Program Statement on Administrative Remedy Procedure for Inmates.  In addition to a review under the administrative remedy procedure, the Warden or designee is to audit and review disciplinary hearings and dispositions to assure conformity with the provisions of this policy.

**[g.  The UDC shall prepare a record of its proceedings which need not be verbatim.  A record of the hearing and supporting documents are kept in the inmate's file.]**

When the UDC finds that the inmate committed the prohibited act charged and/or a similar prohibited act reflected in the Incident Report, the UDC chairman shall ensure that the required information is entered into SENTRY in the inmate's Chronological Disciplinary Record.

**[h.  When an alleged violation of Bureau rules is serious and warrants consideration for other than minor sanctions (G thru P), the UDC shall refer the charge(s) without indication of findings as to commission of the alleged violation to the Discipline Hearing Officer (DHO) for hearing and disposition.  The UDC shall forward copies of all relevant documents to the DHO with a brief statement of reasons for the referral along with any recommendations for appropriate disposition if the DHO finds the inmate has committed the act charged and/or a similar prohibited act.  The inmate whose charge is being referred to the Discipline Hearing Officer may be retained in administrative detention or other restricted status, but the UDC may not impose a final disposition if the matter is being referred to the DHO.]**

The UDC chairman shall record the reasons for the referral along with recommendations for appropriate disposition in the "Committee Action" section of the Incident Report.  Such recommendations are only recommendations to be considered, and are contingent upon a DHO finding that the inmate committed the prohibited act.

**[i.  When charges are to be referred to the Discipline Hearing Officer, the UDC shall advise the inmate of the rights afforded at a hearing before the DHO.  The UDC shall ask the inmate to indicate a choice of staff representative, if any, and the names of any witnesses the inmate wishes to be called to testify at the hearing and what testimony they are expected to provide.  The UDC shall advise the inmate that the inmate may waive the right to be present at the Institution Discipline hearing, but still elect to have witnesses and/or a staff representative appear in the inmate's behalf at this hearing.]**

Staff shall ask an inmate to list on the appropriate form (Notice of Institution Discipline Committee Hearing Before the Discipline Hearing Officer (DHO) - see Chapter 10) all witnesses (including outside witnesses) requested to appear whether they are allowed to appear or are excluded by the DHO.  Unless a witness is listed in advance of the hearing the witness ordinarily will not be called before the DHO.

If an inmate has waived the right to appear before the Unit Discipline Committee, the UDC shall ensure that a staff member advises the inmate of the rights afforded at a hearing before the Discipline Hearing Officer (Inmate Rights at Discipline Hearing and Notice of Discipline Hearing Before the Discipline Hearing Officer (DHO) - see Chapter 10).

**[j.  When the Unit Discipline Committee holds a full hearing
and determines that the inmate did not commit a prohibited act of
High, Moderate, or Low Moderate Severity, the UDC shall expunge
the inmate's file of the Incident Report and related documents.
The UDC must refer to the Discipline Hearing Officer all
incidents involving prohibited acts of Greatest Severity.]**

Chapter 7, Discipline Hearing Officer, discusses expungement
procedures and the retention of findings for research purposes.
   **[k.  The UDC may extend time limits imposed in this section for
a good cause shown by the inmate or staff and documented in the
record of the hearing.]**

The UDC is to be notified by appropriate staff (e.g.,
investigating officer) when it appears that an extension of time
limits is necessary.  The UDC is to ensure that the inmate is
advised of the delay, including, where appropriate, the reasons
for the delay.

The Warden's approval is required for any extension beyond five
work days.  When staff decide and approve the extension, the
inmate is to be provided with written reasons for the extension,
and a copy of the reasons is to be made a part of the UDC record.

2.  <u>UDC TRAINING AND CERTIFICATION</u>.  A staff member may not sit
on the Unit Discipline Committee (UDC) without first successfully
completing the self-study program for UDC certification.  The
program involves completion of a series of training modules.

Each Warden shall select at least one UDC Trainer to review and
monitor the progress of staff participating in the self-study
program.  This assignment will be a collateral position.  The
Trainer's specific responsibilities have been detailed in an
Instructor's Manual.

CHAPTER 7

DISCIPLINE HEARING OFFICER

1.  **[ESTABLISHMENT AND FUNCTIONING OF THE DISCIPLINE HEARING OFFICER §541.16**.

   **a.  Each Bureau of Prisons institution shall have an independent hearing officer (DHO) assigned to conduct administrative fact-finding hearings covering alleged acts of misconduct and violations of prohibited acts, including those acts which could result in criminal charges.  In the event of a serious disturbance or other emergency, or if an inmate commits an offense in the presence of the DHO, an alternate Discipline Hearing Officer will be appointed to conduct hearings with approval of the appropriate Regional Director.  If the institution's DHO is not able to conduct hearings, the Warden shall arrange for another DHO to conduct the hearings.  This person must be trained and certified as a DHO, and meet the other requirements for DHO.]**

A Discipline Hearing Officer may not conduct hearings without receiving specialized DHO training and without passing a DHO certification test.  Passing this test ensures that the person is knowledgeable of the requirements of this Program Statement and of the functions of Inmate Discipline.

The alternate DHO may be a Regional Discipline Hearing Administrator, a DHO from another institution, or a Captain from another institution who has passed a DHO certification test.    *

   **[b.  In order to insure impartiality, the DHO may not be the reporting officer, investigating officer, or UDC member, or a witness to the incident or play any significant part in having the charge(s) referred to the DHO.**

   **c.  The Discipline Hearing Officer shall conduct hearings, make findings, and impose appropriate sanctions for incidents of inmate misconduct referred for disposition following the hearing required by §541.15 before the UDC.  The DHO may not hear any case or impose any sanctions in a case not heard and referred by the UDC.  Only the Discipline Hearing Officer shall have the authority to impose or suspend sanctions A through F.**

   **d.  The Warden at each institution shall designate a staff member, hereinafter called the Segregation Review Official (SRO), to conduct reviews of inmates placed in disciplinary segregation**

**and administrative detention in accordance with the requirements of §541.20 and §541.22.]**

§541.20 and §541.22 are located in Chapter 9 of this Program Statement.  These reviews will ordinarily be conducted by the Captain, but the Warden may designate another person (such as a Manager of the Special Housing Unit) to conduct the reviews, provided that person is trained in conducting the reviews and is familiar with (certified in) inmate discipline matters.       *

2.  [PROCEDURES BEFORE THE DISCIPLINE HEARING OFFICER §541.17.
The Discipline Hearing Officer shall proceed as follows:**

   **a.  The Warden shall give an inmate advance written notice of the charge(s) against the inmate no less than 24 hours before the inmate's appearance before the DHO unless the inmate is to be released from custody within that time.  An inmate may waive in writing the 24-hour notice requirement.**

   **b.  The Warden shall provide an inmate the service of a full time staff member to represent the inmate at the hearing before the Discipline Hearing Officer should the inmate so desire.  The Warden, the DHO or alternate DHO, the reporting officer, investigating officer, a witness to the incident, and UDC members involved in the case may not act as staff representative.  The Warden may exclude other staff from acting as staff representative in a particular case when there is a potential conflict in roles.  The staff representative shall be available to assist the inmate if the inmate desires by speaking to witnesses and by presenting favorable evidence to the DHO on the merits of the charge(s) or in extenuation or mitigation of the charge(s).  The DHO shall arrange for the presence of the staff representative selected by the inmate.  If the staff member selected declines or is unavailable because of absence from the institution, the inmate has the option of selecting another representative, or in the case of an absent staff member of waiting a reasonable period for the staff member's return, or of proceeding without a staff representative.  When several staff members decline this role, the Warden shall promptly appoint a staff representative to assist the inmate.  The DHO shall afford a staff representative adequate time to speak with the inmate and interview requested witnesses where appropriate.  While it is expected that a staff member will have had ample time to prepare prior to the hearing, delays in the hearing to allow for adequate preparation may be ordered by the DHO.]**

P5270.07
12/29/1987
Chapter 7, Page 3

An inmate's staff representative need not know the identity of confidential informants.  While the substance of confidential information may at the discretion of the DHO be divulged to, and challenged by, a staff representative, the <u>reliability</u> of confidential informants may not be questioned by the staff representative.  The DHO is the person responsible for establishing reliability before the information provided may be used to support a finding at the discipline hearing.

**[When it appears that the inmate is not able to properly make a presentation on his own behalf (for example, an illiterate inmate), the Warden shall appoint a staff representative for that inmate, even if one is not requested.]**

While a staff member may decline to serve as representative, this is to be done only for good reason, with the reason stated on the staff representative form.  Chapter 10 contains a copy of this form.

**[c.  The inmate is entitled to make a statement and to present documentary evidence in the inmate's own behalf.  An inmate has the right to submit names of requested witnesses and have them called to testify and to present documents in the inmate's behalf, provided the calling of witnesses or the disclosure of documentary evidence does not jeopardize or threaten institutional or an individual's security.  The DHO shall call those witnesses who have information directly relevant to the charge(s) and who are reasonably available.  This may include witnesses from outside of the institution.  The inmate charged may be excluded during the appearance of the outside witness. The appearance of the outside witness should be in an area of the institution in which outside visitors are usually allowed. The DHO need not call repetitive witnesses.  The reporting officer and other adverse witnesses need not be called if their knowledge of the incident is adequately summarized in the Incident Report and other investigative materials supplied to the DHO.  The DHO shall request submission of written statements from unavailable witnesses who have information directly relevant to the charge(s).  The DHO shall document reasons for declining to call requested witnesses in the DHO report, or, if the reasons are confidential, in a separate report, not available to the inmate. The inmate's staff representative, or when the inmate waives staff representation, the DHO, shall question witnesses requested by the inmate who are called before the DHO.  The inmate who has waived staff representation may submit questions for requested witnesses in writing to the DHO.  The inmate may not question any witness at the hearing.]**

When an inmate is excluded during the appearance of a witness, including an outside witness, the DHO shall inform the inmate, prior to the close of the hearing, of the substance of the witness's testimony, except where institutional security would be jeopardized.

There is no minimum or maximum number of witnesses who may be called before the DHO.  The number of witnesses called should be based on the particular situation and the information to be presented by the witnesses.  While several eyewitnesses may be called, it is expected that the number of character witnesses would be much more limited.  A limited number of character witnesses, at the discretion of the DHO, may be called in mitigation of the charges.

The DHO may not refuse to call a witness who is reasonably available (e.g., on a different shift) and who has information directly relevant to the charge solely because the witness (staff or inmate) does not wish to appear.  An inmate witness can be required to attend the hearing, and that inmate's failure to cooperate with the DHO can result in disciplinary action (e.g., for refusing to obey an order of a staff member, Prohibited Act #307).  The DHO may notify the inmate when a witness doesn't wish to testify.  This may be warranted when it appears that to force the witness' appearance could result in threats to persons' safety, or in disruption to security or to orderly running of the institution.

The statement of an inmate requesting a witness, without more, is not sufficient to mandate the witness's appearance at the Institution Discipline Hearing.  There must be an indication of the requested witness having information directly relevant to the charges.  The DHO may also refuse to call numerous character witnesses on behalf of the inmate.  The DHO may remind an inmate witness that inmate's statement at the hearing must be "true" to the best of the inmate's knowledge.  False statements at a hearing can result in an Incident Report for lying or providing a false statement to a staff member (Prohibited Act #313).  The DHO may need to take steps to protect an inmate witness who is called to appear at the hearing.

On occasion, an inmate may request a witness who is not reasonably available to testify in person (e.g., an inmate from another institution).  When this occurs, the DHO will ordinarily allow sufficient time for the written statement of the witness(es) to be received, if that witness is indicated to have relevant information.  If an extension is not granted, the DHO shall clearly state in the record of the hearing reasons for not granting this delay.

[d.  An inmate has the right to be present throughout the DHO hearing except during a period of deliberation or when institutional security would be jeopardized.

The DHO must document in the record the reason(s) for excluding an inmate from the hearing.  An inmate may waive the right to be present at the hearing, provided that the waiver is documented by staff and reviewed by the DHO.  A waiver may be in writing, signed by the inmate, or if the inmate refuses to sign a waiver, it shall be shown by a memorandum signed by staff and witnessed by a second staff member indicating the inmate's refusal to appear at the hearing.  The DHO may conduct a hearing in the absence of an inmate when the right to appear.  When an inmate escapes or is otherwise absent from custody, the Discipline Hearing Officer shall conduct a hearing in the inmate's absence at the institution in which the inmate was last confined.  when an inmate returns to custody following absence during which sanctions were imposed by the DHO (or the predecessor Institution Discipline Committee (IDC)), the Warden shall have the charges reheard before the Discipline Hearing Officer ordinarily within 60 days after the inmate's arrival at the institution to which the inmate is designated after return to custody, and following appearance before the Unit Discipline Committee at that institution.  The USC shall ensure that the inmate has all rights required for appearance before the Discipline Hearing Officer, including delivery of charge(s), advisement of the right to remain silent and other rights to be exercised before the Discipline Hearing Officer.  All the applicable procedural requirements before the Discipline Hearing Officer apply to this rehearing, except that written statements of witnesses not readily available may be liberally used instead of in-person witnesses.  The DHO upon rehearing may affirm the earlier action taken, may dismiss the charge(s), may modify the finding of the original DHO as to the offense which was committed, or may modify but may not increase the sanctions previously imposed in the inmate's absence.]

When an inmate escapes, and is in local custody where a hearing may be held, an in-person hearing rather than in-absentia may be held, at the discretion of the DHO.

See Chapter 10 for the appropriate Waiver of Appearance form. Although an inmate may waive the right to be present at the hearing, the inmate may elect to have a staff representative and witness(es) appear in the inmate's behalf at this hearing.  The governing sanctions are those in effect at the time of the inmate's absenting himself (or departure) from custody, not those in effect at the time of return.

P5270.07
12/29/1987
Chapter 7, Page 6

**[e.  The DHO may refer the case back to the UDC for further information or disposition.  The DHO may postpone or, at any time prior to making a decision as to whether or not a prohibited act was committed, may continue the hearing until a later date whenever further investigation or more evidence is needed.  A postponement or continuance must be for good cause (determined by the DHO) shown by the inmate or staff and should be documented in the record of the hearing.]**

The DHO may refer the case bank to the UDC upon determining that the available evidence does not warrant DHO involvement.  When this occurs, the UDC will either dispose of the charges at a UDC hearing or provide additional, sufficient evidence to warrant Discipline Hear Officer action.

**[f.  The DHO shall consider all evidence presented at the hearing.  The decision of the  DHO shall be based on at least some facts, and if there is  conflicting evidence, it must be based on the greater weight of the evidence.  The DHO shall find that the inmate either:]**

**[(1) Committed the prohibited act charged and/or a similar prohibited act if reflected in the Incident Report; or**

**(2) Did not commit the prohibited act charged or a similar prohibited act if reflected in the Incident Report.]**

The DHO may consider negative information (e.g., known peddler of contraband) as part of the fact finding process.  The phrase "some facts" refers to facts indicating the inmate did commit the prohibited act.  The phrase "greater weight of the evidence" refers to the merits of the evidence, not to its quantity nor to the number of witnesses testifying.

**[When a discipline decision is based on confidential informant information, the UDC or DHO shall document, ordinarily in the hearing report, the finding as to the reliability of each confidential informant relied on <u>and the factual basis for that finding</u>. When it appears that this documentation in the report would reveal the confidential informant's identity, the finding as to the reliability of each confidential informant relied on and  the factual basis for that finding shall be made part of the hearing record in a separate report, prepared by the UDC chairman or DHO, not available to the inmate.]**

Confidential informant information should not be used, nor relied on in the report, when other independent information is available to support the same finding as is supported by the confidential

information.  Just because there has been an informant who has
opened up an investigation or who has been part of an
investigative process does not mean that informant must be
referred to in the findings, so long as there is at least some
other facts or independent evidence to rely on.

An informant is a person (non-staff, ordinarily an inmate) who
provides staff (usually at the person's initiation) information
about the commission of an offense or about misconduct in an
institution.  A confidential informant is one whose identity must
be withheld and protected for the individual's personal safety.
Ordinarily, the decision (finding that an inmate committed a
prohibited act) must be supported by more than one reliable
confidential source.  If there is only one source, the
confidential informant information must be corroborated by
independently verified factual evidence linking the inmate
charged to the prohibited act.  Uncorroborated confidential
information from a single informant is <u>insufficient</u> as the sole
basis for a finding that an inmate committed a prohibited act,
<u>unless</u> the peculiar circumstances of the incident and the
peculiar knowledge possessed by the confidential informant is
convincing enough to show that the confidential informant's
information must be reliable.  In an unwitnessed assault, for
example, the statement of a seriously injured assault victim
<u>could</u> be sufficient evidence to support a finding without
corroborating evidence.

The reliability of a confidential informant must be established
before the information provided may be used to support a finding
by the UDC or DHO.  Reliability may be determined by a record of
past reliability or by other factors which reasonably convince
the UDC or DHO of the confidential informant's reliability.  The
staff member providing the information to the UDC or DHO shall
include a written statement of the frequency with which the
confidential informant has provided information, the period of
time during which the confidential informant has provided
information, and the degree of accuracy of that information.  If
reliability is based on factors other than a history of
reliability, those other factors supporting a determination of
reliability must be clearly specified.  Staff have an affirmative
obligation to determine whether there is any basis for concluding
that the confidential informant is providing false information.
Neither the UDC nor the DHO may consider information obtained in
exchange for the promise of a favor to support its finding.

All confidential information presented to the UDC or DHO shall be
in writing and must state facts and the manner in which the
confidential informant arrived at knowledge of those facts.  If
possible, the statement shall be signed by the confidential
informant.  If the confidential informant does not write a

statement, the staff member receiving the information shall
provide that information in language as close to the confidential
informant's as possible (actual words of confidential informant
where possible).    The    substance of the confidential informant
information must be known by <u>all</u> members of the decision-making
body.  The identity of a confidential informant must be known, at
a minimum, by the Discipline Hearing Officer.  Where the UDC does
not make a final disposition, but refers a case to the DHO, the
UDC need not know the identity of a confidential informant(s) or
the substance of the information provided.  Where the UDC makes a
final disposition, only the UDC chairman must know the identity
of the confidential informant(s).  The chairman of the UDC or DHO
shall include, in the record of the hearing, a statement of the
basis for finding that the information provided by the
confidential informant is reliable.

Confidential informants' statements shall, at a minimum, be
incorporated in discipline hearing reports by reference.  The UDC
or DHO shall document, ordinarily in the UDC or DHO report, the
finding as to the reliability of each confidential informant
relied on and the factual basis for that finding.  In providing
this information,, the report shall identify the specific
information relied on and the factual basis for that reliance.
When the Chairman of the UDC or the DHO decides that information
given by a single confidential informant is sufficient for
finding that the inmate committed the prohibited act, the
appropriate discipline hearing report should include a statement
giving the rationale for that decision.

When the Chairman of the UDC or the DHO determines that including
information in the Institution Discipline Hearing report would
not reveal the identity of the confidential informant, such
information will be included in that report.  When the Chairman
of the UDC or the DHO determines that including information in
the report might reveal the identity of the confidential
informant, the Chairman of the UDC (when a final decision) or the
DHO shall prepare a separate report documenting the findings as
to the reliability of each confidential relied on, the factual
basis for that finding, and the specific information relied on
and the factual basis for that reliance.  This separate report
need not be placed in the inmate central file, but may be
retained in a secure location so long as it is available for
purposes of later administrative or judicial review, and so long
as the separate report is incorporated by reference into the UDC
or Institution discipline Hearing report.

Since information received anonymously does not meet the
necessary reliability standard, such information may not be used
as evidence relied on in making a finding.  Such information,
however, may be used in the investigatory process.

**[g.  The Discipline Hearing Officer shall prepare a record of the proceedings which need not be verbatim.  This record must be sufficient to document the advisement of inmate rights, the DHO's findings, the DHO's decision and the specific evidence relied on by the DHO, and must include a brief statement of the reasons for the sanctions imposed.  The evidence relied upon, the decision, and the reasons for the actions taken must be set out in specific terms unless doing so would jeopardize institutional security. The DHO shall give the inmate a written copy of the decisions and disposition, ordinarily within 10 days of the DHO's decision.]**

The inmate should be given a copy of the decision even when there is a finding that the inmate did not commit the prohibited act.  See Chapter 10 for the appropriate Discipline Hearing Officer Report form.  The DHO is to sign the Discipline Hearing Report.  This signature certifies that the report accurately reflects the discipline hearing proceedings.

When relying on confidential informant information in making a finding, the DHO shall state on the record as to the reliability of this information and the factual basis underlying that finding.  (See Chapter 7, page 5, for a discussion of confidential informant information.)  If the testimony of conflicting witnesses (includes any witness, not only confidential informant) is presented, or there is other conflict in the evidence, the DHO should indicate in the record of the hearing the reason for believing the testimony of one witness(es) as opposed to another witness(es) or otherwise resolving the conflict.  When the DHO determines that including this information in the Discipline Hearing report would jeopardize institution security, the DHO may provide the required information in a separate report, not available to the inmate.

**[h.  A record of the hearing and supporting documents are to be kept in the inmate central file.]**

When the DHO finds that the inmate committed the prohibited act charged and/or a similar prohibited act reflected in the Incident Report, the DHO shall ensure that the required information is entered into SENTRY in the inmate's Chronological Disciplinary Record.

**[i.  The Discipline Hearing Officer shall expunge an inmate's file of the Incident Report and related documents following a DHO finding that the inmate did not commit a prohibited act.  The requirement for expunging the inmate's file does not preclude maintaining for research purposes copies of disciplinary actions resulting in "not guilty" findings in a master file separate from the inmate's institution file.  However, institution staff may**

**not use or allow the use of the contents of this master file in a manner which would adversely affect the inmate.  Likewise, the expungement requirement does not require the destruction of medical reports or other reports relating to a particular inmate which must be maintained to document medical or other treatment given in a special housing unit.  If an inmate's conduct during one continuous incident may constitute more than one prohibited act, and if the incident is reported in a single Incident Report, and if the DHO finds the inmate has not committed every prohibited act charged, or if the DHO finds that the inmate has committed a prohibited act(s) other than the act(s) charged, then the DHO shall record those findings clearly and shall change the Incident Report to show only the incident and code references to charges which were proved.  Institution staff may not use the existence of charged but unproved misconduct against the inmate.]**

The Special Housing Unit Log Sheet is stamped "Charges Expunged" and left in the central file.  The charges should also be expunged from the Chronological Disciplinary Record on SENTRY.  The Warden shall establish local procedures for expungement for the Incident Report and related documents as required by this section.  It is suggested that, since the inmate has other records of the disciplinary action and must be advised of the not guilty finding, there should be copies of the Incident Report and the Discipline Hearing Officer report maintained in research files.  The reasons for the expungement should be stated in section 5 of the discipline report.  These reasons do not have to be stated on the inmate's copy of the report.

References to significant Prohibited Acts which are not supported by disciplinary actions and hearings may not be utilized by the Bureau of Prisons so as to have an adverse impact on an inmate, specifically the forfeiture or disallowance of good time or good conduct time or a parole recommendation.  Staff may still maintain such references in an inmate's central file for use by staff in making classification, administrative transfer and other decisions involving the security and good order of the institution if the following conditions are met:

    (1)  References included in an inmate's central file must be maintained in an accurate manner.  For example, an inmate suspected of being involved in an escape attempt who was never found to have committed a violation of institution disciplinary regulations or was never charged with an offense due to a lack of evidence would have to have this lack of evidence noted in any reference to his alleged involvement in the escape attempt.

(2)  Placement of a reference to 100 or 200 severity level offenses not supported by disciplinary action in an inmate's central file may only be done with the written approval of the Warden of the institution where the incident occurred.  The Warden's written approval must be documented in the inmate's central file.  Approval of the Warden will signify that in the Warden's judgment this information is necessary for the proper management of the inmate.

Consistent with this Program Statement, staff shall pursue disciplinary action in appropriate instances.

j.  To insure that the disciplinary proceedings meet the prescribed procedural requirements, the DHO will prepare or cause to be prepared the DHO procedural checklist in Appendix 1 to this Chapter.  When there is a confidential informant, Appendix 2 shall be completed.  The information contained in these appendices will serve as a certification of the hearing procedures.  A copy of the checklist is to be attached to the discipline report placed in the inmate central file.

3.  **[DISPOSITIONS OF THE DISCIPLINE HEARING OFFICER § 541.18. The Discipline Hearing Officer has available a broad range of sanctions and dispositions following completion of the hearing. The Discipline Hearing Officer may do any of the following:**

**a.  Dismiss any charge(s) upon a finding that the inmate did not commit the prohibited act(s).  The DHO shall order the record of charge(s) expunged upon such finding.**

**b.  Impose any of sanctions A through P as provided in § 541.13.**

**c.  Suspend the execution of a sanction it imposes as provided in § 541.13.]**

See Chapter 4, Prohibited Acts and Disciplinary Severity Scale.

The Warden or designee is to audit and review disciplinary hearings and dispositions to assure conformity with the provisions of this policy.  The Warden may return a disciplinary action to the DHO for rehearing or other indicated action upon determining that the disciplinary hearing and/or disposition was not in conformity with the provisions of the disciplinary policy.  The Warden's reasons for this action must be documented in writing.  The Warden may not order an increase in any valid disciplinary sanction imposed.

U.S. Department of Justice
Federal Bureau of Prisons
                    CHECKLIST FOR DHO ACTIONS

DATE:_____    REG. NO:_____
INSTITUTION:_____  DATE/INCIDENT:_____DATE/HEARING:_____

RESPONSE:                           CATEGORY
YES   NO    N/A

                    I. ADVANCE NOTICE OF CHARGE

___   ___   ___     (1)  The inmate was given advance written notice of the
                    charge (s) against him _____ (date) at_____ (hour), which
                    was more than 24 hours before the inmate's appearance before
                    the DHO.
                    (2)  If the answer to #1 is no, because there was less than
                    24-hour notice (_____), or was to be released in less than 24
                    hours (_____).

                    II. APPEARANCE

___   ___   ___     (3)  The inmate appeared at the hearing.  If no, the reason
                    was:
                    _____

                    III. STAFF REPRESENTATION

___   ___   ___     (4)  The inmate requested a staff representative and that
                    staff representative appeared.  The representative had a
                    copy of "DUTIES OF STAFF REPRESENTATIVE," and indicated an
                    understanding of those duties.
___   ___   ___     (5) The inmate did not request a Staff Representative and
                    thereby waived the right to staff representation.
      ___           (6)  The inmate requested a reprensentative who refused or
                    was unable to appear; and the inmate chose to continue the
                    hearing in the absence of the requested representative after
                    being advised of the option to postpone the hearing in order
                    to obtain another representative.  Because of staff
                    declinations to appear, _____ was appointed to represent
                    the inmate and appeared on the inmate's behalf.

                    IV. WITNESSES AND DOCUMENTARY EVIDENCE

___   ___   ___     (7)  The inmate waived the right to call witnesses.
                    (8)  The inmate requested witnesses.
                      A. The requested witnesses appeared & statements are
                         summarized in the record.
                      B. Reasons for not calling the witnesses are documented in

the record (i.e., repetitive or adverse witnesses if
their knowledge is adequately summarized in the
incident report or other investigative materials
supplied to the DHO).

C. Written statements of unavailable witnesses were
submitted, were considered, and are included in the
record.

_____  ___  (9) The inmate submitted written documentation which was
considered by the DHO,. If yes, list the documents:_____

_____  ___  (10) The inmate's statement to the DHO is summarized in the
record. If no, it is because ( ) the inmate declined to
make a statement or ( )_____

DATE:_____ REG. NO:_____

YES  NO  N/A    V. USE OF CONFIDENTIAL INFORMANT INFORMATION

___ ___ ___    (11) Confidential informant information that might
identify the confidential informant was considered by
the DHO and this information was not provided to the
inmate but is documented in a separate record. The
confidential informant (s) has have been determined to
be reliable because:_____
_____

VI. FINDINGS AND SPECIFIC EVIDENCE

___ ___ ___    (12) The findings of the DHO are supported by some
facts. If there was conflicting evidence the findings
are supported by the more credible evidence.

___ ___ ___    (13) There is some evidence to support each finding &
conclusion.

___ ___ ___    (14) The specific evidence relied on is adequately
documented in the record with specific evidence and
facts cited (physical evidence, observations, written
documentation, etc).

VII. SANCTIONS:

___ ___    (15) The sanction imposed is proportionate to the
offense committed.

___ ___ ___    (16) The sanction imposed is authorized by the offense
severity, which is: _____
_____
_____

___ ___ ___    (17) The reasons for the sanction are adequately
documented in the record of the hearing, or in a
separate report.

VIII. OTHER

P5270.07
12/29/1987
Chapter 7, Appendix 1, Page 3

This section should be used for unusual aspects of the
case, such as inmate competency, UDC proceedings, DHO
disqualification issues, or Special Housing Unit
questions. _____

_____

_____

_____

THIS CHECKLIST WAS COMPLETED BY DHO:_____

_____ PRINT OR TYPE

SIGNATURE OF THE DHO:_____

PLACE OF THE DHO HEARING:_____

CC:  CENTRAL FILE

          ORIGINAL TO BE ATTACHED TO DHO REPORT

P5270.XX
12/29/1987
Chapter 7, Appendix 2, Page 1

**U.S. DEPARTMENT OF JUSTICE**
**BUREAU OR PRISONS**

### CONFIDENTIAL INFORMANT INFORMATION

---

This form concerns the information provided by a confidential informant in connection with the investigation for an incident report dated _____ concerning inmate _____Reg. No. _____.

**PART 1.    (To be completed by investigator)**

I.  Set out below are the facts provided by the confidential informant and a complete description of the manner in which the informant arrived at knowledge of these facts.  If possible, the statement should be signed by the informant.  If the informant does not write a statement, the staff member receiving the information shall provide that information in language as close to the informant's as possible.

II. Reliability is established by one of the following:

    A. Past history of reliability

        1.    The informant has provided information with the following frequency:

        2.    This information was provided during the following period of time:

        3.    The degree of accuracy of such information is:

cc:  Central File - FOI Exempt
     Captain's Office

B.  The informant's reliability is based on factors other than a
    history of reliability:  (peculiar circumstances of the incident,
    independent factual corroboration, etc.)

III. I have determined that there was no reasonable basis for concluding
     the informant was providing false information and there was no promise
     of a favor made to the confidential informant in exchange for the
     information provided.

_____(time and date)

_____
        (signature and title of investigator)

---

**PART 2.**   (**To be completed by DHO**)

The basis for the DHO's determination that the information is reliable
is set out in Section II (A) or (B) (circle one).  The basis for the
finding that the informant information is credible (explain why in
light of other information known about incident or the informant, the
information he or she has provided is worthy of belief) is as follows:

I am aware of the identity of this information and I hereby certify that
the substance of this informant's information was known to me.

_____(time and date)

_____
            (signature and title)

CHAPTER 8
APPEALS OF DISCIPLINARY HEARING ACTIONS

1.  **[APPEALS FROM UNIT DISCIPLINE COMMITTEE OR DISCIPLINE HEARING OFFICER ACTIONS §541.19.  At the time the Unit Discipline Committee or Discipline Hearing Officer gives an inmate written notice of its decision, the UDC or DHO shall also advise the inmate that the inmate may appeal the decision under Administrative Remedy Procedures (see Part 542 of this Chapter). An inmate's initial appeal of a decision of the DHO should be filed directly to the appropriate Regional Office.  The inmate should forward a copy of the DHO report or, if not available at the time of filing, should state in his appeal the date of the DHO hearing and the nature of the charges against the inmate.  On appeals, the appropriate reviewing official (the Warden, Regional Director or General Counsel) may approve, modify, reverse, or send back with directions, including ordering a rehearing, any disciplinary action of the Unit Discipline Committee or Discipline Hearing Officer but may not increase any valid sanction imposed.]**

The reviewing official for decisions by the UDC is the Warden. Appeals shall be initially filed on Form BP-229(13) (formerly "BP-9") with the Warden within 15 calendar days from the date that the inmate receives the written notice of its decision.

The reviewing official for decisions by the DHO is the Regional Director.  Appeals shall be initially filed on Form BP-230(13) (formerly "BP-10") with the appropriate Regional Director within 20 calendar days from the date that the inmate receives the written notice of decision.  The Warden may also review DHO hearings and appeals, to the extent he/she considers necessary, to assure substantial compliance with the provisions of the discipline policy.  In addition, the DHO may receive informal complaints about the procedure and correct mistakes locally before the "BP-10" review.

**[On appeals, the appropriate reviewing authority shall consider:**

  **a. Whether the Unit Discipline Committee or the Discipline Hearing Officer substantially complied with the regulations on inmate discipline;**

  **b. Whether the Unit Discipline Committee or Discipline Hearing Officer based its decision on some facts, and if there was conflicting evidence, whether the decision was based on the greater weight of the evidence; and]**

The reviewing official's review is limited to determining if the UDC or DHO could have rationally concluded that the evidence supports the decision, and not necessarily whether the reviewing official would have made the same decision had that official been a part of the UDC or DHO proceedings.

**[c. Whether an appropriate sanction was imposed according to the severity level of the prohibited act, and other relevant circumstances.]**

The investigator, UDC members, DHO reporting officer, and staff representative may not investigate or assist in preparing the response to administrative appeals from UDC or DHO actions. Where a remand is directed, the appropriate Unit Discipline Committee or DHO is bound by the original sanction(s), except where the remand is made specifically because of the sanction (in which case the reviewing official shall give directions as to the sanction), or where the inmate's behavior or activity since the first hearing is determined by the Hearing Officials to justify an increase or decrease in such sanction(s).  The intervening behavior or activity and the reasons for an increase or decrease in the sanction(s) imposed by the UDC or DHO must be documented in the hearing record.

Part 542 refers to P.S. 1330.7, Administrative Remedy Procedure for Inmates.  The UDC or DHO is to ensure that an inmate is provided written notice of the decision.  This notice may be provided either by the chairman of the UDC or by the DHO at the close of the hearing, or by other designated staff following the hearing.

2.  When an appeal of a disciplinary action results in the original sanction being replaced by a suspended sanction, that suspension, whenever possible, runs from the date that the original disciplinary sanction was imposed.

3.  When an inmate files a Regional or Central Office appeal of a disciplinary action, staff in those offices may request copies of disciplinary records.  Each Warden shall designate a staff member (ordinarily the DHO's Clerk) to be responsible for assuring that copies of disciplinary records sent for review or appeal are complete; i.e., that confidential information, all witness and notice of rights forms, all staff memorandums concerning the incident, investigative reports, any dissenting report, the DHO certification (checklist), are included.  All documentation will be forwarded to the appropriate office within 3 working days of the receipt of request.

CHAPTER 9
SPECIAL HOUSING UNITS

Each institution having the need for facilities to house inmates
separate from the general population will establish a special
housing unit consisting of two categories of cells:
administrative detention and disciplinary segregation.  (Note:
Some institutions may also have a facility for long-term control
unit programs - see Control Unit Programs Program Statement.)

**Staff must limit the access between female and male inmates
housed in Special Housing Units**.  Female and male inmates are not
to be assigned to cells on the same range, assigned as orderlies
on opposite gender ranges or to work together in common areas,
assigned to exercise groups with opposite gender inmates, etc.
A physical separation between female and male inmates must be
continually maintained except in an emergency.

Disciplinary Segregation Status.  A form of separation from the
general population in which inmates who commit serious violations
of Bureau rules are confined by the Discipline Hearing Officer,
for specified periods of time, in a cell removed from the general
population.  The DHO imposes the sanction of disciplinary
segregation only upon determining that no other available
disposition will adequately achieve the purpose of punishment and
deterrence necessary to regulate an inmate's behavior within
acceptable limits.

Administrative Detention Status.  A form of separation from the
general population used when the continued presence of the inmate
within the general population would pose a serious threat to
life, property, self, staff or other inmates, or to the security
or orderly running of the institution.  This housing status may
also include inmates who require protective custody, those who
cannot be placed in local population because they are en route to
another institution (holdovers), and those who are awaiting a
hearing before the Unit Discipline Committee or Discipline
Hearing Officer.  Administrative detention status is a
non-punitive status in which restricted conditions of confinement
are required only to ensure the safety of inmates or others, the
protection of property, or the security or orderly running of the
institution.

Special Housing Units will be maintained in accordance with the
policies and procedures contained in this Program Statement.
Placement of Youth Corrections Act or Pretrial inmates in Special
Housing Units is governed by the Youth Corrections Act (YCA)
Institutions and Programs Program Statement and the Pretrial
Inmates Program Statement.  See Chapter 10 for a sample of the
Special Housing Unit Record.

DISCIPLINARY SEGREGATION

1.   [JUSTIFICATION FOR PLACEMENT IN DISCIPLINARY SEGREGATION AND
REVIEW OF INMATES IN DISCIPLINARY SEGREGATION §541.20

   a.  Except as provided in paragraph (b) of this section, an
inmate may be placed in disciplinary segregation only by order of
the Discipline Hearing Officer following a hearing in which the
inmate has been found to have committed a prohibited act in the
Greatest, High, or Moderate Category, or a repeated offense in
the Low Moderate Category.  The DHO may order placement in
disciplinary segregation only when other available dispositions
are inadequate to achieve the purpose of punishment and
deterrence necessary to regulate an inmate's behavior within
acceptable limits.

   b.  The Warden may temporarily (not exceeding five days) move
an inmate to a more secure cell (which may be in an area
ordinarily set aside for disciplinary segregation and which
therefore requires the withdrawal of privileges ordinarily
afforded in administrative detention status, until a hearing
before the DHO can be held) who:

     (1)  is causing a serious disruption (threatening life,
serious bodily harm, or property) in administrative detention,

     (2)  cannot be controlled within the physical confines of
administrative detention, and

     (3)  upon advice of appropriate medical staff, does not
require confinement in the institution hospital for mental or
physical treatment, or who would ordinarily be housed in the
institution hospital for mental or physical treatment, but who
cannot safely be housed there because the hospital does not have
a room or cell with adequate security provisions.

   The Warden may delegate this authority no further than to the
official in charge of the institution at the time the move is
necessary.]

   A fully documented report (Temporary Placement in Disciplinary
Segregation Order - see Chapter 10) shall be immediately
forwarded to the Inmate Central File.

   [c.  The Segregation Review Official (SRO) (see §541.16(d)
shall conduct a hearing and formally review the status of each
inmate who spends seven continuous days in disciplinary
segregation and thereafter shall review these cases on the record

**in the inmate's absence each week and shall conduct a hearing and formally review these cases at least once every 30 days.  The inmate appears before the SRO at the 30-day hearings, unless the inmate waives the right to appear.  A waiver may be in writing, signed by the inmate, or if the inmate refuses to sign a waiver, it shall be shown by a memorandum signed by staff and witnessed by a second staff member indicating the inmate's refusal to appear at the hearing.  Staff shall conduct a psychiatric or psychological assessment, including a personal interview, when disciplinary segregation continues beyond 30 days.  The assessment, submitted to the SRO in a written report, shall address the inmate's adjustment to surroundings and the threat the inmate poses to self, staff and other inmates.  Staff shall conduct a similar psychiatric or psychological assessment and report at subsequent one-month intervals if segregation continues for this extended period.]**

Section 541.16(d) is located in Chapter 7 of this Program Statement.  The required reviews are to be recorded on the Special Housing Review form.  Chapter 10 has a copy of both the Special Housing Review and the Waiver of Appearance forms.

**[d.  The Segregation Review Official may release an inmate from disciplinary segregation earlier than the sanction initially imposed upon finding that continuation in disciplinary segregation is no longer necessary to regulate the inmate's behavior within acceptable limits or for fulfilling the purpose of punishment and deterrence which initially resulted in the inmates placement in disciplinary segregation status.  The SRO may not increase any previously imposed sanction.]**

The SRO shall consult with the Captain and the DHO, if reasonably available, prior to releasing an inmate from disciplinary segregation.  The SRO shall always notify the DHO or early releases from segregation, and the reasons therefor.

## 2. [CONDITIONS OF DISCIPLINARY SEGREGATION §541.21.

**a.  Disciplinary segregation is the status of confinement of an inmate housed in** a special housing unit in a cell either alone or with other inmates, separated from the general population. Inmates housed in disciplinary segregation have significantly fewer privileges than those house in administrative detention.

**b.  The Warden shall maintain for each segregated inmate basic living levels of decency and humane treatment, regardless of the purpose for which the inmate has been segregated.  Living conditions may not be modified for the purpose of reinforcing**

acceptable behavior and different levels of living arrangements will not be established.  Where it is determined necessary to deprive an inmate of a usually authorized item, staff shall prepare written documentation as to the basis for this action, and this document will be signed by the Warden, indicating the Warden's review and approval.

   c.  The basic living standards for segregation are as follows:

   (1)  Segregation Conditions.  The quarters used for segregation must be well-ventilated, adequately lighted, appropriately heated and maintained in a sanitary condition at all times.  All cells must be equipped with beds.  Strip cells may not be a part of the segregation unit.  Any strip cells which are utilized must be a part of the medical facility and under the supervision and control of the medical staff.]

The beds may be securely fastened to the floor or wall of the cell.

   **[(2)  Cell Occupancy.  The number of inmates confined to each cell or room in segregation should not exceed the number for which the space was designated.  The Warden may approve excess occupancy if the Warden finds there is a pressing need for this action, and that other basic living standards of this subsection can still be maintained.**

   **(3)  Clothing and Bedding.  An inmate in segregation may wear normal institution clothing but may not have a belt.  Staff shall furnish a mattress and bedding.  Cloth or paper slippers may be substituted for shoes at the discretion of the Warden.  An inmate may not be segregated without clothing, mattress, blankets and pillow, except when prescribed by the medical officer for medical or psychiatric reasons.]**

   (a)  Staff shall conduct a thorough search (body and property) of the inmate upon admission to and at any time of movement into the unit to prevent the introduction and passage of contraband.  Other searches in the unit may be conducted according to circumstances and in accordance with the relevant provisions of the Custodial (Correctional Services) Manual (P.S. 5500.1) and Searches of Housing Units, Inmates, and Inmate Work Areas (P.S. 5521.3).

   (b)  If an inmate is so seriously disturbed that the inmate is likely to destroy clothing or bedding or create a disturbance which would be seriously detrimental to others, the Medical Department shall be notified immediately and a regimen of

treatment and control instituted with the concurrence of the Medical Officer, in consultation with mental health staff.

**[Inmates in special housing status will be provided, as nearly as practicable, the same opportunity for the issue and exchange of clothing, bedding, and linen, and for laundry as inmates in the general population.**
**Exceptions to this procedure may be permitted only when found necessary by the Warden or designee.  Any exception, and the reasons for this, must be recorded in the unit log.]**

Any exception should also be documented on the reverse side of the BP-292(52) (Chapter 10, page 13).

**[(4)  Food.  Staff shall give a segregated inmate nutritionally adequate meals, ordinarily from the menu of the day for the institution.  Staff may dispense disposable utensils when necessary.]**

See Food Service Manual (P.S. 4700.2) for standards and guidelines for feeding in Special Housing Units.

**[(5)  Personal Hygiene.  Segregated inmates shall have the opportunity to maintain an acceptable level of personal hygiene. Staff shall provide toilet tissue, wash basin, tooth brush, eyeglasses, shaving utensils, etc., as needed.  Staff may issue a retrievable kit of toilet articles.  Each segregated inmate shall have the opportunity to shower and shave at least three times a week, unless these procedures would present an undue security hazard.  This security hazard will be documented and signed by the Warden, indicating the Warden's review and approval.**

**Inmates in special housing will be provided, where practicable, barbering and hair care services.  Exceptions to this procedure may be permitted only when found necessary by the Warden or designee.**

**(6)  Exercise.  Staff shall permit each segregated inmate no less than five hours exercise each week.  Exercise should be provided in five one-hour periods, on five different days, but if circumstances require, one-half hour periods are acceptable if the five-hour minimum and different days schedule is maintained. These provisions must be carried out unless compelling security or safety reasons dictate otherwise.  Institution staff shall document these reasons.]**

If weather and resources permit, the inmate shall receive outdoor exercise periods.  Based on security considerations, weight training equipment is not available to inmates in administrative detention and disciplinary segregation status.

**[Exercise periods, not to exceed one week, may be withheld from an inmate by  order of the Warden, following a hearing, and recommendation, before a person certified in the discipline hearing officer procedures.  This hearing must be held in accordance with the provisions of §541.17, following those provisions which are appropriate to these circumstances, and only upon a finding by the person conducting the hearing that the actions of the segregated inmate pose a threat to the safety or health conditions of the unit.]**

Only a person certified to conduct DHO hearings may hold these hearings.
An inmate's exercise period may be withheld the day of a severely disruptive incident under the first paragraph of this section (6), since the policy requires exercise be provided in five one-hour periods, on five different days.  This section further states these provisions must be carried out unless security or safety reasons dictate otherwise, with these reasons documented by staff.

Where staff believe the inmate's actions require exercise periods to be withheld for a further period (not to exceed one week), the inmate should be given the required 24-hours advance written notice of the hearing before the DHO may then hold a separate hearing on whether the inmate's exercise periods should be withheld.  This hearing should generally meet the requirements of §541.17 (e.g., affording a staff representative, right to call witnesses).  When this is not possible, the DHO should document in the committee's report  the reasons for not adhering to the requirements of §541.17. The DHO shall forward his written recommendation, with reasons, for withholding exercise privileges to the Warden for final decision.

**[(7)  <u>Personal Property.</u>  Institution staff shall ordinarily impound personal property.**

**(8)  <u>Reading Material</u>.  Staff shall provide a reasonable amount of non-legal reading material, not to exceed five books per inmate at any one time, on a circulating basis.  Staff shall provide the inmate opportunity to possess religious scriptures of the inmate's faith.  As to legal materials, see Part 543, Subpart B.]**

Part 543, Subpart B refers to P.S. 1315.3, Inmate Legal
Activities.

**[(9)  Supervision.  In addition to the direct supervision
afforded by the unit officer, a member of the medical department
and one or more responsible officers designated by the Warden
(ordinarily a Lieutenant) shall see each segregated inmate daily,
including weekends and holidays.  Members of the program staff,
including unit staff shall arrange to visit inmates in special
housing within a reasonable time after receiving the inmate's
request.]**

Inmates are to be afforded the opportunity to continue taking
medication prescribed for them while in special housing.

In addition to the above visits, each Warden shall establish
procedures to ensure periodic visits by representatives of the
different program areas.

**[(10)  Correspondence and Visits.  As to correspondence
privileges, see Part 543, Subpart B.  Staff shall make reasonable
effort to notify approved social visitors of any necessary
restriction on ordinary visiting procedures so that they may be
spared disappointment and unnecessary inconvenience.  If ample
time for correspondence exists, staff may place the burden of
this notification to visitors on the inmate.  As to general
visiting and telephone privileges, see Part 540, Subpart D and
Subpart I.  In respect to legal, religious, and privileged
out-going mail, the relevant regulations must be followed by
institution staff (see Parts 540, 543, and 548 of this Chapter).]**

Part 540, Subpart B refers to P.S. 5265.8, Correspondence
Regulations; Part 540, Subpart D refers to P.S. 5267.4, Visiting
Regulations; Part 540, Subpart 1 refers to P.S. 5264.3, Telephone
Regulations for Inmates; Part 543 refers to P.S. 1315.3, Inmate
Legal Activities; Part 548 refers to P.S. 5360.5, Religious
Belief and Practices of Committed Offenders.

## ADMINISTRATIVE DETENTION

1.  **[ADMINISTRATIVE DETENTION §541.22.  Administrative detention
is the status of confinement of an inmate in a special housing
unit in a cell either by self or with other inmates which serves
to remove the inmate from the general population.**

a.  <u>Placement in Administrative Detention.</u>  The Warden may delegate authority to place an inmate in administrative detention to Lieutenants.  Prior to the inmate's placement in administrative detention, the Lieutenant is to review the available information and determine whether the inmate's placement in administrative detention is warranted.  The Warden may place an inmate in administrative detention when the inmate is in holdover status (i.e., en route to a designated institution) during transfer, or is a new commitment pending classification.  The Warden may also place an inmate in administrative detention when the inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates or to the security or orderly running of the institution and when the inmate:

(1)    Is pending a hearing for a violation of Bureau regulations;

(2)    Is pending an investigation of a violation of Bureau regulations;

(3)    Is pending investigation or trial for a criminal act;

(4)    Is pending transfer;

(5)    Requests admission to administrative detention for the inmate's own protection, or staff determines that admission to or continuation in administrative detention is necessary for the inmate's own protection (see §541.23); or

(6)    Is terminating confinement in disciplinary segregation and placement in general population is not prudent.  The Segregation Review  Official is to advise the inmate of this determination and reason for such action.]

The review must be separate from the initial hearing before the DHO which resulted in the inmate's placement in disciplinary segregation.

(a)    [(i)  Except for pretrial inmates or inmates in a control unit program, staff ordinarily within 90 days of an inmate's placement in post-disciplinary detention shall either return the inmate to the general inmate population or request

**regional level assistance to effect a transfer to a more suitable institution.]**                                                              *

On occasion, court requirements or similar constraints require an inmate's retention beyond 90 days (for example, the inmate cannot be transferred due to pending charges).  Whenever it is necessary to hold an inmate in post-disciplinary detention beyond 90 days, the Regional Director is to be notified.

          Administrative type institutions are facilities to which inmates are assigned for factors other than security, e.g., mental health reasons, short term inmates, etc. (see the Program Statement on the Security Designation and Custody Classification System).  See the Program Statement on Pretrial Inmates, for procedures in regards to this category.

          (i)  If an inmate is unable to be placed into the general population, the reason is documented and the case, with all relevant material, is referred to the appropriate Regional Director, Attention:  Regional Correctional Services Administrator.  The Correctional Services Administrator will review the case with the Regional Designator, and a recommended placement will then be given to the Regional Director.

          (ii)  All Central Inmate Monitoring Cases (CIM) cases will receive a CIM clearance before transfer, under the provisions of the current Program Statement on the Central Inmate Monitoring System.

          (iii)  A Regional Director may order the transfer of post-disciplinary detention cases within that Region, or to other Regions with the concurrence of the receiving Regional Director.

          (b)  **[(ii)  The Assistant Director, Correctional Programs Division, shall review for purpose of making a disposition, the case of an inmate not transferred from post-disciplinary detention within the time frame specified in paragraph (a) of this section.]**

          Referrals to the Assistant Director are made only in the event that the appropriate Regional Director is unable to resolve the situation within the 90-day period.  When this occurs, a referral will be made within 10 days by the Regional Director to the Assistant Director.

(c)  **[(iii)  Staff in a control unit will attempt to adhere to the 90-day limit for an inmate's placement in post-disciplinary detention.  Because security needs required for an inmate in a control unit program may not be available outside of post-disciplinary detention, the Warden may approve an extension of this placement upon determining in writing that it is not practicable to release the inmate to the general inmate population or to effect a transfer to a more suitable institution.]**

(d)  **[(iv)  The appropriate Regional Director and the Assistant Director, Correctional Programs Division, shall review (for purpose of making a disposition) the case of an inmate in a control unit program not transferred from post-disciplinary detention within the 90-day time frame specified in paragraph (a)(6)(iii) of this section.  A similar, subsequent review shall be conducted every 60-90 days if post-disciplinary detention continues for this extended period.]**

The Executive Panel, composed of the appropriate Regional Director and the Assistant Director, Correctional Programs Division, shall review the status of an inmate who is in post-disciplinary detention status over 90 days at the same time they review (every 60-90 days) the status of inmates in the Control Unit (see the Program Statement on Control Unit Programs).

**[b.  <u>Administrative Detention Order Detailing Reasons For Placement</u>.  The Warden shall prepare an administrative detention order detailing the reasons for placing an inmate in administrative detention, with a copy given to the inmate, provided institutional security is not compromised thereby. Staff shall deliver this order to the inmate within 24 hours of the inmate's placement in administrative detention, unless this delivery is precluded by exceptional circumstances.  An order is not necessary for an inmate placed in administrative detention when this placement is a direct result of the inmate's holdover status.]**

Ordinarily the Warden will delegate authority for this placement action to Lieutenants.

The order is also given to members of the inmate's unit or team. Distribution of copies shall be as indicated on the order.  See Chapter 10 for a copy of the Administrative Detention Order.

**[c.  Review of Inmates Housed in Administrative Detention.**

**(1) Except as otherwise provided in paragraphs c(2) and c(3) of this section, the Segregation Review Official will review the status of inmates housed in administrative detention.  The SRO shall conduct a record review within three work days of the inmate's placement in administrative detention and shall hold a hearing and formally review the status of each inmate who spends seven continuous days in administrative detention, and thereafter shall review these cases on the record (in the inmate's absence) each week, and shall hold a hearing and review these cases formally at least every 30 days.  The inmate appears before the SRO at the hearing unless the inmate waives the right to appear. A waiver may be in writing, signed by the inmate, or if the inmate refuses to sign a waiver, it shall be shown by a memorandum signed by staff and witnessed by a second staff member indicating the inmate's refusal to appear at the hearing.**

**Staff shall conduct a psychiatric or psychological assessment, including a personal interview, when administrative detention continues beyond 30 days.  The assessment, submitted to the SRO in a written report, shall address the inmate's adjustment to surroundings and the threat the inmate poses to self, staff and other inmates.  Staff shall conduct a similar psychiatric or psychological assessment and report at subsequent one-month intervals should detention continue for this extended period. Administrative detention is to be used only for short periods of time except where an inmate needs long-term protection (see §541.23), or where there are exceptional circumstances, ordinarily tied to security or complex investigative concerns. An inmate may be kept in administrative detention for longer term protection only if the need for such protection is documented by the SRO.  Provided institutional security is not compromised, the inmate shall receive at each formal review a written copy of the SRO's decision and the basis for this finding.  The SRO shall release an inmate from administrative detention when reasons for placement cease to exist.]**

Ordinarily, these status reviews will be conducted by the Captain, but the Warden may designate other staff such as the Operations Lieutenant of the Administrative Detention Unit or members of the inmate's unit or team to conduct this review. Staff conducting these status reviews must be certified in inmate discipline matters.

P5270.07
12/29/1987
Chapter 9, Page 12

The required reviews are to be recorded on the Special Housing Review form.  Chapter 10 has a copy of both the Special Housing Review and the Waiver of Appearance forms.

**[(2)  The Warden shall designate appropriate staff to meet weekly with an inmate in administrative detention when this placement is a direct result of the inmate's holdover status. Staff shall also review this type of case on the record each week.]**

Staff are to place in the inmate central file documentation of the weekly personal staff contacts and of the record review.

**[(3) When an inmate is placed in administrative detention for protection, but not at that inmate's request, the Warden or designee is to review the inmate's status within two work days of this placement to determine if continued protective custody is necessary.  A formal hearing is to be held within seven days of the inmate's placement (see §541.23, Protection Cases).]**

§541.23 is located on page 10 of this Chapter.  These reviews and hearings will be conducted by a staff member designated by the Warden, who may designate the DHO, Captain, or any other person with special knowledge in this area.  This person must be certified in discipline procedures.

**[d.  <u>Conditions of Administrative Detention.</u>  The basis level of conditions as described in §541.21(c) for disciplinary segregation also apply to administrative detention.  If consistent with available resources and the security needs of the unit, the Warden shall give an inmate housed in administrative detention the same general privileges given to inmates in the general population.  This includes, but is not limited to, providing an inmate with the opportunity for participation in an education program, library services, social services, counseling, religious guidance and recreation.  Unless there are compelling reasons to the contrary, institutions shall provide commissary privileges and reasonable amounts of personal property.  An inmate in administrative detention shall be permitted to have a radio, provided that the radio is equipped with ear plugs. Exercise periods, at a minimum, will meet the level established for disciplinary segregation and will exceed this level where resources are available.  The Warden shall give an inmate in administrative detention visiting, telephone, and correspondence privileges in accordance with Part 540 of this Chapter.**

**The Warden may restrict for reasons of security, fire safety, or housekeeping the amount of personal property that an inmate may retain while in administrative detention.]**

The Appendix to this Chapter contains a listing of that personal property which is ordinarily allowed in Administrative Detention. Part 540 refers to P.S. 5267.4, Visiting Regulations, P.S. 5264.3, Telephone Regulations for Inmates, and P.S. 5265.8, Correspondence.

(1)    It is suggested that each institution have a quantity of inexpensive ear plugs available to ensure that radio noise level is controlled.  Where a Warden believes that a radio will present a serious security problem in respect to contraband, the Warden may purchase individual radios, to remain in each cell. Any damage or destruction to such radios would be grounds for disciplinary action.

(2)    If weather and resources permit, the inmate shall receive outdoor exercise periods.

(3)    Failure of an inmate to maintain acceptable living and sanitation standards may result in a disciplinary report (Code 317) being written and sanctions imposed.

2.    **[<u>PROTECTION CASES §541.23.</u>**

    a.  **Staff may consider the following categories of inmates as protection cases:**

       **(1)  Victims of inmate assaults;**
       **(2)  Inmate informants;]**

Inmates who have provided information to the institution staff or any law enforcement agency concerning criminal activities by others.

   **[(3) Inmates who have received inmate pressure to participate in sexual activity;**

   **(4)  Inmates who seek protection through detention, claiming to be former law enforcement officers, informants, or others in sensitive law enforcement positions, whether or not there is official information to verify the claim;**

   **(5)  Inmates who have previously served as inmate gun guards, dog caretakers, or in similar positions in state or local correctional facilities;**

**(6)   Inmates who refuse to enter the general population because of alleged pressures from other unidentified inmates;**

**(7)   Inmates who will not provide, and as to whom staff cannot determine, the reason for refusal to return to the general population;**

**(8)   Inmates about whom staff has good reason to believe the inmate is in serious danger of bodily harm.]**

Inmates who request protection, or who agree with the need for separation for protection reasons, will so indicate on the form (Administrative Detention Order - see Chapter 10) documenting placement in administrative detention.

**[b.   Inmates who are placed in administrative detention for protection, but not at their own request or beyond the time when they feel they need to be detained for their own protection, are entitled to a hearing, no later than seven days from thetime of their admission (or from the time of their detention beyond their own consent).   This hearing is conducted in accordance with the procedural requirements of §541.17, as to advance written notice, staff representation, right to make a statement and present documentary evidence, to request witnesses, to be present throughout the hearing, and advance advisement of inmate rights at the hearing, and as to making a record of the proceedings.]**

This hearing may be conducted by a DHO, by the Captain, or by any other person certified in inmate discipline procedures.   When practicable, the * hearing is to be provided prior to the inmate's placement in administrative detention.   When this is not practicable and an inmate is placed in administrative detention for protection, but not at that inmate's own request, the Warden or designee (ordinarily the Captain) shall review the placement within two work days of the placement to determine if continued protective custody is necessary.   If continued placement if warranted, the formal hearing described above is to occur within seven days of the inmate's placement.

**[c.   Ordinarily, staff may place an inmate in administrative detention as provided in paragraph (a) of this rule relating to protection cases, for a period not to exceed 90 days.   Staff shall clearly document in the record the reasons for any extension beyond this 90-day period.]**

Inmates in Categories a(1-5) of this section (on protection cases) are not to be extended beyond 90 days unless there are

exceptional circumstances and approval is obtained from the
appropriate Regional Correctional Services Administrator.
Inmates in Categories a(6, 7, and 8) may be extended by the
Warden provided there is a clear documentation of need, and
provided that the inmate is otherwise appropriately classified
for that facility.

   **[d.   Where appropriate, staff shall first attempt to place the
inmate in the general population of their particular facility.
Where inappropriate, staff shall clearly document the reason(s)
and refer the case, with all relevant material, to their Regional
Director, who, upon review of the material, may order the
transfer of a protection case.]**

The institution referral is directed to the attention of the
Regional Correctional Services Administrator.  This person will
review the case with the Regional Designator and a recommended
placement will then be given to the Regional Director.

All Central Inmate Monitoring Cases (CIM) cases will receive a
CIM clearance before transfer, under the provisions of P.S.
5180.2, Central Inmate Monitoring System.

Transfer of a protection case does not require concurrence of the
receiving Regional Director.

P5270.07
12/29/1987
Chapter 9, Appendix

<u>PERSONAL PROPERTY ORDINARILY ALLOWED IN ADMINISTRATIVE DETENTION</u>
(If not otherwise a threat to institution security)

1.   Bible, Koran, or other scriptures
2.   Books, Paperback
3.   Cigarettes
3.   Coffee
5.   Cups, Drinking
6.   Eye Glasses
7.   Fruits
8.   Legal Materials
9.   Magazines
10.  Magic Shave
11.  Mail
12.  Newspapers
13.  Personal Hygiene Items (except razors)[1]
14.  Photo Albums
15.  Authorized Religious Medals/Headgear (e.g., kufi)
16.  Shoes, Shower
17.  Shoes, Tennis (except those with steel shanks)
18.  Snack Foods
19.  Soft Drinks, Powdered
20.  Stationery/Stamps
21.  Sugar Cubes
22.  Tobacco, Chewing
23.  Tobacco, Smoking
24.  Wedding Band
25.  Radio with ear plugs
26.  Watch

In some instances, it will be necessary for the Chief Executive Officer to develop local limitations on the quantity and type of personal property allowed in administrative detention.  Personal property may be limited or withheld for reasons of security, fire safety, or housekeeping, documented in unit records.

[1] Razors shall be controlled by special housing unit staff.  Only disposable razors will be used.

CHAPTER 10
RECORDS AND FORMS

1. <u>RECORDS.</u>

a.  A permanent log will be maintained in the segregation unit.
All admissions will be recorded indicating the inmate's name,
register number, housing location, date admitted, reasons for
admission, tentative release date, special medical or psychiatric
problems or needs, and the authorizing official.  All releases
from the unit will be similarly recorded.  All persons visiting
the unit will sign a separate log, giving time and date of visit.
Unusual activity or behavior of individual inmates will be
recorded in the log, with a follow-up memorandum sent through the
Warden to the inmate's file.  This will include any misbehavior
which should be recorded and reported to the Discipline Hearing
Officer/Segregation Review Official.

b.  A Special Housing Unit Record (BP-292(52)) will also be
maintained in accordance with the following instructions and sent
to the inmate's central file.

(1) The key at the bottom of the form is self-explanatory.

(2) The basic information at the top of the form, with the
exception of the date and time of release, will be completed by
the Officer in Charge/Unit Officer at time of admittance.  The
Medical Department is to be notified as soon as practicable when
the inmate says that he is presently on medication.

(3) The form providers space for seven (7) days.  The date
column will be recorded daily, the shift line will be completed
commencing so as to coincide with the date and time the inmate is
admitted as reflected at the top of the form.

(4) The Officer in Charge/Unit Officer will sign the form in
the space provided for that particular shift.  Initials of the
officer are not acceptable.

(5) The Physician's Assistant will indicate, by signature in
the proper space, each time the inmate is seen by the Physician
Assistant. At a minimum, the record sheet must be signed at least
once each day by the Physician Assistant.

(6) The form is designed for a seven (7) day period. If
confinement to segregation continues beyond a seven (7) day
period, a new form will be prepared and the completed from
forwarded to the inmate's central file.  Date and time of release
will be recorded on the final form.

(7) Additional comments may be noted on the reverse of the form and in each case must be dated and include the signature and title of the person making the comment.

2. <u>FORMS.</u>  The forms listed in this section may be ordered through regular forms ordering procedures.  Staff are to reproduce these forms locally until the initial order is received.

    a.   Incident Report BP-288,

    b.   Inmate Rights at Discipline Hearing BP-293,

    c.   Notice of Discipline Hearing Before the Discipline Hearing Officer (DHO) BP-294,

    d.   Duties of Staff Representative BP-306,

    e.   Waiver of Appearance BP-307,

    f.   Discipline Hearing Officer (DHO) Report BP-304,

    g.   Administrative Detention Order BP-308,

    h.   Special Housing Unit Record BP-292,

    i.   Special Housing Review BP-295,

    j.   Temporary Placement in Disciplinary Segregation Order BP-321.

P5270.07
12/29/1987
Chapter 10, Page 3

**Incident Report**
**BP-288(52)**
**JANUARY 1988**
BP-S288(52)
MAY 94

P5270.07
12/29/1987
Chapter 10, Page 4

## PART III - INVESTIGATION

BP-S293   "Inmate Rights At Discipline Hearing"
Available on BOPDOCS

BP-S294    "Noticed of Discipline Hearing Before the Discipline
           Hearing Officer (DHO)
Available on BOPDOCS

BP-S306   "Duties of Staff Representatives"
Available on BOPDOCS

P5270.07
12/29/1987
Chapter 10, Page 8

### Waiver of Appearance
### BP-307(52)
JANUARY 1988

I _____ have been advised of my right to appear before
     Name/Register No
the _____ on _____ I do not wish to
     UDC, DHO, SRO               Date

appear, and I hereby waive that right.

_____
            Inmate Signature

_____
            Register Number

Witness: _____
        Staff Member Printed Name Signature

_____
        Date

I saw inmate _____ at _____ at
     Inmate Name/Register No.         Time/Date
_____ and advised the inmate of the right to appear
Specific Location, eg. Cell No.
before the _____ on _____ . The inmate declined
      UDC, DHO, SRO         Date
to appear at the hearing, but refused to sign a Waiver of Appearance.

_____
       Staff Member Printed Name/Signature

_____
     Second Staff Witness Printed Name/Signature

BP-307(52)
JANUARY 1988

P5270.07
12/29/1987
Chapter 10, Page 9

BP-S304   "Discipline Hearing Officer (DHO) Report"
Available on BOPDOCS

P5270.07
12/29/1987
Chapter 10, Page 10

BP-S308   "Administrative Detention Order"
Available on BOPDOCS

P5270.07
12/29/1987
Chapter 10, Page 11

BP-S292   "Special Housing Unit Record"
Available on BOPDOCS

BP-S295    "Special Housing Review"
Available on BOPDOCS

P5270.07
12/29/1987
Chapter 10, Page 13

BP-S321   "Temporary Placement in Disciplinary Segregation Order"
Available on BOPDOCS

## INMATE DISCIPLINE (SPECIAL MANAGEMENT INMATES)

STANDARDS          REFERENCE IN PROGRAM STATEMENT

| CAC* | CHAPTER | PAGE | SECTION | COMMENTS |
|------|---------|------|---------|----------|
| 2-4214 | ...9.......1-11-.......- | | | |
| 2-4215 | ...9.........6.........a | | | |
| 2-4215 | 9 | 8 | c(1) | |
| | 9 | 9 | c(3) | |
| | 9 | 10 | b | |
| 2-4216 | ...9.........1.........1a | | | |
| 2-4218 | ...9.........8.........c | | | |
| 2-4219 | ...9.........8.........c | | | |
| 2-4220 | ...9........10.........2a | | | |
| | 9 | 10 | b | |
| 2-4221 | ...9.........3.........c(3) | | | |
| | 9 | 4 | c(5) | |
| | 9 | 5 | c(9) | |
| 2-4222 | ...9.........3.........b | | | |
| 2-4223 | ...9.........4.........c(4) | | | |
| 2-4224 | ...9.........4.........c(5) | | | |
| 2-4225 | ...9.........3.........c(3) | | | |
| | 9 | 4 | c(5) | |
| 2-4226 | ...9.........5.........c(10) | | | |
| | 9 | 9 | d | |
| 2-4227 | ...9.........5.........c(10) | | | |
| | 9 | 9 | d | |
| 2-4228 | ...9.........5.........c(10) | | | |
| 2-4229 | ...9.........9.........d | | | |
| 2-4230 | ...9.........5.........c(8) | | | |
| | 9 | 9 | d | |
| 2-4231 | ...9.........5.........c(8) | | | |
| | 9 | 9 | d | |
| 2-4232 | ...9.........4.........c(6) | | | |
| | 9 | 9 | d | |
| 2-4233 | ...9.........9.........d | | | |
| 2-4234 | ...10........1.........1a | | | |
| 2-4235 | ...9.........5.........c(9) | | | |
| 2-4236 | ............................... | | | PS does not address |
| 2-4237 | ...9.........2.........c | | | |
| | 9 | 8 | c | |

*CAC - Commission on Accreditation for Corrections Standards for
Adult          Correctional Institutions (2nd Edition)

P5270.07
12/29/1987
Chapter 11, Page 2

## INMATE DISCIPLINE (INMATE RULES AND DISCIPLINE)

| STANDARDS | REFERENCE IN PROGRAM STATEMENT | | | COMMENTS |
|---|---|---|---|---|
| CAC* | CHAPTER | PAGE | SECTION | |
| 2-4345 | ...4........1-20.......- | | | |
| 2-4346 | ...2........1.........2 | | | |
| 2-4347 | ...7........1.........1b.......... | | | DHO certification test is partially responsive to this standard |
| 2-4348 | ...Chapters 5-8 ....... | | | |
| 2-4349 | ...6........1-4........- | | | |
| 2-4350 | ...5........1.........1a | | | |
| 2-4351 | ...5........1.........1a | | | |
| 2-4352 | ...5........2.........1b | | | |
| 2-4353 | ...9........8.........c | | | |
| | 9 | 6 | 1a | |
| 2-4354 | ...4........3......Sanction D..... | | | Sanction requirements different |
| | 9 | 2 | c | |
| 2-4355 | ...5........2.........b(1) | | | |
| 2-4356 | ...6........1.........c | | | |
| | 7 | 3 | d | |
| 2-4357 | ...7........1.........2a | | | |
| 2-4358 | ...7........4.........e | | | |
| | 6 | 4 | k | |
| 2-4359 | ...6........1.........1b | | | |
| | 7 | 1 | 2a | |
| 2-4360 | ...6........1.........1c | | | |
| | 7 | 3 | d | |
| 2-4361 | ...6........3.........g | | | |
| | 7 | 7 | g | |
| | 7 | 7 | h | |
| | 6 | 1 | 1 | |
| | 7 | 1 | 1b | |
| 2-4362 | ...7........2.........b | | | |
| | 7 | 2 | c | |
| 2-4363 | ...7........2.........c | | | |
| | 6 | 2 | d | |
| 2-4364 | ...6........2.........f | | | |
| | 7 | 4 | f | |
| 2-4365 | ...6........3.........g | | | |
| | 7 | 7 | h | |
| | 6 | 2 | f | |
| | 7 | 7 | g | |
| 2-4366 | 10 | 11 | Bottom | |
| | ...6........2.........f | | | |
| 2-4367 | 7 | 8 | 3 | |
| | ...6........4.........j | | | |
| 2-4368 | 7 | 7 | i | |
| | ...Chapter 8 ..........- | | | |

*CAC - Commission on Accreditation for Corrections Standards for Adult Correctional Institutions (2nd Edition)