RECEIVED

JUL 3 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


ANDRE SYLVESTER WATTS$^{(c)}$          :

        Petitioner,          :

v                                           Civil Action No. 06-0777(RJL)

                      :

ALBERTO GONZALES
UNITED STATES ATTORNEY GENERAL,        :

        Respondent.          :


## PETITIONER OPPOSITION TO RESPONDENT RESPONSE TO PETITIONER REQUEST FOR ISSUANCE OF A WRIT OF MANDAMUS

Comes Now Andre Sylvester Watts$^{(c)}$, sui juris, a secured party creditor over the petitioner, asserts numerous violations of his liberty interest vested in policies, regulation, statutes of the respondent that's imputed to him by delegate (Warden O'Brien) acts and omissions under Principle/Agent doctrine.

Respondent response of June 29, 2007, thus each violation stemms from a policie, regulation, statute that's promulgated and an uncompromising set of duties of the respondent and his delegate.

Therefore, the respondent response that the petitioner prison condition

claims are unavailing requiring dismissal of the claims are without
merits and mandamus is proper in this instance. Moreover, respondent
seeks to proffer dismissal of the action for: (1) Lack of jurisdiction
for allege failure to exhaust administrative remedies, (2) improper
venue because of petitiner location in Virginia and (3) petitiner failed
to state a claim, and for those reasons to are lacking  merits for dism-
issal.


## COUNTERSTATEMENTS TO RESPONDENT FACTS
## AND PRIOR PROCEEDINGS


Petitioner has not been convicted on three separate occassions for
robbery, assaulting, resisting or interfering with a police officer and
theft. Such misquotes were deliberate by respondent and an attempt to
elict the support of the district court to dismiss the action because
of respondent lack of merits to proffer dismissal inter alia.

However, petitioner has noted his medical conditions (arthritis) at
FCI Gilmer and  was prescribed medicines and was also ordered by the
doctor not to engage in exercises and heavy lifting of over 10 ibs. See
exhibit 1. The exhibits are admissible  under FRE, Rule 406 to demonstr-
ate a routine and practice of the respondent and its delegate derelic-
tions of violations of their duties owned to petitioner promulgated by
policies, regulations, statutes hereof. Nevertheless, petitioner release
projected date is December 7, 2007 and that is no defense for the respo-
dent and his delegate in not fulfilling their duty of medical care owed
to petitioner. In fact, August 1, 2006 motion of amendment by petitioner

was sought to release petitioner to obtain medical care, 18 U.S.C. § 3622(a) and the repondent avoids referecing that in their response. Had the petitioner been release? its likely that petitioner would have been recieving quality medical care without any financial burden to the respondent or his delegate (hereinafter Warden O'Brien).

The respondent mentions the quality of programming at USP Lee. There is no vocational programs being taught that offers a apprentice after completion, therefore its an insult to mention the "quality" of programming. It is their duty to provide vocational programs to attempt to reform and/or rehabilitate every prisoner that comes within the confines of the Bureau of Prisons. Omission from that task is inconsistent with the promulgated statutes of the respondent and that which followed that binds the respondent and delegate.

It was not April 27, 2006 that petitoner initiated his issuance for a writ of mandamus, instead it was March 20, 2006 that petitioner complained of said prison conditions to respondent and delegate at USP Lee.

It was not August 21, 2006 that petitioner filed a amendment to the mandamus instead was August 16, 2006 which petitioner included new claims and for relief via. Temporary Restraining Order/Preliminary Injunction enjoining violation by respondent and his delegate by allowing an inhumane habitat to exist within USP Lee at the Special Housing Unit as previously described in the original and folllowing pleadings

It is not only the delegate that has ignored the status of petitioner when making transfer determination; inasmuch, no transfer shall occure unless by approval of the respondent even though authority is delegate to do so by delegate hereof. The fact of the matter is the respondent has never been consulted anyone in behalf of petitioner on either occ-

(3)

assion relating to transfer as it is statutory mandated. See exhibits
4. In those exhibits, nothing indicates that respondent was contacted
and gave approval. Hence, item 9 speaks to the fact that petitioner obje-
cted to transfer. See also exhibits 5. To corroborate the preceding exhib-
its the petitioner objected in a grievance of transfer from FCI Gilmer
to USP Lee. To no avail. But a clear proof against his delegate failure
to adhere to the policies, regulations, and statutes that govern transfers.

If the respondent would monitor his delegate and discpline him accord-
ingly. It would be no need for petitioner to suffer the deprivation of
his liberties vested in the policies, regulations and statutes.

For example, respondent delegate allowed his subordinates at USP Lee
use false information to impede petitioner from  proffering a transfer
to a lesser security institution because of petitioner zeal to exercise
his first  amendment right. See exhibit 6. In those exhibits are proof
that the  intent was to impede the transfer because the order of Superior
Court expunging a Bail Reform Act offense was proof that it was someone
else and not petitioner. But the delegate subordinates: Case Manager
Ms. Willis and Unit Manager Rodney Myers used it and titled it escape,
when processing the transfer request, knowing that it would be an aggrava-
ting factor that would likely cause the transfer to be denied, just like
it did! Their motives were retaliation for petitioner exercising his first
amendment against them both frequently. That is why it is vital that resp-
ondent be compelled to re-enforce compliance of his delegate, whenever
there is evidence proffessional misconduct or violation of an liberty inter-
est of a  prisoner within the confines of the Bureau of Prisoner, like
what has occured thus far to petitioner; now, then and the future.

(4)

Thus, it is unsettled whether March 23, 2007 was the actual date petitioner filed his Judicial Notice motion. However, it is a fact that USP Lee have allowed inmates to roam the institution spreading pathogenic germs. See exhibits 2, wherein USP Lee had a outbreak of scabbies and refuse to quatantine the institution as regulatory promulgated until it was officially contained. Therefore, the conditions of said  inmates noted in the original pleadings in comparing the dereliction during the scabbies outbreak, should be sufficient proof how USP Lee exposed petitioner to a  health hazarded atmosphere.

Additionally, it is a undisputed fact that USP Lee mailroom and/or security staff or both, then and now tampered and obstruct petitioner legal mail. See exhibit 3. The order of the exhibits shows how the legal mail was returned to the Georgia U.S. District Court assumingly as if petitioner was not present in the institution but that was contrary. When petitioner learned of the obstruction he contacted the U.S. Postal Inspector. To no avail for redress. Subsequent, petitioner habeas corpus to Georgia U.S. District Court was dismissed simpy because the cohorts of respondent delegate at that time obstructed the legal pleading, "Magistrate report and reccomendation relating to the habeas corpus where petitioner complained that his conditions at USP Atlanta holdover was inhumane, "(1) dirty clothes, (2) dirty linen, (3) three or four inmates bunking in a two man cell, sleeping on the floor with urine splashing on the other cell mates, (4) unreasonable, disadvantage infliction of assaults by inmates on inmates, and (6) inmate handling food without hair nets and rubber gloves."

The respondent has allowed his delegates and his subordinates take revenge against the petitioner with no threat of repercussion. That proof

(5)

against the respondent and his delegate for the sole reason why the "Mandamus" is essential. Without it the respondent will be lincensing his delegate and subordinates to disregard consequences that are promulgated by P.S. 3420.09 et seq.

## POINTS AND AUTHORITIES OF LAW IN SUPPORT

The respondent understanding of when and how a writ of mandamus will be issued is flawed grately. See 28 U.S.C. § 1361:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the petitioner

So the petitioner do not have to meet the test that the respondent is refering in order for the district court to grant a writ of mandamus.

In the instant case, the respondent and his delegates are not following their own policies, regulations and statutes and for that reason the district court has jurisdiction to compel compliance. See i.e. NAACP v Levi, (1976, DC Dist of Col) 418 F.Supp. 1109. In that holding Congress has explicitly given District Courts power to consider cases in nature of mandamus  against federal officials; when it is claimed that federal officials are acting contrary to law, abusing their dis- cretion in acting outside limits of fair permissible discretion, and when official conduct extends beyond any rational exercise of discretion, even though it is within letter of authority granted, mandamus affords appropiate judicial relief.

As the petitioner demonstrated in his original application for mandamus

(6)

that the respondent was responsible for discpline his delegate. See P.S. 3420.09 et seq; particularly when he did not follow none of the statutes. For example, the warden could ordered or reccomended that the petitioner be temporary release to get medical treatment, wherein none of the expenses will have been attribute to the dieing budget of the Bureau of Prison. See 18 U.S.C. § 3622 et seq. The decision was disregarded by the delegate. Another instance. The delegate was suppose to discpline his subordinates for abusing their discretion by withdrawing favorable information in petitioner transfer order, [1] although inconsistent with the statutory procedure; lack of repercussions they used false information that was totally responsible for the transfer being denied, namely the allege escapade that was verified as false by the Superior Court order expunging the Bail Reform Act. Moreover, the respondent and delegate is responsible for hiring and monitoring medical staff to ensure that they are qualified to perform to the level of quilatiy medical care. 18 U.S.C. § 4042. See exhibits. 7. On May 27, 2006 petitioner had food strike and refused to eat 11 meals; May 28, 2006 it was reported that petitioner on food strike refuse to eat his 18th meal; June 2, 2006, it was reported that petitioner on food strike refused to eat his 10th meal of that month; June 14, 2006 it was reported that petitioner was on food strike and refused to eat the 14th meal. Under 28 CFR 549.65, the medical staff of the respondent of the respondent and delegate did not perform their duty owed to petitioner. Their regulation quotes as follows:

> When, as a result of inadequate intake or abnormal output, a physician determines that the inmates life or health will be threatened if treatment is not initiated immediately, the physician shall give consideration to forced medical treatment of the inmate.

---

1. The petitioner completed the CODE program. See attached. That would have more than likely contribute to obtaining said transfer.

when the respondent or his delegate did not discpline their subordinates for not force feeding the petitioner after nearly threatening his own life after food striking those many days indicates that they omitted their duty of care owed to the petitioner. This applies equally the same when the petitoner is not provided with vocational training and following completion, earn an apprentice. See U.S.C. § 4001(a)(2); Moreover, when the transfer oc-cured, 18 U.S.C. § 4082 thus incorporate exhibit 4, item 9. The respondent was not notified  and the petitioner appeal to his grievance challenging transfer was denied. But the statute governing transfer was not complied with thereby clear proof again that the respondent and his delegate have not followed their own laws and abuses their discretion in handling transf-ers.

The respondent and the delegate tolerating a inhumane habitat, wherein inmates as well petitioner, although petitioner is not in Special Housing Unit at this time. Nonetheless, having a inmate have to wait to have his toilet flushed, giving no consideration to the fact that biological demands cannot be calculated and there are sometimes 2 or 3 inmates in the cell at USP Lee Special Housing Unit and using the toilet without being flushed following each others use is the most horrible thing in the world and for the respondent to allege a security risk is an excuse is not acceptable to the moral nature of any human being. This type of treatment is simply ano-ther instance of abuse of discretion by respondent and his delegate.

Moreover, obstructing and tampering of an inmates, as well of petitioner legal mail shows another instance of the respondent and the delegate om-ission of his duty owed to petitioner, 18 U.S.C. § 4042. See exhibit 3.

In those exhibits is clear proof once more against the respondent and the delegate in not securing the petitioner right to have his mail handled without obstruction and tampered with; particularly when its legal. So when the writ of habeas corpus was sent back to the Georgia District Court like petitioner wasn't in USP Lee, that violated the regulation. 28 CFR 540.19. In fact, the District of Columbia Circuit Court held in Lucas v Hodge, 730 F.2d 1493 (D.C. 1984) that failure of an agency to follow their own regulation can develope into a violation of the due process clause. When the petitioner § 2241 petition was denied as a result of the petition being sent back arbitrarily; denied petitioner right to due process of law and redress. And for this reason the district court should be eagerly willing to issue the writ of mandamus to compel the respondent and his delegate to follow their own regulation and not interfer with petitioner legal mail in the least manner.

Furthermore, the mandamus will curtail any additional racism embedded in the delegate subordinates that lurk USP Lee inmates as well petitioner as it has on separate occassions at USP Lee and FCI Gilmer.

The petitioner relies on the facts, exhibits and points and authorities of law in support, namely NAACP v Levi, supra, for issuance of the writ of mandamus on his conditions claims because the respondent and his delegate has done nothing but abuse its discretion and not securing the petitioner liberty interest vested in the named policies, regulations and statutes that govern each condition claim.

Next, the respondent contentions that petitioner has not proffer for issuance of a writ of mandamus given petitioner has not exhausted his administrative remedies. See i.e., Bernard v District of Columbia, 223 F. Supp.2d 211 (D.D.C. 2002, even under the Prisoner Litigation Reform Act of 1995 a prisoner does not have to exhaust administrative remedies if

that prisoner is not seeking money damages.  In this cause, the petitioner
is seeking equity relief that's within this court inherent power, there-
fore the respondent request to the district court to dismiss for lack of
jurisdiction and fail to exhaust administrative remedies should be consid-
ered unavailing. Moreover, for the sake of argument, The Supreme Court held
in <u>Jones v Bock</u>, (2007) 166 L.ED.2d 798 that so long the prisoner has ex-
hausted  administrative remedies on one person and its part of the same
claims, then exhaustion in  relation to the others are not necessary. See
exhibit 8. In that exhibit the petitioner filed a tort claim against the
medical staff for denying petitioner medical treatment and proper treat-
ment during the escapade while on food strike. 28 U.S.C. §  2672 et seq;
hence exhaustion had been satisfied, although not necessary for issuance
of writ of mandamus.

In furtherance, the respondent argues that venue is improper because
the petitioner is in Virginia. See 28 U.S.C. § 1391 et seq. The court held
in <u>Harper v Williford</u>, 96 F.3d 1526 (D.C. Cir. 1996) that its the district
court discretion to determine when venue is proper.  When the court review
the circumstances in this cause. It should on be fair to conclude that
venue is proper. Particularly, when the petitioner custodian is the resp-
ondent and that can be proven by the judgment and commitment order, when
its says "admit defendant to the custody of the Attorney General" who
delegates authority to his delegate to house the petitioner until ordered
to do otherwise. See exhibit 9. Given its true and now proven that re-
spondent is petitioner actual custodian, it would be in the interest of
justice; since neither of the witnesses from Virginia will have to appear
in court at the United States District Court for the District of Columbia.

(10)

Instead the parties involve in Virginia (USP Lee ) can forward their
responses, if necessary to their respondent legal representative and their
presence is not needed in order for the court to determine whether the writ
of mandamus should be granted or denied.

Finally, the respondent has another misunderstanding when it comes to
the operation of a writ of mandamus. The petitioner seeking a writ of man-
damus does not have to meet the standards set out for a claim in civil
suit rather than a civil action. 42 U.S.C. § 1997 and 28 U.S.C. § 1915 et
seq. Whereby in most cases, a plaintiff would have to state a claim to sur-
vive dismissal  or summary judgment. All is required for issuance of a
writ of mandamus is that the district court determines that they have jur-
isdiction over the petition and he/she make a prima facie showing, like in
this cause. id 1109. The respondent and the delegate owed petitioner a duty
of medical care and the security of ultilizing the liberties that are vest-
ed in said policies, regulations and statutes that each governs in instance
that petitioner had claimed violated his conditions. And the respondent
and his delegate omissions, acts, dereliction and abuse should urge the
court to issue the writ of mandamus. Moreover, to issue the writ of man-
damus serves the public interest because petitioner as well other inmates
who are later released have skills via. certification that will allow them
an equal opportunity in the competitive labor force to get a job in which
will definitely contribute to decreasing the crime rate and make society a
atmospher of safety for all citizens. Instead of letting prison officials
title their agenda's with programs that are not operable. In USP Lee
inmates sit in a cage at facilities and play cards for stamps and shoot
craps for stamps, watch video's all day, while staff sit on their duffs

(11)

all day and collect a husband wage. Their actions doesn't do anything but orchestrate inmates to return to society worst than they were before coming to prison. See <u>Skipper v South Carolina</u>, 476 U.S. 1 (1986). In that case a prisoner was    subject to the death penalty and his post conviction behaviors was recognize as a mitigating factor. See also <u>Marshall v United States</u>, 414 U.S. 417 (1974), a defendant sought residential drug program because of long history of drug use, rather than incarceration. Because the defendant had more than two felony conviction. The Narcotic Rehabilitation Act could not be extend to the defendant.

The scenario of those holdings were that it has always been the intent to rehabilitate a prisoner, so when the respondent and his delegate allow their subordinates to falsify the operation of non-existing programs, that undermines the intent of rehabilitation and jeopardizes the public interest when a prisoner is returned to society without a certified skill.


## CONCLUSION


Wherefore, the petitioner submits that the respondent or his delegate cannot suffer prejudice in issuing the writ of mandamus whereby compel them to adhere to the policies, regulations and statutes, since they have had ample time to get in conformity and have done nothing but abuse their authority, decieve and deprive petitioner and other inmates of medical care, redress in grievances and an humane habitat. <u>Connor v Coleman</u>, 440 U.S 612 (1979).

Date: July 25    2007

Without Prejudice
UCC 1 - 207

(c)

## SWORN AFFIDAVIT OF MAILING

I declare under the penalty of perjury that declarant deposited mail in the USP Lee mailroom staff custody consisting of petitioner opposition of 12 pages and 9 sectioned itemized exhibits in support of the opposition thereof against the respondent response to petitioner request for issuance of a writ of mandamus:

On _25ᵗʰ_ day of _July_ 2007.

Without Prejudice
UCC 1 - 207

_Linda Sylvester Watts_ (c)

CERTIFICATE OF SERVICE

I hereby certify that Jonathan C. Brumer, Bar No. # 463328, Special Assistant United States Attorney, 555 4th Street, N.W., Rm E 4815, Washington, D.C. 20530 recieved by postage prepaid petitioner opposition to respondent response:

On _____25th_____ day of _____July_____ 2007

Without Prejudice
UCC 1 - 207

_Andre Sylvester Watt_ (c)