# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ANDRE SYLVESTER WATTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-0777 (RJL) |
| | ) | |
| ALBERTO GONZALES, | ) | |
| UNITED STATES ATTORNEY GENERAL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

## INTRODUCTION

Defendant, Alberto Gonzales, United States Attorney General, by and through undersigned counsel, respectfully files this Reply in support of his Motion to Dismiss. In this action Plaintiff, a Federal prisoner who is presently incarcerated at the United States Penitentiary-Lee County ("USP Lee") in Jonesville, Virginia, complains about numerous aspects of the conditions of his life in prison and argues that, in light of these conditions, he is entitled to the extraordinary remedy of a Writ of Mandamus. During the course of this litigation, Plaintiff's litany of stated grievances has continuously changed and grown.

In his original Petition for a Writ of Mandamus (filed on April 27, 2006), an amended Petition for a Writ of Mandamus which he filed on August 21, 2006, and a Judicial Notice he filed on March 23, 2007, Plaintiff complained about: (1) the fact that he has not received his preferred medication to treat his arthritis; (2) the quality of the vocational programs he has been afforded at the facility; (3) his prison's policies and actions regarding inmate's access to toilets and showers in a special housing unit ("SHU"), hunger strikes by prisoners, inmate transfers, the

disciplining of staff, and the supervision of prisoners with "communicable diseases"; (4) prison staff's alleged interference with his legal mail; and (5) their alleged failure to regularly take urine and blood specimens and check his blood pressure. See Docket Entry No. 1 ("Pl.'s Original Petition") *generally*; Docket Entry No. 8 ("Pl.'s Amended Petition") *generally*; Docket Entry No. 11 ("Pl.'s Mar. 23, 2007 Judicial Notice") *generally*; see also Docket Entry Nos. 18 and 19, Memorandum in Response to this Court's May 4, 2007 Order to Show Cause Why a Writ of Mandamus Should Not Issue, and in Support of Defendant's Motion to Dismiss ("Def.'s MTD/Response") at 1-2, 3-5 & n. 3, 12-28 (summarizing, in greater detail than is here provided, Plaintiff's allegations in his Original and Amended Petitions and March 2007 Judicial Notice).

On June 29, 2007, the Defendant filed a brief in which he responded to this Court's April 25, 2007 Order requiring that Defendant show cause why a Writ of Mandamus should not issue in this case, and moved, pursuant to Fed. R. Civ. P. 12(b)(1), (b)(2), (b)(3), and (b)(6), to dismiss this action. See Def.'s MTD/Response *generally*.

Defendant noted in his brief that a Writ of Mandamus is a drastic remedy, which is only to be granted by a Court, at its discretion, in extraordinary circumstances when a petitioner satisfies a three part test: (1) the plaintiff must have a clear right to relief; (2) the defendant must have a clear duty to act; and (3) there must be no other adequate remedy available to plaintiff. See id. at 5-7.

As part of a larger effort to demonstrate that Plaintiff had failed to establish that he has a clear right to any of the relief he seeks for mandamus purposes and had failed to state a claim upon which relief can be granted, Defendant argued and set forth numerous authorities concerning the following propositions: (1) that Plaintiff has neither a statutory nor a Constitutional right to his preferred medication for arthritis or to weekly urine samples and blood

2

pressure tests, see id. at 12-17; (2) that Plaintiff has no Constitutional right to the special vocational training he seeks, see id. at 17-18; (3) that Plaintiff's Eighth Amendment claims concerning his prison's policies and actions regarding inmate's access to toilets and showers in the SHU and hunger strikes by prisoners were moot because he was no longer in the SHU and that, in any event, his claims were untrue and his treatment while in the SHU was reasonable and consistent with Bureau of Prisons ("BOP") policy and certainly fell well short of the sort of "extreme deprivation" required to make out an Eighth Amendment violation, see id. at 18-21; (4) that Plaintiff has no statutory or constitutional right to a prison transfer and that, in any event, USP Lee handled his transfer requests in a lawful and reasonable manner, see id. at 21-23; and (5) that Plaintiff's vague claims that prison staff are improperly supervised, behave unprofessionally, retaliated against him, interfered with his legal mail, and allowed inmates with "communicable" diseases to roam around the prison neither stated a claim upon which relief could be granted nor supported the issuance of a writ of mandamus, see id. at 23-27.

Defendant also noted that Plaintiff had failed to demonstrate that Defendant has a clear duty to act in the manner Plaintiff demands, particularly in view of the broad authority which the Attorney General, BOP, and USP Lee officials have been given under federal law and regulation to administer the federal prison system, and the deference which courts generally accord to prison officials. See id. at 27-28. Defendant explained that furthermore a writ of mandamus should not issue because there are alternative avenues of relief available to Plaintiff which he has not yet pursued, namely the administrative appeals process which he has failed to exhaust with respect to any of his claims and a civil action in the proper forum concerning his claims once he has exhausted them. See id. at 28-29.

In his brief, Defendant also respectfully submitted that this Court should also dismiss this

action for three reasons.  First, because Plaintiff has failed to comply with the administrative

exhaustion requirements which are set forth in the BOP's duly promulgated regulations.  See

Def.'s MTD/Response at 7-10.  Second, because venue is improper in this action as Plaintiff is

housed in a Virginia prison, the alleged events occurred in that State, and Plaintiff has not

provided sufficient justification for having the action proceed in this District.  Id. at 10-12.

Third, because Plaintiff has failed to state a claim upon which relief can be granted.  Id. at 12-28.

On July 31, 2007, Plaintiff filed a brief in Opposition to Defendant's Motion to Dismiss

and in support of his Original and Amended Petition for a Writ of Mandamus.  See Docket Entry

No. 22 ("Pl.'s Opp." or "Opposition").  Plaintiff filed a large number of exhibits with this

pleading.  See Docket Entry No. 22-2 ("Pl.'s Exhibits").

In his Opposition, Plaintiff again complains that the vocational training programs which

are offered at USP Lee are inadequate.  See Pl.'s Opp. at 3.  He expands upon his claim that in

processing his transfer request, prison officials failed to consider favorable information and relied

on false information, with the result that his request was denied, all in retaliation for his exercise

of first amendment rights.[1]  He reiterates his claim that USP Lee employees have tampered and

obstructed his legal mail.  See Pl.'s Opp. at 5, 8-9.  He once again bemoans the fact that USP

---

[1] Specifically, Plaintiff alleges that two prison officials at USP Lee "use[d] false information to impede [him] from proffering a transfer to a lesser security institution" in "retaliation" for his "exercising his first amendment" rights "against them frequently."  See Pl.'s Opp. at 4. Specifically, Plaintiff claims that prison officials intentionally failed to note, in filling out paperwork related to one of his transfer requests, that, in February 2000, a D.C. Superior Court expunged the records of his 1997 arrest for a violation of the Bail Reform Act, with the result that his transfer request was denied.  See Pl.'s Opp. at 4, 7.  He also claims, without substantiation, that he participated in the CODE program, which "would have more than likely contribute[d] to obtaining said transfer," but claims also without any evidence that prison staff omitted any mention of this "favorable information" from his "transfer order."  Id. at 7, n. 1.  These claims appeared in more embryonic form in Plaintiff's Amended Petition.  See Pl.'s Amended Petition at 4.

4

Lee's warden, Terry O'Brien, has adopted a policy of not allowing inmates in the prison's special

housing unit to flush their own toilets but instead requires that the various patrol officers of the

SHU to do so during each officer's cell tour.  See Pl.'s Opp. at 8.[2]  Although Defendant makes

some additional points in this brief concerning Plaintiff's transfer allegation, he otherwise rests

on his earlier responses to Plaintiff's previously stated allegations.

    Plaintiff's Opposition is for the most part a rambling, repetitious, disjointed rehash of

Plaintiff's earlier filings.  However, Plaintiff's Opposition contains two new factual allegations

which are notable.  First, Plaintiff asserts, for the first time in his Opposition, without

substantiation, that "USP Lee had a[n] outbreak of scabies and refuse[d] to qua[r]antine the

institution . . . until it was officially contained."  See Pl.'s Opp. at 5.  Second, Plaintiff complains,

for the first time in his Opposition, that prison officials were "not disciplined for not force

feeding [him]" after he had not eaten for several days while on a food strike.  See Pl.'s Opp. at

7-8.  As is explained in this brief, it is improper for Plaintiff to add these new allegations at this

late date, now that Defendant has filed a Motion to Dismiss Plaintiff's action and response to the

Court's Show Cause order.

    Plaintiff's Opposition also contains two new legal arguments which are addressed in

some detail in this brief.  In response to Defendant's exhaustion arguments, he argues that the

case of Bernard v. District of Columbia, 223 F.Supp. 2d 211 (D.D.C. 2002) establishes that "a

prisoner does not have to exhaust administrative remedies if the prisoner is not seeking money

---

    [2]  This portion of Plaintiff's Opposition contains an admission that is worth noting in
passing.  Plaintiff confirms that he "is not in the Special Housing Unit at this time," see Pl.'s
Opp. at 8 (emphasis added), providing additional support for the factual predicate underlying
Defendant's argument that Plaintiff's SHU allegations are unavailing in part because they are
moot.  See Def.'s MTD/Response at 18-19.

damages."  See Pl.'s Opp. at 9-10.  Plaintiff also asserts that "[t]he Supreme Court held in Jones

v. Bock . . . that so long as the prisoner has exhausted administrative remedies on one person and

its part of the same claims, then exhaustion in relation to the others are not necessary."  See Pl.'s

Opp. at 10.  As is explained in this brief, Plaintiff has fundamentally mischaracterized both of

these decisions.  In fact, both decisions support rather than detract from Defendant's exhaustion

arguments.

On August 6, 2007, Plaintiff filed an Affidavit in which he made several new allegations:

(1) "that on July 30, 2007" while he was "in the mess hall" an employee at USP Lee "discussed

details of [his] institutional files openly in the presence of other inmates and admonish[ed] [him]

in [a] threatening demeanor not to file grievances against" another employee of USP Lee; (2) that

these two employees are "having an intimate or unusual personal relationship" and (3) that the

second of these employees has been guilty of "dereliction that's motivated by her pledge of the

complicity within USP Lee to undermine [his] release on parole."  See Docket Entry No. 23

("Pl.'s August 6, 2007 Affidavit") at 1-2.  As is explained in this brief, these allegations, like the

claims he has raised for the first time in his Opposition, are raised far late in this proceeding to be

properly before this Court.

For the reasons set forth below, this Court should reject each of Plaintiff's latest

arguments.

## **ARGUMENT**

I.    **It is Improper for Plaintiff to Assert Claims for the First Time in His Opposition
      and Subsequent Filings, Now that Defendant has Filed a Motion to Dismiss and
      Response to this Court's Show Cause Order and Plaintiff's Petitions, and this Court
      Should Not Consider these New Claims**

As mentioned, Plaintiff has attempted to raise new claims for the first time in his

Opposition and August 6, 2007 Affidavit, claims which he did not make in his Original or

Amended Petitions for a Writ of Mandamus or in his August 6, 2007 Judicial Notice, including

his assertions that: (1) "USP Lee had a[n] outbreak of scabies and refuse[d] to qua[r]antine the

institution . . . until it was officially contained."; (2) that prison officials were "not disciplined for

not force feeding [him]" after he had not eaten for several days while on a food strike; and

(3) "on July 30, 2007" while he was "in the mess hall" an employee at USP Lee "discussed

details of [his] institutional files openly in the presence of other inmates and admonish[ed] [him]

in [a] threatening demeanor not to file grievances against" another employee of USP Lee; (4) that

these two employees are "having an intimate or unusual personal relationship" and (5) that the

second of these employees has been guilty of "dereliction that's motivated by her pledge of the

complicity within USP Lee to undermine [his] release on parole." See Pl.'s Opp. at 5, 7-8; Pl.'s

August 6, 2007 Affidavit at 1-2.

        This is all improper.  It is well established that a "plaintiff cannot raise new claims for the

first time in an opposition brief."[3]  The Courts have also recognized that "[i]t is not proper to

raise new issues in a reply, because the party opponent is thereby denied an opportunity to

---

        [3] See Sharp v. Rosa Mexicano, 496 F. Supp. 2d 93, n. 3 (D.D.C. 2007) (also noting that
"plaintiff may not, through summary judgment briefs, raise . . . new claims . . . because plaintiff
did not raise them in his complaint and did not file an amended complaint" raising the claims);
see also College Sports Council v. Government Accountability Office, 421 F.Supp.2d 59, 71, n.
6 (D.D.C. 2006) ("the Court does not, and cannot, consider claims first raised in the plaintiff's
opposition"); Calvetti v. Antcliff, 346 F. Supp.2d 92, 107 (D.D.C. 2004) ("[i]t is clear that the
plaintiffs are now, through their pleadings, attempting to amend their complaint" to allege a new
claim, but that "[t]his tactic is clearly impermissible"); Arbitraje Casa de Cambio, S.A. de C.V.
v. U.S. Postal Serv., 297 F.Supp.2d 165, 170 (D.D.C. 2003) (observing that "'[i]t is axiomatic
that a complaint may not be amended by the briefs in opposition to a motion to dismiss'" and that
"[b]ecause there is no hint of these meeting and alleged contracts in the Amended Complaint, the
Court cannot consider these allegations in deciding the instant motion to dismiss") (quoting
Coleman v. Pension Benefit Guar. Corp., 94 F.Supp.2d 18, 24, n. 8 (D.D.C. 2000)).

respond."[4]  These rules have been found to apply with equal force where a party petitioner for a writ of mandamus attempts to raise a new argument after the non-moving party has filed a responsive pleading.  See, e.g., In re Asemani, 455 F.3d 296, 300 (D.C. Cir. 2006) (noting that an argument by a petitioner for a writ of mandamus was "waived because it was made for the first time in his reply brief.")

In this case, Plaintiff's Original and Amended Petition for a Writ of Mandamus were analogous, for purposes of the above mentioned case law, to an original and amended Complaint. Moreover, Plaintiff's Opposition in this case has characteristics of both an Opposition (inasmuch as it was intended to respond to Defendant's Motion to Dismiss), and a Reply (insofar as it was meant to support his Original and Amended Petition for a Writ of Mandamus.)  Thus, all of the aforementioned caselaw which establishes that a party may not assert new claims to either an Opposition or a Reply is applicable to Plaintiff's Opposition.  This caselaw also applies, for the same reasons, to Plaintiff's August 6, 2007 Affidavit and any of his subsequent filings.

Plaintiff's opportunity to raise new claims and allegations ended once Defendant filed his Motion to Dismiss and Response to this Court's Show Cause Order.  By failing to raise these claims earlier, Plaintiff waived them.  See, e.g., In re Asemani, 455 F.3d at 300.  Plaintiff's effort to use his Opposition and other subsequent filings as vehicles for putting new claims before this Court, and in effect amending his Original and Amended petitions for a Writ of Mandamus, is improper.  See Sharp, 496 F. Supp. 2d 93, n. 3; Calvetti, 346 F. Supp.2d at 107; Arbitraje Casa

---

[4]  See Judicial Watch of Florida, Inc. v. U.S. Dept. of Justice, 102 F.Supp.2d 6, 12 (D.D.C. 2000); see also Rollins Envtl. Servs. v. EPA, 937 F.2d 649, 653 n. 2 (D.C. Cir.1991) (noting that "[i]ssues may not be raised for the first time in a reply brief"); McBride v. Merrell Dow and Pharmaceuticals, Inc., 800 F.2d 1208, 1211 (D.C. Cir.1986) (observing that "[c]onsidering an argument advanced for the first time in a reply brief . . . is not only unfair . . . but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered").

_de Cambio, S.A. de C.V._, 297 F.Supp.2d. at 170; _Coleman_, 94 F.Supp.2d at 24, n. 8; _Judicial_

_Watch of Florida, Inc._, 102 F.Supp.2d at 12; _Rollins Envtl. Servs._, 937 F.2d at 653, n. 2;

_McBride_, 800 F.2d at 1211.  This Court should not consider these new claims in adjudicating the

instant motion to dismiss and pending petition for a Writ of Mandamus.  _See, e.g._, _College Sports_

_Council_, 421 F.Supp.2d at  71, n. 6; _Arbitraje Casa de Cambio, S.A. de C.V._, 297 F.Supp.2d. at

170.  Considering such arguments would not only be "unfair . . . but also entails the risk of an

improvident or ill-advised opinion on the legal issues tendered."  _See_ _McBride_, 800 F.2d at1211.


**II.     Plaintiff Was Legally Required to Exhaust Each of his Claims But Failed to Do So,**
**and His Latest Submissions Confirm Both of These Conclusions**

   **A.     In _Jones v. Bock_, A Case Plaintiff Cites, the Supreme Court Held that**
   **Exhaustion is Mandatory, and that Unexhausted Claims Must be Dismissed**

Plaintiff asserts that "[t]he Supreme Court held in _Jones v. Bock_ . . . that so long as the

prisoner has exhausted administrative remedies on one person and its part of the same claims,

then exhaustion in relation to the others are not necessary."  _See_ Pl.'s Opp. at 10.  In fact,

Plaintiff has fundamentally mischaracterized and misapplied this decision, which supports rather

than detracts from Defendant's exhaustion arguments.

A unanimous Supreme Court in _Jones v. Bock_ repeatedly reaffirmed that exhaustion of

claims is mandatory under the Prisoner Litigation Reform Act ("PLRA"), and that unexhausted

claims cannot be brought in court.  _See, e.g._, _Jones v. Bock_, 127 S. Ct. 910, 914 (2007) ("_Jones_")

(noting that "the PLRA mandates early judicial screening of prisoner complaints and requires

prisoners to exhaust prison grievance procedures before filing suit") (citing 42 U.S.C.

§ 1997e(a)); _id._ at 918-19 (declaring that "[t]here is no question that exhaustion is mandatory

under the PLRA and that unexhausted claims cannot be brought in court") (citing <u>Porter v.</u>

<u>Nussle</u>, 534 U.S. 516, 524 (2002)); <u>id</u>. at 923 (observing that "[a]ll agree that no unexhausted

claim may be considered"); <u>see also id</u>. at 914 (recognizing that in the PLRA, "Congress enacted

a variety of reforms designed to filter out the bad claims and facilitate consideration of the good"

and that "[k]ey among these was the requirement that inmates complaining about prison

conditions exhaust prison grievance remedies before initiating a lawsuit"); <u>id</u>. at 914-15

(explaining that "[r]equiring exhaustion allows prison officials an opportunity to resolve disputes

concerning the exercise of their responsibilities before being haled into court" which "has the

potential to reduce the number of inmate suits, and also to improve the quality of suits that are

filed by producing a useful administrative record.")

It is true that the Supreme Court in <u>Jones v. Bock</u> concluded that some lower courts had

applied the PLRA's exhaustion requirements in an overly aggressive manner, and that it issued

some clarifying guidance on how lower courts were to interpret and apply the PLRA's

exhaustion requirements in the future.  Specifically, the Supreme Court held that: (1) "failure to

exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially

plead or demonstrate exhaustion in their complaints," <u>see id</u>. at 921; (2) "exhaustion is not per se

inadequate simply because an individual later sued was not named in the grievances," <u>see id</u>. at

923; and (3) that where a complaint contains both exhausted and unexhausted claims, the district

court should proceed with the exhausted claims while dismissing the unexhausted claims, rather

than dismissing the complaint in its entirety, <u>see id</u>. at 923-26; <u>see also</u> <u>Okoro v. Hemingway</u>,

481 F.3d 873, (6th Cir. 2007) (observing that these are the three principle holdings of <u>Jones v.</u>

<u>Bock</u>).  As is explained in the next section, none of the limitations on, and refinements to, the

doctrine that prisoners must exhaust their claims under the PLRA set forth in <u>Jones v. Bock</u> in

any way excuse Plaintiff's failure to exhaust in this case.

None of the limitations on, and refinements to, the requirement that inmates exhaust administrative remedies under the PLRA before filing suit which the Supreme Court announced in Jones v. Bock save Plaintiff from the consequences of his failure to fully exhaust his various claims in this case. Defendant has not argued that this Court should apply the PLRA's exhaustion requirement in any of the ways the Jones court deemed improper. Specifically, Defendant has not faulted Plaintiff for failing to "specially plead exhaustion or demonstrate exhaustion in his complaint." See Jones, 127 S. Ct. at 921; Def.'s MTD/Response *generally*. Nor has Defendant argued that Plaintiff's failure to exhaust stemmed from his failure to name "an individual later sued" in his administrative appeals. See Jones, 127 S. Ct. at 923; Def.'s MTD/Response *generally*. Nor has Defendant argued that this Court should dismiss any properly exhausted claim Plaintiff has raised based on Plaintiff's failure to exhaust other unrelated claims. See Jones, 127 S. Ct. at 923-26; Def.'s MTD/Response *generally*.

As Defendant noted, the federal prison system utilizes an administrative remedy process which is nearly identical to that at issue in Booth v. Churner, 531 U.S. 731, 740-41& n. 6 (2001). Compare Booth, 532 U.S. at 734 with 28 C.F.R. § 542.10 *et seq*.; see also Def.'s MTD/Response at 8. Defendant explained that the stages in this administrative review process are as follows:

The BOP's regulations require inmates first to attempt resolution of their complaints informally by discussing the matter with a member of their Unit Team. See 28 C.F.R. § 542.13. If informal resolution is insufficient to resolve the matter, the inmate may file a formal complaint with the Warden within 20 days of the date on which the basis of the complaint occurred. 28 C.F.R. § 542.14. If the inmate is not satisfied with the Warden's response, he may appeal the response to the Regional Director within 20 days of the Warden's decision. 28 C.F.R. § 542.15. If the inmate is dissatisfied with the regional response, the prisoner may then file a national appeal with the Office of General Counsel in Washington, D.C., within 30 days of the date of the Regional Director's decision. See 28 C.F.R. § 542.15. Appeal to the Office of General Counsel is the final administrative appeal in the BOP.

See Def.'s MTD/Response at 8-9. Defendant proceeded to note that

[i]n the instant case, Plaintiff has failed to properly exhaust his administrative remedies with respect to his claims concerning: the medication prescribed for his arthritis, his access to training and educational programming, the flushing of toilets, housing of inmates who are on a hunger strike, the allegation that the warden has relied on the wrong statutory authority in denying prison transfers, the purported failure to properly discipline staff, the allegation that inmates with 'communicable diseases' have been allowed to roam throughout the prison, and the refusal to take urine and blood samples or to take his blood pressure weekly.

See, e.g., Def.'s MTD/Response at 9 (emphasis added) (citing Ex. 3, Declaration of James Schluter, ¶ 3-4). With regard to the "meager evidence" which Plaintiff had provided as of that date that he had satisfied part of the administrative appeals process with respect to a few of his claims, see Def.'s MTD/Response at 9-10,[5] Defendant explained that

_____

[5] Specifically, Defendant noted that Plaintiff had at that time filed with this Court a copy of a letter he sent to USP Lee's Chief Pharmacist concerning his arthritis treatment, a copy of an "inmate request to staff" he addressed to the Health Administrator concerning the same issue, and a response to this request. See Def.'s MTD/Response at 9 (citing the exhibits to Plaintiff's original Petition for the Issuance of a Writ of Mandamus). Defendant noted that Plaintiff had filed an affidavit that alleges that he corresponded with the warden and the "Medical Department" about the "unfit conditions in the holding cell at USP Lee" in the SHU, a copy of an "inmate request[] to staff" addressed to the "Medical Department" concerning the failure of USP Lee staff to take a blood test and urine specimen and the absence of a sink, shower, and toilet in the holding tank, a copy of an "inmate request[] to staff" addressed to the warden regarding the absence of a sink, shower, and toilet in the holding tank, and a copy of a "central office administrative remedy appeal" concerning the denial of a prison transfer request. See Def.'s

> Neither the Chief Pharmacist nor the Health Administrator are part of the levels of administrative remedy review (i.e., Warden, Regional Director, General Counsel) set forth in the BOP's administrative review regulations. Liberally constructed, Plaintiff's exhibits establish that he fulfilled the first step in the administrative appeals process with respect to his challenges concerning three issues: his arthritis treatment, conditions in the holding cell, and the failure to take a blood/urine specimen. See 28 C.F.R. § 542.13. However, there is no indication in the existing record that Plaintiff ever filed (1) a request with the Warden at USP Lee concerning any of his complaints other than the one about the absence of a sink, shower, and toilet in the holding tank, (2) an appeal with the Regional Director of the BOP concerning any of his allegations; or (3) a national appeal with the Office of General Counsel in Washington, D.C. concerning any of his complaints.

See Def.'s MTD/Response at 10.  Thus, in his opening brief, Defendant identified various discrete claims by Plaintiff which Plaintiff had failed to fully and properly exhaust, not because he failed to name the right defendants, but because he had not completed all of the required stages of the administrative appeals process with respect to each of those claims, and explained with respect to each claim which precise steps in the administrative review process Plaintiff had failed to take.  His arguments were consistent with the guidance provided in Jones v. Bock.

**B.**     **This Court has Confirmed that an Inmate Must Exhaust Before Bringing Suit, Even if He is Not Seeking Money Damages, and the Bernard Case Which Plaintiff Cites Did Not Suggest Otherwise**

Plaintiff asserts that  "a prisoner does not have to exhaust administrative remedies if the prisoner is not seeking money damages." See Pl.'s Opp. at 9-10.  In fact, in several decisions, including ones handed down in the wake of Jones v. Bock, this Court has confirmed that exhaustion of claims is mandatory under the PLRA before an inmate may proceed to court, even if he or she is seeking injunctive relief, rather than money damages.  See, e.g., Tereshchuk v.

_____

MTD/Response at 9-10 (citing the exhibits which accompanied Plaintiff's Motion to Amend his original Petition for a Writ of Mandamus).

Bureau of Prisons, 2007 W.L. 474179, *2 (D.D.C. 2007) (citing Jones v. Bock for the proposition that "if the allegations, taken as true, show that relief is barred for failure to exhaust, the case is subject to dismissal for failure to state a claim"); id. at *2 (noting that the plaintiff in that case "concedes that he did not exhaust his administrative remedies before filing his motion for injunctive relief" and rejecting plaintiff's argument that such a step would be futile because "a prisoner is required to exhaust regardless of the value of the relief offered through administrative avenues" even if he or she believes such a step would be futile); Tanner v. Federal Bureau of Prisons, 475 F. Supp. 2d 103, 104 (D.D.C. 2007) (noting that the inmate in that case had "asked the court," not for damages, but "to compel the Federal Bureau of Prisons to return the plaintiff to FCI Fairton and to allow him to complete his vocational training"); id. at 106-07 (concluding that "the case warrants dismissal pursuant to the PLRA because the plaintiff did not exhaust his available remedies").[6]  Indeed, Plaintiff himself has been put on notice, on at least one occasion, by a sister court that exhaustion is mandatory before a mandamus action may be brought, and that failure to exhaust under the PLRA is a basis for denying mandamus relief.  See, e.g., Watts v. O'Brien, 2006 W.L. 1525725, *1 (W.D. Va. 2006) (finding that "Watts is not entitled to mandamus relief" because "other adequate means of obtaining the relief Watts desires are available" inasmuch as "it is clear that Watts has other adequate means to attain the relief he

---

[6]  See also  Malik v. Dist. of Columbia, 2007 W.L. 2505748, *1 (D.D.C. 2007) (noting that the PLRA's "exhaustion requirement is mandatory and 'applies to all prisoners seeking redress for prison circumstances or occurrences'") (citing to Jones v. Bock, 127 S. Ct. at 918-919 and to Porter v. Nussle, 534 U.S. 516, 520 (2002)); id. at *1 (further noting that  "[e]xhaustion under the PLRA requires proper exhaustion, meaning that a prisoner must comply with procedural rules, including filing deadlines, as a precondition to filing a civil suit in federal court, regardless of the relief offered through the administrative process" and that "a prisoner may file a civil action concerning conditions of confinement under federal law only after he has exhausted the prison's administrative remedies") (internal citations omitted).

requests" since, among other things, "Watts may seek relief through the Federal Bureau of Prisons' administrative remedy process, which enables inmates to obtain formal review of issues that relate to any aspect of their confinement").

Plaintiff contends that the case of <u>Bernard v. Dist. of Columbia</u>, 223 F.Supp. 2d 211 (D.D.C. 2002) ("<u>Bernard</u>") supports his claim that "a prisoner does not have to exhaust administrative remedies if the prisoner is not seeking money damages." <u>See</u> Pl.'s Opp. at 9-10. In fact, the case stands for no such thing.  In <u>Bernard</u>, this Court reiterated that exhaustion of claims is mandatory, and applies to "all inmate suits about prison life":

> The exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." <u>Porter v. Nussle</u>, 534 U.S. 516, 531-32, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002).  A prisoner must complete the administrative process, "regardless of the relief offered through administrative procedures." <u>Booth v. Churner</u>, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).  Accordingly, a prisoner may file a civil action relating to conditions of confinement under federal law only after he has exhausted the prison's administrative remedies.  <u>See</u> <u>Jackson v. District of Columbia</u>, 254 F.3d 262, 269 (D.C.Cir.2001); <u>cf.</u> <u>Johnson v. District of Columbia Dep't of Corrections</u>, 2002 WL 1349532 (D.C.Cir.2002) (complaint properly dismissed without prejudice when plaintiff alleged that he had not filed a grievance).

<u>See</u> <u>Bernard</u>, 223 F. Supp. at 212-13; <u>see also</u> <u>id</u>. at 214 (recognizing that the "failure to exhaust administrative remedies is . . . a condition precedent to the filing of a lawsuit").  The Court in <u>Bernard</u> proceeded to consider how these principles apply to a situation not presented in this case: where there may be no administrative appeals procedures available for the type of claims a plaintiff makes, making exhaustion potentially impossible.[7]  By contrast, Plaintiff has not argued

---

[7] <u>See</u>, <u>e.g.</u>, <u>id</u>. at 213 (observing that the plaintiff in <u>Bernard</u> "argue[d] that the grievance procedure did not cover the kinds of claims he raises, and alternatively that there may be no procedure available to him as a result of the closing of the Lorton Correctional Complex"); id. at 214 (noting that "if there are now no grievance procedures available to plaintiff, it would be

in this case, and cannot reasonably contend, that exhaustion of his various claims was not possible. Thus, <u>Bernard</u> in no way advances Plaintiff's exhaustion argument.

### C.    Plaintiff's Latest Submissions, If Anything, Provide Additional Evidence that He has Failed to Exhaust His Claims

In his latest round of filings, Plaintiff has submitted portions of three "administrative remedy generalized retrieval" printouts which he claims relate to administrative appeals he and not some other inmate filed. Even assuming that these printouts concern his own administrative appeals, and not some other inmate's, they do not help him. Indeed, they provide additional support for the notion that Plaintiff has failed to fully exhaust his claims. <u>See</u> Pl.'s Opp., Exhibit ("Ex.") 2, Ex. 5, Ex. 6.

Some explanation is required before these printouts can be properly understood. The undersigned counsel has been advised that the second column within these printouts, which is entitled "SUBJ1/SUBJ2 RCV-OFC," contains information about how far in the administrative appeals process a claim has progressed: the highest stage of the administrative appeals process completed by a prisoner for a given claim. Specifically, when the abbreviation "LEE" appears next to a claim in that column, this signifies that the inmate has done no more than to file his claim with the Warden at USP Lee. <u>See</u> 28 C.F.R. § 542.14. Where the abbreviation "MXR" appears next to a claim in that column, this indicates that the prisoner went so far as to file an appeal of his claim with the Regional (i.e., Mid Atlantic) Director of the BOP. <u>See</u> 28 C.F.R. § 542.15. Where the abbreviation "BOP" appears next to a claim in that column, this apparently

---

futile to dismiss this case without prejudice to allow plaintiff to exhaust his non-existent administrative remedies" and accordingly ordering defense counsel to advise the Court whether administrative remedies were available to the plaintiff in that case.)

means that the prisoner has gone so far as to file a national appeal with the Office of General

Counsel in Washington, D.C. concerning his claim.  See 28 C.F.R. § 542.15.

The undersigned counsel has further been advised and the BOP's own program

statements confirm, that the second to last column in these printouts, which is entitled

"STATUS," provides information about the disposition of an administrative appeal.  Where the

abbreviation "REJ" appears next to a claim in this column, this indicates that the administrative

appeal was rejected by the relevant office for a reason unrelated to the merits (i.e., that the inmate

did not comply with a timing or other procedural requirement.)  See Program Statement 1330.13,

Administrative Remedy Program, available at http://www.bop.gov/policy/progstat/1330_013.pdf

at 5-9 (describing the procedural requirements applicable to each stage of the administrative

appeals process); id. at 9 (explaining that "[t]he Coordinator at any level . . . CCM, institution,

region, Central Office . . . may reject and return to the inmate without response a Request or an

Appeal that is written by an inmate in a manner that is obscene or abusive, or does not meet any

other requirement of this part.")  The undersigned counsel has been advised that only if the

abbreviations CLO, CLD, or CLG appear in this column has the relevant office made a decision

on the merits with regard to the claim.  With this background in mind, it becomes apparent that

the administrative remedy generalized retrieval printouts which appear in exhibits 2, 5, and 6 to

Plaintiff's Opposition provide further support for the notion that Plaintiff failed to fully exhaust

any of his claims.

Specifically, while these printouts suggest that Plaintiff submitted administrative appeals

concerning his claim that "[staff] withheld/misdirected legal mail" to the Office of General

Counsel in Washington, D.C., they indicate that this office rejected that claim for a reason

unrelated to the merits on March 23, 2004.  See Pl.'s Opp, Ex. 2 at 1 (noting that this claim was

17

"rej[ected]"). Moreover, they provide no indication that Plaintiff ever submitted an appeal of this claim to his Warden or an appeal with the Regional Director of the BOP concerning this allegation. See Pl.'s Opp., Ex. 2, 5, and 6.

While these printouts suggest that Plaintiff submitted an administrative appeal concerning his claim that his transfer request was improperly denied to the Office of General Counsel in Washington, D.C., they indicate that this office rejected that claim for a reason unrelated to the merits on April 7, 2006. See Pl.'s Opp., Ex. 6 at 5 (noting that this claim was "rej[ected]"). They also suggest Plaintiff never fulfilled any of the other earlier stages in the administrative appeals process with respect to this claims: an appeal of this claim to his Warden or an appeal with the Regional Director of the BOP. See Pl.'s Opp., Ex. 2, 5, and 6.

While these printouts suggest that Plaintiff submitted his belated claim that scabies had not been treated adequately in the prison to his warden, to the Regional Director of the BOP, and to the Office of the General Counsel in Washington, D.C., they indicate that the Regional Office and Office of General Counsel rejected his claim for reasons unrelated to the merits. See Pl.'s Opp., Ex. 2 at 1-3 (noting that this claim was "rej[ected]" by these offices).[8]

Furthermore, these printouts do not suggest that Plaintiff has fully exhausted any of his other claims, including his claims related to: his arthritis treatment, the failure to take a blood/urine specimen, or the absence of a sink, shower, and toilet in the holding tank. See Pl.'s Opp., Ex. 2, 5, and 6.

As such, all of Plaintiff's unexhausted claims should be dismissed and cannot serve as the

---

[8] Should the Court deem such a step necessary and appropriate, Defendant is willing and able to provide additional information concerning the reason(s) that Plaintiff's administrative appeals concerning this allegation (or any other allegation) were rejected.

basis for a writ of mandamus because Plaintiff has not pursued and properly exhausted the

available administrative remedies concerning these claims.  See, e.g., Jones, 127 S. Ct. at 914,

918, 923; Def.'s MTD/Response at 7-10, 28-29.

**III.    Plaintiff's Latest Submissions and Arguments Concerning the Denial of His Transfer Requests In No Way Establish that the Decision was Improper or Based on False or Inaccurate Information, Quite the Opposite is True**

In his Opposition, Plaintiff continues to press the claim that the denial of his transfer

requests was in retaliation for the exercise of his First Amendment rights, and was due to

omission of favorable information (about his participation in the CODE program), and the

inclusion of false information (about a Bail Reform Act violation which apparently was

expunged in 2000).  See Pl.'s Opp. at 4, 7.  Defendant's opening brief explained why Plaintiff

has no statutory or constitutional right to a prison transfer.  See Def.'s Opp. at 21-23. It also

explained the true reasons that Plaintiff's transfer requests to less secure facilities were denied:

> In January, 2006, a determination was made that [Plaintiff] would not be transferred based on security concerns.  In August, 2006, Plaintiff apparently received an incident report for being insolent to staff which prevented him from being transferred at that time as well.
>
> Even before this disciplinary incident, Plaintiff would likely have been ineligible for a transfer because his custody classification score reflected the fact that his offense had been deemed to be at greatest severity level (in view of the circumstances of his underlying crime).  See Ex. 11, Plaintiff's Administrative Remedies and Appeals, and Institution Responses, concerning his custody classification score which relates to the transfer Issue; see also Watts v. Federal Bureau of Prisons, 2006 W.L. 240787, *1 (W.D. Va. 2006) (explaining that the Plaintiff "Watts's custody classification was based, in part, on the severity of his current offense," that "[a]s a result of having committed an offense of the greatest severity, seven points were added to Watts's base score"); id. at *1-2 (rejecting Plaintiff's claim that the BOP "improperly calculated his custody calculation score, and that the Bureau's improper calculation has affected his ability to transfer to a lower security facility," explaining that "since [he] does not have a protected [liberty] interest in a particular classification or in being assigned to a particular institution, his due process claim must be dismissed" and has "failed to state a claim upon which relief may be granted.").

19

> It stands to reason that inmates who present disciplinary problems are unlikely to be transferred to less secure facilities. Plaintiff has provided no evidence of favoritism or partiality.

See Def.'s Opp. at 21-22. Plaintiff's own latest submissions confirm that it was Plaintiff's disciplinary problems and "the fact that his custody classification score reflected the fact that his offense had been deemed to be at greatest severity level" that prevented his transfer to a less secure facility. For example, Plaintiff has submitted a March 13, 2006 letter from the Federal Bureau of Prisons to Lisa Floyd, the brother of the Plaintiff explaining that:

> Mr. Watts . . . was transferred to the United States Penitentiary, Lee County, Virginia, a High-security institution, on March 1, 2004, as a result of serious misconduct that involved fighting with another person. This incident resulted in his need to be in a more secure facility. Additionally, Mr. Watts was sentenced on May 26, 1999, in the District of Columbia Superior Court, to a 4 to 12 year term of incarceration for Robbery and Assaulting and Resisting or Interfering with a Police Officer. According to the Program Statement 5100.07, *Security Designation and Custody Classification Manual*, he is appropriately housed in a High-security facility. Due to these factors, consideration for transfer to a Medium or Low-security facility is not appropriate at this time.

See, e.g., Pl.'s Opp., Ex. 4.[9] A second letter Plaintiff has filed with this Court, dated June 22, 2006, from the Federal Bureau of Prisons to Congresswoman Norton elaborates on Plaintiff's disciplinary problems, noting that, "while at FCI Gilmer," Plaintiff had "assaulted another inmate

---

[9] The same standards and considerations continue to govern assignment and transfer determinations today. See, e.g., Program Statement 5100.08 (September 12, 2006), *available at* http://www.bop.gov/policy/progstat/5100_008.pdf, page 4 (indicating that "P5100.07" is "a [d]irective" which has been "[r]escinded" and replaced with Program Statement 5100.08); id., Chapter 2, Page 2 (explaining that "[f]or classification purposes, the current offense is the most severe documented instant offense behavior regardless of the conviction offense."); id. (a "custody classification" is "[t]he review process to assign a custody level based on an inmate's criminal history, instant offense, and institutional adjustment"); id., chapter 1, page 3 ("Redesignations (transfers) from one Bureau institution to another are considered in much the same manner using many of the same factors used at the time of initial designation" and "[i]n addition, the inmate's institutional adjustment and program performance are also carefully reviewed when redesignation is considered.").

20

in the dining hall by punching him several times about the head and face," that the "inmate retaliated and a fight ensued," and that "[a]fter this incident, his Custody Classification Form was updated and his security-level increased to high."  Id.

The June 22, 2006 letter also addresses and disposes of Plaintiff's claim that his transfer paperwork failed to account for the fact that a Bail Reform Act violation had been expunged, and his participation in the CODE program, as it notes that:

> A review of Mr. Watts' central file reveals he was arrested for Bail Reform Act on September 9, 1997, and that this charge was dismissed.  Accordingly, information regarding this arrest was not included on his transfer request.  Thus, Mr. Watts['] claims [that] false information was included in his transfer request is unfounded. Additionally, Mr. Watts claims that his completion of the CODE program was not included in the transfer request submitted in December 2005.  A review of this matter reveals Mr. Watts completed the CODE program in October 2005. However, he refused to complete the recommended aftercare program.  Unit Team inadvertently did not include this information in the Transfer request.

Id. (June 22, 2006 letter); see also Pl.'s Opp., Ex. 4, July 26, 2006 letter from BOP to Congresswoman Norton, further explaining that "[i]n Mr. Watt's case, while completion of the major program was inadvertently excluded, the overriding factor in the decision not to transfer him was a recent disciplinary transfer from a less secure facility.")  Accordingly, BOP's failure to include the CODE information was harmless error, and Plaintiff's claim that BOP relied upon erroneous information about his Bail Reform Act violation is misguided.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court dismiss Plaintiff's action, and not issue a Writ of Mandamus because Plaintiff fails to meet the stringent standards for obtaining such relief.[10]

---

[10]  Alternatively, if any part of this case is not dismissed, it should be transferred to the Western District of Virginia.  See Def.'s MTD/Response at 10-12.

Respectfully submitted,


\_\_\_/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


\_\_\_/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


\_\_\_/s/_____
JONATHAN C. BRUMER, D.C. BAR # 463328
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E4815
Washington, D.C. 20530
(202) 514-7431
(202) 514-8780 (facsimile)


Of Counsel:

Delaine Martin Hill
Assistant General Counsel
Office of the General Counsel
Litigation Branch
Federal Bureau of Prisons

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of September, 2007, I caused the Foregoing

*Defendant's Reply in Support of Defendant's Motion to Dismiss or, in the alternative, for*

*Summary Judgment* to be served on *pro se* Plaintiff, postage prepaid, addressed as follows:


      Andre Sylvester Watts
      R13799-083
      Lee County United States
       Penitentiary
      P. O. Box 305
      Jonesville, VA 24263-0305


                    s/Jonathan C. Brumer
                    JONATHAN C. BRUMER, D.C. BAR # 463328
                    Special Assistant United States Attorney
                    555 4th Street, N.W., Room E4815
                    Washington, D.C. 20530
                    (202) 514-7431
                    (202) 514-8780 (facsimile)